IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA BICKERSTAFF | ) | Case No. 1:18-CV-01142 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CUYAHOGA COUNTY, et al., | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.       Procedural Background and Introduction

Plaintiff, Brenda Bickerstaff, sued the City of Cleveland; Cleveland Police Officers

Daniel McCandless, DeLonzo Goshen, Donald Nuti, and Timothy McKenzie (the "Officer

defendants"); and Cuyahoga County, Cuyahoga County Prosecutor Michael O'Malley, Assistant

County Prosecutors John Doe 1 and 2, and Sheriff Clifford Pinkney (the "County defendants")

after her acquittal on charges following her November 11, 2015, arrest.[1]  ECF Doc. 1-1.  On that

date, Officer McCandless, accompanied by the other named officer defendants, arrested

Bickerstaff after the officers found her son's firearm in a bag in the back seat of her car.  Id. at 5-

6.  Bickerstaff was then charged and prosecuted for carrying a concealed weapon and having a

weapon under disability.  Id. at 6.  Bickerstaff was found not guilty on April 30, 2017.  Id. at 6.

---

[1] Bickerstaff's complaint states that she was arrested "on or about November 10, 2015;" however, in other
pleadings Bickerstaff indicates that she was arrested on November 11, 2015.  Compare ECF Doc. 1-1 at
5, 24, with ECF Doc. 67 at 8; ECF Doc. 69 at 8.  The exhibit attached to Cleveland and the Officer
defendants' motion for judgment on the pleadings indicates that Officer McCandless' encounter with
Bickerstaff occurred on November 11, 2015.  See ECF Doc. 43-1 at 5.

On August 20, 2018, Bickerstaff, through counsel[2], filed a nine-count complaint in Cuyahoga County Common Pleas Court seeking damages for: (1) "malicious prosecution under 42 [U.S.C. §] 1983" ("Count I"); (2) "municipal liability under *Monell*" ("Count II") (3) "failure to supervise pursuant to 42 [U.S.C. §] 1983" ("Count III") (4) "civil conspiracy to constitutional rights under 42 [U.S.C. §] 1983" ("Count IV"); (5) "failure to investigate pursuant to 42 [U.S.C. §] 1983" ("Count V"); (6) "unlawful arrest pursuant to 42 [U.S.C. §] 1983" ("Count VI"); (7) "false imprisonment pursuant to [42 U.S.C. §] 1983" ("Count VII") (8) "abuse of process pursuant to [42 U.S.C. §] 1983" ("Count VIII") and (9) "intentional and negligent infliction of emotional distress" ("Count IX").  *Id.* at 8-18; *see also* Docket for Cuy. Cty. Ct. Com. Pl., Case No. CV-18-896564.  Cleveland, the Officer defendants, and the County defendants removed the case to this Court because this Court has federal question jurisdiction over Bickerstaff's 42 U.S.C. § 1983 and *Monell* claims under 28 U.S.C. §§ 1331, 1343, 1367, and 1441(a).  ECF Doc. 1.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Bickerstaff's state-law emotional-distress claims in Count IX.

Cleveland, the Officer defendants, and the County defendants now seek judgment on the pleadings.  ECF Doc. 41; ECF Doc. 43.  Cleveland and the Officer defendants contend that they are entitled to judgment on the pleadings because: (1) the applicable two-year statute of limitations bars Bickerstaff's *Monell*, failure-to-supervise, civil-conspiracy, failure-to-investigate, and emotional-distress claims based on her November 11, 2015 arrest; (2) Grand Jury indictment bars her unlawful-arrest and false-imprisonment claims; (3) statutory immunity

---

[2] At the time Bickerstaff filed her complaint, she was represented by attorney Steven Moody, who drafted and submitted her complaint.  *See* ECF Doc. 1-1 at 18.  In October 2018, the Ohio Supreme Court indefinitely suspended Moody from the practice of law in an unrelated matter.  *See* ECF Doc. 12; *see also Cleveland Metro. Bar Ass'n v. Moody*, 113 N.E.3d 520 (Ohio 2018).  Thereafter, Bickerstaff assumed *pro se* status.  ECF Doc. 13.

bars her unlawful-arrest, false-imprisonment, abuse-of-process, civil-conspiracy, and intentional-infliction-of-emotional-distress claims; and (4) she failed to allege sufficient facts to support her failure-to-supervise, unconstitutional-policy-or-custom, civil-conspiracy, abuse-of-process, and malicious-prosecution claims.  ECF Doc. 43 at 6-17.  The County defendants assert that they are entitled to judgment on the pleadings because: (1) Bickerstaff failed to allege sufficient facts to support her unlawful-arrest , false-imprisonment, malicious-prosecution, retaliatory-prosecution, and failure-to-intervene, failure-to-supervise, policy-or-custom, civil-conspiracy, abuse-of-process, and intentional-infliction-of-emotional-distress claims; (2) any claims against the prosecutors and sheriffs in their official capacities are duplicative with Bickerstaff's claim against the county; (3) prosecutorial immunity bars any claims against the county prosecutors to the extent they are sued in their individual capacities; (4) qualified immunity bars Bickerstaff's claims against Prosecutor O'Malley and Sheriff Pinkney; and (5) statutory immunity bars Bickerstaff's state-law claims.  ECF Doc. 41 at 4-15.

The court twice extended the time for Bickerstaff to file a response in opposition to the defendants' motions for judgment on the pleadings.  *See* ECF Doc. 55 (*sua sponte* extension); ECF Doc. 66 (extension on motion).  In granting Bickerstaff's motion to extend the deadline, the court stated: "Bickerstaff shall file her response(s) to the defendants' motions for judgment on the pleadings on or before Tuesday, June 18, 2019.  No further extensions will be granted absent truly extraordinary circumstances."  ECF Doc. 66 at 2.

On June 18, 2019, Bickerstaff filed a *pro se* opposition brief.  ECF Doc. 67.  On June 19, 2019, Bickerstaff filed a *pro se* "supplement opposition," in which she fixed some grammar errors, developed some of the arguments in her original brief, and attached three additional pages of exhibits.  ECF Doc. 69; ECF Doc. 69-1 at 32-35 ("pg3," "pgpg4," and "Ex-K").  The

defendants filed replies in support of their motions for judgment on the pleadings, and Bickerstaff field *pro se* sur-replies.[3]  ECF Doc. 70; ECF Doc. 77; ECF Doc. 82.

Cleveland and the Officer defendants moved to strike Bickerstaff's June 19 supplemental opposition brief.  ECF Doc. 74.  The County defendants moved to strike Bickerstaff's sur-reply. ECF Doc. 78.  Bickerstaff filed *pro se* oppositions to both motions to strike.  ECF Doc. 76; ECF Doc. 81.

Because the facts alleged in Bickerstaff's complaint, accepted as true, are sufficient to support Bickerstaff's malicious-prosecution claim against Officer McCandless, as well as her civil-conspiracy and emotional-distress claims against the Officer defendants, I recommend that Cleveland's and the Officer defendants' motion for judgment on the pleadings (ECF Doc. 43) be DENIED IN PART.  Further, because the facts alleged in Bickerstaff's complaint are insufficient to support the remaining claims, I recommend that Cleveland's and the Officer defendants' motion for judgment on the pleadings (ECF Doc. 43) be GRANTED IN PART and that the County defendants' motion for judgment on the pleadings (ECF Doc. 41) be GRANTED. Finally, I recommend that the Court *sua sponte* GRANT Bickerstaff leave to amend her: (1) malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie; (2) abuse-of-process claim against the Officer defendants; and (3) *Monell* claims against Cleveland and Cuyahoga County.

---

[3] Bickerstaff's sur-replies are titled "reply to the Cuyahoga County motion to the supplement motion brief in opposition to the judgment on the pleadings instanter" and "reply to the city['s] and officers['] motion for extention [*sic*] to file reply in support of their motion for judgment on the pleadings instanter."  ECF Doc. 77 at 1; ECF Doc. 83 at 1.

## II.    Facts

Bickerstaff's complaint alleges the following facts.[4]  Bickerstaff worked as a private investigator for private criminal defense lawyers in Northeast Ohio.  ECF Doc. 1-1 at 5, 24.  Her work involved tape-recording interviews with victims and witnesses.  *Id.* at 25.  Many of her investigations involved serious felony cases in Cuyahoga County, and several of those resulted in not-guilty verdicts or vacated convictions.  *Id.* at 24-25.  Prosecutors and law enforcement officers took notice of Bickerstaff's work, and they "harassed and mistreated" her "[o]ver a period of years."  *Id.* at 25.  As examples, Bickerstaff alleges that: (1) on ten separate occasions, assistant county prosecutors told her that she could be indicted for allegedly harassing, threatening, and lying to victims and witnesses; (2) when she tried to have her record expunged, an assistant county prosecutor disclosed to the court that she was a minor-victim of a sexual assault and had a prior conviction for harassing a judge; and (3) on April 12, 2012, she indicted for witness intimidation and telecommunications harassment based on false testimony, but the case was later dismissed.  *Id.* at 25-26.  As a result, Bickerstaff filed numerous complaints with "supervisors, bar associations[,] and law enforcement agencies, such as the United States Department of Justice and the Federal Bureau of Investigation."  *Id.* 11-12, 25.  She also filed a civil rights action related to her April 2012 indictment.  *Id.* at 26.

On November 11, 2012, Bickerstaff sent a complaint letter to the Cleveland Police Department's Office of Professional Standards, Chief Michael McGrath, and Deputy Chief Leroy Morrow.  ECF Doc. 1-1 at 5, 20, 22.  In her letter, Bickerstaff said:

> This officer [McCandless] is always following behind me, my question here is why don't he pull me over if I am violating a traffic stop instead of following, my

---

[4] Bickerstaff attached to her complaint: (1) an undated letter to the Cleveland Police complaining that Officer McCandless was following her; and (2) an affidavit.  ECF Doc. 1-1 at 20-26.  The facts stated in these exhibits to her complaint are part of her complaint and assumed true for purposes of the motion to dismiss.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (citing Fed. R. Civ. P. 10(c)).

license is valid and I have insurance.  * * *  First[,] he is a dam[n] bully, I don't like bullies, I guess he ran my background and saw my record and figure out I am going to get her a…, and send her, sorry Charlie[.]  I try not to do things that place[] me in situations and guess him and his buddy [Lucarelli[5]], or should, I say lickeralli is sitting up a game plan to get me out of commission or to stop me from investigating cases to make sure that they stop violating citizens civil rights and sending them to prison on a lie just like [Lucarelli] tried to do to me.

Now look, tell him to stop, dam[n] following me once, again I am in fear of my life and my safety[.  H]e is scary looking which is intimidating.  I have expressed concerns about other officers harassing me from that same district 6th.  The final[] thought here is to tell them to leave me the hell alone[.  A]ll of those officers need to leave me alone.

*Id.* at 5, 20, 22.

Cleveland and Cuyahoga County did not investigate Bickerstaff's complaints regarding officers' and prosecutors' abuse of authority and harassment.  ECF Doc. 1-1 at 14.  The officers and prosecutors were never disciplined as a result of Bickerstaff's complaints.  *Id.* at 11-12.  At some point – Bickerstaff does not say when – the Officer defendants and prosecutor defendants "[met] and plann[ed] to initiate false criminal charges on the basis of an illegal and unconstitutional stop."  *Id.* at 13.

Bickerstaff's complaint alleges that on November 11, 2015, she retrieved her car from Edward Bickerstaff ("Edward"), her adult son, who had just returned home from his job as a licensed security guard.  ECF Doc. 1-1 at 4-5.  Bickerstaff was in a hurry to meet a client, and Edward "passed the keys to [her] outside."  *Id.* at 5.  Unbeknownst to Bickerstaff, however, Edward had left his lawfully-registered work firearm (a shotgun) in a soft-shell case in the rear seat of the car.  *Id.* at 5, 24.

---

[5] Detective Vincent Lucarelli was a defendant in Bickerstaff's previous civil rights case related to her April 2012 indictment.  *See* CM/ECF for N.D. Ohio Case No. 1:14-cv-831.

At approximately 9:00pm, Bickerstaff was lawfully driving down Empire Avenue[6], when Officer McCandless initiated a traffic stop on the false pretext that her headlights were off.  *Id.* at 5.  Officer McCandless's body camera footage later revealed that Bickerstaff's car headlights were on.  *Id.* at 5.  Officers Goshen, Nuti, and McKenzie also responded to the scene.  *Id.* at 5.  During the stop, the officers discovered Edward's firearm.  *Id.* at 5.  Bickerstaff told the officers that the gun belonged to her son and requested a police supervisor.  *Id.* at 5-6.

Edward went to the scene.  ECF Doc. 1-1 at 6.  He informed the officers that the gun was his and provided proof of ownership.  *Id.* at 6, 24.  He also provided proof that had a business purpose for owning the firearm and a concealed-carry permit.  *Id.* at 6, 24.  Edward explained that he normally kept his firearm locked up, but he took it to a friend's house for cleaning and forgot to remove it from the car.  *Id.* at 6, 24.  The officers check the serial numbers of the firearm to confirm ownership.  *Id.* at 6.

The officers arrested Bickerstaff and took her to the Cuyahoga County Jail.  ECF Doc. 1-1 at 6, 16-17.  Officer McCandless "fabricated a report and provided the information to supervisors."  *Id.* at 8.  The officers filed a criminal complaint, charging Bickerstaff with having weapons under disability, in violation of Ohio Rev. Code § 2923.13(A)(2), and carrying a concealed weapon, in violation of Ohio Rev. Code 2923.12(A)(1).  *Id.* at 6, 8, 24.  On November 19, 2015, another complaint[7] was filed in Cleveland Municipal Court, charging Bickerstaff with:

---

[6] Bickerstaff states that she had "just left" her home, and that the traffic stop occurred "scant seconds" later.  ECF Doc. 1-1 at 4, 6.  A map search shows that Empire Avenue is approximately two blocks south of the home address listed on Bickerstaff's pleadings.  *See* ECF Doc. 1-1 at 1 (9909 Garfield Avenue, Cleveland, Ohio 44108).

[7] The court records for Bickerstaff's traffic case indicate that Officer McKinney and Officer McCandless issued a ticket (Citation No. 2318845) for a traffic offense occurring on November 11,2 015, at the intersection of St. Clair Avenue and Yale Avenue.  Docket for *City of Cleveland v. Brenda Bickerstaff*, Cleveland Mun. Ct. Case No. 2015 TRD 045565 (Ticket/Citation).  The docket does not indicate the date and time the citations were issued, but only states the offense date.

(1) driving without headlights on, in violation of Cleveland Mun. Code art. V, § 437.02A (which

refers to Ohio Rev. Code § 4513.03); (2) displaying plates that were not legally registered, in

violation of Cleveland Mun. Code art. V, § 435.09F; and (3) driving under suspension or

revocation, in violation of Cleveland Mun. Code art. V, § 435.07 (which refers to Ohio Rev.

Code § 4510.11).  ECF Doc. 1-1 at 5; Docket for *City of Cleveland v. Brenda Bickerstaff*,

Cleveland Mun. Ct. Case No. 2015 TRD 045565 (Charges 1-3)[8]; ECF Doc. 43-1.  Bickerstaff

later consented to a finding that she was guilty of a single count of driving without a license.

Docket for *City of Cleveland v. Brenda Bickerstaff*, Cleveland Mun. Ct. Case No. 2015 TRD

045565 (entry on May 19, 2016); ECF Doc. 43-1 at 3.

 The Cuyahoga County Prosecutor's Office took Bickerstaff's charges to the grand jury.

ECF Doc. 1-1 at 6.  Pursuant to county policy not to present exculpatory evidence to grand

juries, the prosecutors did not tell the grand jury that: (1) Bickerstaff's son went to the scene and

explained that he forgot to remove his concealed shotgun from the car; (2) her headlights were

not off when Officer McCandless initiated the traffic stop; or (3) she had previously complained

about Officer McCandless following her.  ECF Doc. 1-1 at 6, 10; *see also id.* at 11 (alleging that

Cleveland and Cuyahoga County gave officers and prosecutors "free reign" to "withhold

evidence").  The grand jury indicated Bickerstaff for: having weapons under disability, in

violation of Ohio Rev. Code § 2923.13(A)(2); carrying a concealed weapon, in violation of Ohio

Rev. Code 2923.12(A)(1); and tampering with evidence, in violation of Ohio Rev. Code

§ 2921.12(A)(1).  *Id.* at 24.  Bickerstaff's case proceeded to a bench trial.  *Id.* at 7.  On April 20,

---

[8] This Court may take judicial notice of the citations and disposition of Bickerstaff's traffic court case,
because that information is in the public record and the fact that the citations were issued and dispositions
reached is not subject to reasonable dispute.  *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th
Cir. 2005); *see also KBC Asset Mgmt. N.V. v. Omnicare, Inc.*, 769 F.3d 455, 468 (6th Cir. 2014) (noting
that a Court may take judicial notice that documents were filed or that a disposition was reached, but may
not notice pleadings or testimony as true just because they were filed with a court).

2017, Judge Michael Shaughnessy found Bickerstaff not guilty of all charges.  *Id.* at 7.

Cleveland and Cuyahoga County did not discipline the officers or prosecutors for bringing the

criminal charges against Bickerstaff.  *Id.* at 10.

## III.    Applicable Legal Standards

### A.    Judgment on the Pleadings standard

"After the pleadings are closed – but early enough not to delay trial – a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings

is reviewed under the same standard as a motion to dismiss for failure to state a claim under Fed.

R. Civ. P. 12(b)(6).  *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017).  To

survive a motion for judgment on the pleadings, the complaint must allege "facts that state a

claim to relief that is plausible on its face and that, if accepted as true are sufficient to raise a

right to relief above the speculative level."  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538

(6th Cir. 2012 (internal quotation marks omitted (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but asks

for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  The Court must "construe the complaint in the light most favorable to the

nonmoving party, accept the well-[pleaded] factual allegations as true, and determine whether

the moving party is entitled to judgment as a matter of law."  *Commercial Money Ctr., Inc. v.*

*Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  "But [the court] 'need not accept as

true legal conclusions or unwarranted factual inferences.'"  *Jackson*, 864 F.3d at 466 (quoting

*Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," are also insufficient.  *Ashcroft*, 556

U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 555).  "[A] court may consider exhibits attached

to the complaint, public records, items appearing in the record of the case, and exhibits attached

to a defendant's motion to dismiss, so long as they are referred to in the complaint and are

central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).  A

Rule 12(c) motion "is granted when no material issue of fact exists and the party making the

motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv.*

*Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

### B.      Liberal Construction for *Pro Se* Pleadings

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by

lawyers." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quotation marks omitted).  Thus,

such pleadings are liberally construed.  *Id.*  Nevertheless, "[l]iberal construction does not require

a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580

(6th Cir. 2001).  Complaints that were drafted by an attorney are not entitled to liberal

construction merely because the plaintiff later assumed *pro se* status.  *See, e.g.*, *Crosby v. S.C.*

*Dept. of Pub. Safety*, No. 2:15-1455-RMG, 2017 U.S. Dist. LEXIS 13288 (D.S.C. 2017) (*pro se*

plaintiff's complaint was not entitled to liberal construction because it was drafted, signed, and

filed by a lawyer who represented him at the time).

Because Bickerstaff was represented by counsel when she filed her complaint, and

counsel drafted her complaint, her complaint is not entitled to liberal construction.  Nevertheless,

Bickerstaff's *pro se* responsive briefing to the defendants' motions is entitled to liberal

construction.

## IV.    Motions to Strike

Cleveland and the Officer defendants argue that the court should strike Bickerstaff's

supplemental opposition brief (ECF Doc. 69) as untimely and improvidently filed.  ECF Doc. 74.

They assert that Bickerstaff's supplemental opposition brief was untimely because she filed it one day after the deadline for filing an opposition brief.  *Id.* at 3-4.  They contend that Bickerstaff's brief was improvidently filed because she did not provide "truly extraordinary circumstances" for an untimely filing, as required by this Court's order extending her deadline, or seek leave of court to file an additional brief.  *Id.* at 4.  Cleveland, the Officer defendants, and the County defendants also argue that the court should strike Bickerstaff's sur-replies (ECF Doc. 77; ECF Doc. 82) because she did seek leave of court before filing them.  ECF Doc. 78; ECF Doc. 83.

Bickerstaff responds that Cleveland and the Officer defendants' motion to strike is part of a conspiracy to violate her civil rights, and that she was allowed to file a supplemental brief within 24 hours under Federal Rule of Civil Procedure 15.  ECF Doc. 76 at 2-3.  Bickerstaff also asserts that her supplemental opposition brief cannot be stricken because, under United States Supreme Court Rule 1, "any document filed with the Clerk and made a part of the Court's records may not thereafter be withdrawn from the official Court files."  *Id.* at 3 (quoting U.S. Supreme Ct. R. 1).  Bickerstaff further contends that she needed to file a sur-reply because the County defendants said they did not understand the arguments in her opposition brief.  ECF Doc. 81 at 3.  Bickerstaff also opposed Cleveland's and the Officer defendants' motion to strike her sur-reply.  *See* ECF Doc. 85.

When a party files a motion, the Local Rules permit the non-moving party to file an opposition and the moving party may then file a reply.  Local Rule 7.1(c)-(e).  Neither the Local Rules nor the Federal Rules of Civil Procedure provide for additional briefing on motions.  *See* Local Rule 7.1; Fed R. Civ. P. 7; *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) ("[T]he Federal Rules  of Civil Procedure do not expressly permit the filing of surreplies.");

*Eberhard v. Chi. Title Ins. Co.*, No. 1:11-cv-831, 2014 U.S. Dist. LEXIS 199698 *8 (N.D. Ohio 2014) ("No additional briefing is authorized.").  Thus, a party who wishes to submit additional briefing must seek leave of court.  *Cf. Eberhard*, 2014 U.S. Dist. LEXIS 199698 *8 (addressing sur-replies and collecting cases).  Generally, courts permit additional briefing for parties to respond to submissions that raise new arguments.  *Cf. Key*, 551 F. App'x at 265 (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

The defendants are correct that Bickerstaff's supplemental opposition brief (ECF Doc. 69) and sur-replies (ECF Doc. 77; ECF Doc. 82) were improvidently filed.  Because the rules do not provide for supplemental briefing or sur-replies, Bickerstaff was required to seek leave of court before filing those briefs.  *See* Local Rule 7.1; Fed R. Civ. P. 7; *Eberhard*, 2014 U.S. Dist. LEXIS 199698 at *8.  Bickerstaff's supplemental opposition brief is also untimely because it was not filed on or before the June 18, 2019, deadline for opposition briefs and Bickerstaff has not shown – or attempted to show – that extraordinary circumstances excused the late filing.  ECF Doc. 66.  Further, Bickerstaff's citations of Fed. R. Civ. P. 15 and U.S. Supreme Ct. R. 1 are unavailing.  Rule 15 is concerned with supplemental pleadings adding new claims or defenses, not supplemental motion briefing.  *See* Fed. R. Civ. P. 15.  And the Supreme Court Rules are applicable only in cases before the Supreme Court.  *See Davis v. Gates*, No. 1:09-cv-1325, 2009 U.S. Dist. LEXIS 138405 *10 (N.D. Ga. 2009) ("The Supreme Court Rules are not relevant to cases such as the present one which are filed in a district court.").  Moreover, Bickerstaff's *pro se* status does not excuse her failure to comply with procedural rules and deadlines.  *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  Thus, I recommend that the defendants' motions to strike (ECF Doc. 74; ECF Doc. 78; ECF Doc. 83) be GRANTED.

Nevertheless, Bickerstaff's supplemental opposition brief and sur-replies – which clarify the arguments in her properly-filed opposition brief – will be useful to the court's liberal construction of the opposition brief.  *Compare* ECF Doc. 69, ECF Doc. 77, and ECF Doc. 82, *with* ECF Doc. 67; *see Luis v. Zang*, 833 F.3d at 626.  Accordingly, I recommend that the Court's order to strike direct the Clerk to leave the documents as public records.

## V.     Motions for Judgment on the Pleadings[9]

### A.     Official-Capacity Claims

Bickerstaff has sued the Officer defendants, Cuyahoga County Prosecutor O'Malley, Assistant Prosecutors John Doe 1-2, and Sheriff Pinkney in their individual and official capacities.  ECF Doc. 1-1 at 1-2.  She has also named and served Cleveland and Cuyahoga County.  *Id.* at 1.

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).  In such scenarios, courts often dismiss official-capacity claims against government officials that are duplicative of the claims against the government entity itself.  *See, e.g.*, *Doe v. Caliborne Cty., Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996); *Baar v. Jefferson Cty. Bd. of Ed.*, 476 F. App'x 621, 634 (6th Cir. 2012).

---

[9] For the court's ease of analysis, I examine the issues that the parties raise in an order different than they argued them.

Because Bickerstaff's official-capacity claims against the individually-named defendants are duplicative of the claims against Cleveland and Cuyahoga County, I recommend that the Court dismiss Bickerstaff's official-capacity claims as redundant.

### B.    Prosecutorial Immunity

The County defendants argue that Prosecutor O'Malley is entitled to both prosecutorial immunity and qualified immunity from Bickerstaff's claims.  ECF Doc. 41 at 8-11; ECF Doc. 70 at 6-7.  The County defendants assert that, even if Prosecutor O'Malley acted wrongfully or maliciously, he is entitled to absolute prosecutorial immunity because he was performing his duties as a prosecutor and supervising prosecutor.  ECF Doc. 41 at 8-9; ECF Doc. 70 at 6.  The County defendants also contend that Prosecutor O'Malley is entitled to qualified immunity from Bickerstaff's claims because Bickerstaff did not show that he was involved in any alleged violation of her constitutional rights.  ECF Doc. 41 at 10; ECF Doc. 70 at 7.  Liberally construed, Bickerstaff responds that Prosecutor O'Malley is not entitled to prosecutorial or qualified immunity, because: (1) probable cause was never established for the traffic stop; (2) the prosecutors deceived the Grand Jury and conspired against her; and (3) immunity is not available in constitutional claims.  ECF Doc. 67 at 11-12; *see also* ECF Doc. 69 at 11-12.

"Prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).  In determining whether a prosecutor is entitled to absolute immunity, courts must look to whether he was engaged in "prosecutorial," "investigative," or "administrative" functions.  *See Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (noting that, though absolute immunity is not available for investigative and administrative functions, such conduct may be subject to qualified immunity).

14

Prosecutorial functions include participation in probable cause hearings, grand jury hearings, pretrial proceedings, witness preparation, and trials.  *Id.* at 467.  A supervising prosecutor is also absolutely immune to claims stemming from his supervision of other prosecutors.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (stating that, although the supervision of prosecutors is an administrative function, it is "directly connected with the conduct of a trial"). So long as the prosecutor was engaged in prosecutorial functions, he is absolutely immune regardless of whether he undertook his actions maliciously, in bad faith, or with an improper motive.  *See Imbler*, 424 U.S. at 427 & n.27, 431 & n.34 (prosecutor immune after knowingly presenting perjured testimony and suppressing exculpatory evidence at trial); *Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir. 1986) (prosecutor immune after "knowingly obtaining issuance of criminal complaints and arrest warrants . . . based on false, coerced statements"); *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (prosecutor immune for deciding to investigate and conspiring to present false charges to the grand jury, allegedly to satisfy a campaign promise to be tough on child abuse).

Prosecutor O'Malley is absolutely immune from Bickerstaff's claims.  Here, Bickerstaff alleges that Prosecutor O'Malley was responsible for: (1) supervising the prosecutors who conspired to bring false charges against her and failed to present exculpatory evidence to the grand jury; and (2) maliciously continuing her prosecution after it was clear that probable cause did not exist.  ECF Doc. 1-1 at 4, 6-7.  Prosecutor O'Malley is absolutely immune from claims related to both his personal conduct as a prosecutor, as well as his conduct as a supervisor to the assistant prosecutors, because at all times he was performing prosecutorial functions.  *See Burns*, 500 U.S. at 486; *Imbler*, 424 U.S. at 427 & n.27, 431 & n.34; *Koubriti v. Convertino*, 593 F.3d at 467; *Van de Kamp*, 555 U.S. at 344.  Even assuming that Prosecutor O'Malley acted in bad faith,

15

knew probable cause was lacking, and intentionally decided not to present exculpatory evidence to the grand jury or at trial, binding case law makes it quite clear that he is nevertheless absolutely immune from Bickerstaff's claims that he conspired to bring false charges against her and maliciously prosecuted her. *Imbler*, 424 U.S. at 427 & n.27, 431 & n.34; *Joseph*, 795 F.2d at 555; *Grant*, 870 F.2d at 1139. Thus, Prosecutor O'Malley is absolutely immune from all of Bickerstaff's Claims.

I recommend that the Court grant the County defendants' motion for judgment on the pleadings on all of Bickerstaff's claims against Prosecutor O'Malley.

### C.     John Doe Defendants

Bickerstaff's complaint lists two John Doe prosecutor defendants. "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or its own after notice[10] to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In *Petty v. County of Franklin*, the Sixth Circuit held that the district court properly dismissed claims against two John Doe sheriff's-deputy defendants under Rule 4(m). 478 F.3d 341, 345-46 (6th Cir. 2007). In doing so, the Court rejected the plaintiff's argument that the John Doe defendants had "constructive notice" that they were being sued because the sheriff was properly served, they knew about the lawsuit, and their behavior gave rise to the plaintiff's claims. *Id.* The Court explained that, even

---

[10] This Report and Recommendation provides such notice, as it outlines the grounds on which Bickerstaff's John Doe claims can be dismissed and gives Bickerstaff an opportunity to object. *See Johnson v. Bently*, No. 90-5019, 1991 U.S. App. LEXIS 23259 *7 (6th Cir. 1991) (holding that a magistrate judge's R&R provided notice and the opportunity to respond to the court's *sua sponte* grant of summary judgment); *accord Ford v. Elsbury*, 32 F.3d 931, 938 (5th Cir. 1994); *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011); *Lindsey v. U.S. Bureau of Prisons, U.S. Dept. of Justice*, 736 F.2d 1462, 1463 (11th Cir. 1984), *vacated on other grounds*, 469 U.S. 1082 (1984); *but see Lucas v. Dept. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (a magistrate judge's R&R was not sufficient notice when it did not explicitly advise a *pro se* litigant that he needed to point to evidence supporting his claims or risk summary judgment).

if the John Doe defendants could reasonably have been expected to know of the plaintiff's suit, they could not have known that they were parties to the lawsuit unless the plaintiff "substitute[d] the names of real persons for his John Doe defendants." *Id.* (citing *Doe v. Sullivan County*, 956 F.2d 545, 552 (6th Cir. 1992)).

The Court should dismiss Bickerstaff's claims against the John Doe defendants.  As in *Petty*, the John Doe defendants are not named in the complaint and, thus, have not had any notice of the claims against them even if they have constructive notice of Bickerstaff's lawsuit against the County defendants.  *Petty*, 478 F.3d at 345-46; *see generally* ECF Doc. 1-1.  Further, if Bickerstaff wishes to serve the John Doe defendants, she must first amend her complaint to name them.  However, amendment here would be futile because: (1) the John Doe defendants, who at all times acted in their roles as prosecutors, would be entitled to absolute prosecutorial immunity; and (2) any claims under 42 U.S.C. § 1983 would be time-barred under the applicable two-year statute of limitations.  *Burns*, 500 U.S. at 486; *Imbler*, 424 U.S. at 431; *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (statute of limitations for § 1983 claims arising in Ohio is two years); *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (leave to amend complaint should be denied if it would be futile); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (naming a new party creates a new cause of action that does not relate back to the original filing for purposes of limitations).  Thus, amending the complaint to name the John Doe defendants and serving them would be futile.

I recommend that Bickerstaff's claims against the John Doe defendants be dismissed.

### D.  Unlawful Arrest and False Imprisonment

In her complaint, Bickerstaff alleges that the defendants unlawfully arrested her, in violation of her Fourth Amendment rights, because they did not have a warrant or probable cause

17

to suspect that she committed a crime.  ECF Doc. 1-1 at 16.  Bickerstaff also asserts that, because the defendants lacked a warrant or probable cause for her arrest, the defendants violated her Fourth Amendment right against "unlawful imprisonment" by detaining her in the Cuyahoga County jail.  *Id.* at 16-17.

Cleveland, the Officer defendants, and the County defendants argue that Bickerstaff's unlawful-arrest and false-imprisonment claims must fail because the grand jury's indictment conclusively established probable cause for her arrest.  ECF Doc. 41 at 6-7; ECF Doc. 43 at 6-7; ECF Doc. 70 at 8; ECF Doc. 82 at 5.  Cleveland and the Officer defendants also argue that Bickerstaff's unlawful arrest and false imprisonment claims are time-barred because she did not bring them within two years after her arrest – *i.e.*, November 11, 2017.  ECF Doc. 43 at 6; ECF Doc. 82 at 4-5.  The County defendants argue that Sheriff Pinkney[11] is entitled to qualified immunity from Bickerstaff's claims because: (1) the pleadings indicate that his involvement in Bickerstaff's imprisonment was limited to his status as sheriff/jail administrator; and (2) in accepting custody of Bickerstaff, he was entitled to rely on the officers' representations that they had probable cause to arrest Bickerstaff.  ECF Doc. 41 at 10-11; ECF Doc. 70 at 7.

Bickerstaff responds that probable cause was never established in her criminal case because: (1) her car lights were not off; (2) Officer McCandless knew the gun did not belong to her; (3) assistant prosecutor Deborah Obed did not tell the grand jurors any exculpatory facts; and (4) she was found not guilty.  ECF Doc. 67 at 12; ECF Doc. 83 at 2-3; *see also* ECF Doc. 69 at 12.  She also asserts that her April 20, 2018, complaint was timely because the limitations period did not begin to run until she was found not guilty on April 20, 2017.  ECF Doc. 67 at 8; *see also* ECF Doc. 69 at 8.  Liberally construed, Bickerstaff also contends that Sheriff Pinkney is

---

[11] Bickerstaff's complaint does not name any other jail or sheriff's office employees.  *See generally* ECF Doc. 1-1.

not entitled to qualified immunity because: (1) probable cause was never established for the

traffic stop; and (2) immunity is not available in constitutional claims.  ECF Doc. 67 at 11-12;

*see also* ECF Doc. 69 at 11-12.

### 1.      Statute of Limitations

The statute of limitations is an affirmative defense upon which the defendant bears the

burden show that the plaintiff's claims are time-barred.  *Lutz v. Chesapeake Appalachia, LLC*,

717 F.3d 459, 464 (6th Cir. 2013).  As discussed above, the statute of limitations for 42 U.S.C.

§ 1983 claim arising in Ohio is two years.  *Cooey*, 479 F.3d at 416.  "[T]he accrual date of a

§ 1983 cause of action is a question of federal law that is not resolved by reference to state law."

*Wallace v. Kato*, 549 U.S. 384, 388 (2007).  An applicable statute of limitations "begins to run

when the plaintiff knows or has reason to know that the act providing the basis for his or her

injury has occurred."  *Cooey*, 479 F.3d at 416.  The statute of limitations for unlawful arrest and

false imprisonment begin to run once "the victim becomes held pursuant to [legal] process" –

*i.e.*, when the victim is issued process, bound over by a magistrate, or arraigned on charges.

*Wallace*, 549 U.S. at 389-90 (rejecting the argument that false imprisonment ended upon release

from custody).  Once legal process begins, the unlawful arrest or false imprisonment ends, and

damages for any following confinement must be based on a malicious-prosecution or abuse-of-

process theory.  *Id.* at 390.  A malicious-prosecution claim accrues when the criminal

proceedings are terminated in the criminal-defendant's favor.  *King v. Harwood*, 852 F.3d 568,

578-79 (6th Cir. 2017).

Based on the information in the pleadings, exhibits, and public record, Bickerstaff's

unlawful-arrest and false-imprisonment claims are time-barred.  *Lutz*, 717 F.3d at 464; *Gavitt*,

835 F.3d at 640.  Although Cleveland and the Officer defendants are correct that Bickerstaff

would have known of the details giving rise to her unlawful arrest and false imprisonment claims

on November 11, 2015 – the date she was arrested – they overlook the fact that the statute of

limitations period did not begin to run until legal process began. *Wallace*, 549 U.S. at 389-90;

*Cooey*, 479 F.3d at 416. Here, none of the pleadings or attachments to the pleadings indicate

when Bickerstaff was issued process, bound over by a magistrate, or arraigned on the charges in

her underlying criminal case (Cuy. Cty. Ct. Com. Pl. Case No. CR-15-601122-A). *See* ECF

Doc. 1-1, ECF Doc. 41, ECF Doc. 43, ECF Doc. 7; ECF Doc. 69; ECF Doc. 70; ECF Doc. 77;

ECF Doc. 82. Further, information regarding Bickerstaff's underlying criminal case is

unavailable in the public record, as the case was sealed after Bickerstaff was found not guilty.

*See* Ohio Rev. Code § 2953.52(A) (sealing of records after not guilty finding). While this Court

could assume that Bickerstaff appeared before a magistrate within 48-hours after her arrest (on or

before November 13, 2015), as is generally required, the record does not indicate whether

Bickerstaff actually received a hearing within the prescribed timeframe. *See Rayfield v. City of

Grand Rapids*, 768 F. App'x 495, 508 (6th Cir. 2019) (citing *County of Riverside v. McLaughlin*,

500 U.S. 44, 56 (1991)) (stating that a person arrested without a warrant must receive a probable-

cause hearing within 48 hours of arrest, unless the government can demonstrate an emergency or

extraordinary circumstance justified a delay). Cleveland and the Officer defendants attached to

their motion a traffic court docket indicating that Bickerstaff had an initial hearing on November

25, 2015, for traffic citations issued during the stop on November 11, 2015.[12] ECF Doc. 43-1

at 1. Thus, at the very latest, Bickerstaff was held pursuant to legal process on November 25,

2015.

---

[12] Driving under suspension – one of the traffic offenses that Bickerstaff was cited for – is an arrestable
offense in Ohio. *See State v. Ewing*, No. 09AP-776, 2010-Ohio-1385 ¶¶29-30 (Ohio App. Ct. 2010).

Because Bickerstaff's unlawful-arrest and false-imprisonment claims accrued, at the latest, on November 25, 2015, she was required to bring any § 1983 claims based on unlawful arrest or false imprisonment by November 25, 2017. *Wallace*, 549 U.S. at 389-90; *Cooey*, 479 F.3d at 416. Bickerstaff failed to meet this deadline when she filed her complaint on April 20, 2018. ECF Doc. 1-1. Accordingly, I recommend that the Court grant Cleveland's and the Officer defendants' motion for judgment on the pleadings on Bickerstaff's unlawful-arrest and false-imprisonment claims on the ground that they are time-barred.

### 2. Merits

If the Court were to conclude that Bickerstaff's unlawful-arrest and false-imprisonment claims are not time-barred, then the Court must proceed to determine whether her complaint alleges sufficient facts to state a § 1983 claim for unlawful-arrest and false-imprisonment against the Officer defendants and Sheriff Pinkney.

The Fourth Amendment's protection against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment, protects individuals from: (1) traffic stops when the officer lacks probable cause to believe that a civil infraction occurred or reasonable suspicion that a crime is being committed; and (2) arrests or detentions without probable cause. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) ("[A] vehicle stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment."); *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017); *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Thus, probable cause for a traffic stop and subsequent arrest is an absolute defense to a § 1983 claim based on unlawful arrest or false imprisonment. *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014) (citing *Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *see also Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006).

21

"Probable cause exists when, considering the totality of circumstances, the arresting officer knew of sufficient facts and circumstances to permit a prudent person to believe that the suspect committed an offense." *Halasah*, 574 F. App'x at 629 (citing *Crocket v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003)). Reasonable suspicion is more than a "hunch," but less than probable cause. *Reid Mach., Inc. v. Lanzer*, 614 F. Supp. 2d 849, 860 (N.D. Ohio 2009) (citing *United States v. Keith*, 559 F.3d 499, 499 (6th Cir. 2009)). To determine whether an officer has reasonable suspicion, courts look to the totality of the circumstances, including all the information available to the officer and the officers' training. *Id.* (citing *United States v. Keith*, 559 F.3d 499, 499 (6th Cir. 2009), and *United States v. Urrieta*, 520 F.3d 569, 574 (6th Cir. 2008)). "[T]he existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009).

Although a grand jury indictment conclusively establishes probable cause for an arrest pursuant to that indictment, "neither the Supreme Court, nor [the Sixth Circuit], has ever held that a *subsequent* grand jury indictment can establish probable cause for an earlier arrest." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (emphasis in original) (citing *Rios v. United States*, 364 U.S. 253, 261 (1960) (evaluating probable cause based on the circumstances at the time of the arrest despite the fact that the defendant was later indicted by a federal grand jury), and *Giordenello v. United States*, 356 U.S. 480, 487 (1958) (holding that in the absence of a prior indictment, probable cause for arrest is determined by the facts in the sworn complaint)). Mere presence at the scene of an alleged Fourth Amendment violation, without showing direct responsibility for the action, is not enough to give rise to liability under § 1983. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

### i. Officer McCandless

Absent the time-bar, Bickerstaff's complaint alleges sufficient facts to state a § 1983 unlawful-arrest and false-imprisonment claim against Officer McCandless. Construing the facts in the pleadings in Bickerstaff's favor, McCandless lacked both probable cause and reasonable suspicion to initiate the traffic stop based on a headlight violation because – accepting as true the allegations in Bickerstaff's complaint – he knew that Bickerstaff's headlights were on. *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Halasah*, 574 F. App'x at 629; *Reid Mach., Inc.*, 614 F. Supp. 2d at 860; ECF Doc. 1-1 at 5. Although municipal court records indicate that Bickerstaff was also cited for other traffic violations, it is unclear from the facts in the pleadings and public record whether Officer McCandless knew of the other violations at the time he initiated the stop. *See* ECF Doc. 1-1 at 5; ECF Doc. 43-1; Docket for *City of Cleveland v. Brenda Bickerstaff*, Cleveland Mun. Ct. Case No. 2015 TRD 045565 (Charges 1-3). It is at least *plausible* that Officer McCandless did not know about the other traffic infractions until after he stopped Bickerstaff. *Handy-Clay*, 695 F.3d at 538; *Bell Atl. Corp.*, 550 U.S. at 555; *Ashcroft*, 556 U.S. at 678. Further, Officer McCandless cannot rely on the *subsequent* indictment to retroactively establish probable cause for the traffic stop and arrest, as he could not have possibly known about the indictment at the time of the stop and arrest. *Radvansky*, 395 F.3d at 307 n.13. Thus, construing the facts in the pleadings in Bickerstaff's favor, a material issue of fact exists regarding whether Officer McCandless initiated a traffic stop and arrested her without probable cause. *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

If the Court finds that Bickerstaff's unlawful-arrest and false-imprisonment claims are not time-barred, I recommend that Cleveland and the Officer defendants' motion for judgment

on the pleadings be denied with respect to the unlawful-arrest and false-imprisonment claims against Officer McCandless.

### ii.  Officers Goshen, Nuti, and McKenzie

Although Officers Goshen, Nuti, and McKenzie cannot point to the subsequent indictment to show that probable cause precludes Bickerstaff's unlawful-arrest and false-imprisonment claims, they are nevertheless entitled to judgment on the pleadings.  Here, Bickerstaff's complaint does not allege sufficient facts to state a claim against Officers Goshen, Nuti, and McKenzie because it merely alleges that they were present at the scene after Officer McCandless initiated a traffic stop.  *Hall*, 932 F.2d at 1154; *see generally* ECF Doc. 1-1. Bickerstaff does not allege that Officers Goshen, Nuti, or McKenzie were in any way responsible for or supervised Officer McCandless.  *Hall*, 932 F.2d at 1154; *see generally* ECF Doc. 1-1. Thus, even when construing the facts alleged in the complaint in Bickerstaff's favor, Officers Goshen, Nuti, and McKenzie are entitled to judgment as a matter of law.  *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

If the court proceeds to consider the merits of Bickerstaff's unlawful-arrest and false-imprisonment claims, I recommend that Cleveland's and the Officer defendants' motion for judgment on the pleadings be granted with respect to Bickerstaff's claims against Officers Goshen, Nuti, and McKenzie.

### 3.  Sheriff Pinkney – Qualified Immunity

As with the Officer defendants, Sheriff Pinkney cannot point to the subsequent indictment to provide retroactive probable cause which would preclude Bickerstaff's false-imprisonment claim.  Nevertheless, Sheriff Pinkney is entitled to qualified immunity from Bickerstaff's false-imprisonment claim.

Government officials are qualifiedly immune from § 1983 litigation and liability arising from actions within their discretionary functions, so long as their conduct did not violate the plaintiff's clearly established statutory or constitutional rights.  *Everson*, 556 F.3d at 493.  "In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that his actions violated that right.  *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010).

As discussed above, the existence of probable cause for arrest defeats any claim that an individual was falsely arrested or imprisoned in violation of the Fourth Amendment.  *Halasah*, 574 F. App'x at 629; *Voyticky*, 412 F.3d at 677; *Gumble*, 171 F. App'x at 507.  "It is settled law that an officer can reasonably rely on information communicated by another officer."  *Blevins v. Kirk*, No. 18-5369, 2019 U.S. App. LEXIS 15290 *13 (6th Cir. May 22, 2019) (citing *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012)); *see also United States v. Hensley*, 469 U.S. 221, 231 (1985) (police departments may rely on information obtained from other law enforcement agencies).

In *Everson*, the Sixth Circuit affirmed a district court's finding that a sheriff was entitled to qualified immunity when the plaintiff failed to allege that the sheriff was personally involved in violating her rights, deficiently trained or supervised jail staff, or authorized or acquiesced in the offending officers' conduct.  556 F.3d at 495-96.  The Court further explained that the sheriff could not be held liable on a *respondeat superior* theory, or merely because he had the right to control jail staff.  *Id.* at 495.

25

Sheriff Pinkney is entitled to qualified immunity from Bickerstaff's claims because the facts alleged in Bickerstaff's complaint, construed in her favor, are insufficient to show that Sheriff Pinkney violated her constitutional rights.  *Everson*, 556 F.3d at 493, 495-96; *Dorsey*, 517 F.3d at 394; *Commercial Money Ctr., Inc.*, 508 F.3d at 336.  Like the complaint in *Everson*, Bickerstaff's complaint alleged that Sheriff Pinkney was individually liable for her alleged false imprisonment solely by virtue of his status as sheriff and administrator of the jail.  *Everson*, 556 F.3d at 495-96; ECF Doc. 1-1 at 4, 16.  Bickerstaff did not allege that Sheriff Pinkney was personally involved in her booking, deficiently supervised or trained jail staff, or otherwise authorized or acquiesced in any of the alleged constitutional violations.  *Everson*, 556 F.3d at 495-96; *see generally* ECF Doc. 1-1.  Moreover, even if Bickerstaff had adequately alleged that Sheriff Pinkney was personally involved in her booking or deficiently supervised her booking officers, the allegations in Bickerstaff's complaint are insufficient to state a claim that Sheriff Pinkney violated her constitutional rights.  *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Everson*, 556 F.3d at 493; *Dorsey*, 517 F.3d at 394.  Here, Sheriff Pinkney and jail staff were entitled to rely on the arresting officers' decision to charge Bickerstaff as representations that they had probable cause to arrest her.  *See Gumble*, 171 F. App'x at 507; *Blevins*, 2019 U.S. App. LEXIS 15290 at *13; *Lyons*, 687 F.3d at 766; *Hensley*, 469 U.S. at 231; ECF Doc. 1-1 at 6, 8, 16-17, 24.  Thus, construing the facts in the complaint in Bickerstaff's favor, Sheriff Pinkney is entitled to qualified immunity from Bickerstaff's claims.

I recommend that the Court grant the County defendant's motion for judgment on the pleadings with regard to Bickerstaff's claims against Sheriff Pinkney.

### E.      Malicious Prosecution

Bickerstaff's complaint alleges that the Officer defendants maliciously prosecuted her when they decided to charge her and withheld exculpatory facts form the grand jury in an effort to have her wrongfully convicted. ECF Doc. 1-1 at 8-9. Specifically, Bickerstaff alleges that Officer McCandless "fabricated a report and provided the information to the supervisors . . . even though they knew the allegations were false and without probable cause," and that the Officer defendants initiated the charges in retaliation for her work as a private investigator. *Id.* at 9. Cleveland, the Officer defendants, and the County defendants argue that they are entitled to judgment on the pleadings because the facts alleged in Bickerstaff's complaint are insufficient to state a malicious-prosecution claim. ECF Doc. 41 at 4-6; ECF Doc. 43 at 8-9, 16-17; ECF Doc. 70 at 2-4. Specifically, the defendants assert that Bickerstaff's malicious-prosecution and civil-conspiracy claims must fail because: (1) the indictment conclusively established probable cause barring a malicious prosecution claim; and (2) the prosecutors were not required to present exculpatory evidence to the grand jury. ECF Doc. 41 at 4-6; ECF Doc. 43 at 8-9, 16-17; ECF Doc. 70 at 2-4. Additionally, the Cleveland and Officer defendants assert that Bickerstaff did not allege any specific, non-conclusory facts in her complaint. ECF Doc. 43 at 8-9. Liberally construed, Bickerstaff responds that the defendants' motions for judgment on the pleadings should be denied because probable cause did not support her prosecution, and the defendants withheld exculpatory facts in an effort to deceive the grand jury. ECF Doc. 67 at 5, 12; *see also* ECF Doc. 69 at 5-6, 11-12; ECF Doc. 77 at 2-7; ECF Doc. 83 at 3-5.

A malicious-prosecution claim requires a plaintiff to show: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016) (noting that

this is the standard for a claim under Ohio law, and that "Federal malicious-prosecution claims operate in much the same way") (citing *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)).  To succeed on a federal malicious-prosecution claim, a plaintiff must "show, at a minimum, that there is no probable cause to justify an arrest or a prosecution."  *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005).  "But well-established federal law holds that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'"  *Bickerstaff*, 830 F.3d at 398 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).  "[A]n exception to this rule exists 'when the defendants knowingly present false testimony to the grand jury' to obtain an indictment, or when they 'testify with a reckless disregard for the truth.'"  *Id.* (internal citations omitted) (quoting *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014), and *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)).

When a police officer did not make the decision to bring charges, he is liable for malicious prosecution only insofar as he improperly influenced the charging decision by knowingly or recklessly making false statements that were material to the prosecution and that did not consist solely of grand-jury testimony.  *See King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017) (such conduct rebuts the presumption of probable cause created by the indictment); *Kinkus v. Vill. of Yorkville*, 289 F. App'x 86 ("[A] police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor was truthful."); *Sykes v. Anderson*, 625 F.3d 294, 317 (6th Cir. 2010) (district court properly rejected defendant officer's motion for judgment notwithstanding the verdict on a malicious-prosecution claim when knowing misstatements in the officer's investigation notes influenced the decision to prosecute the plaintiff).

28

### 1.       Officer Defendants

The facts in the pleadings, accepted as true and construed in Bickerstaff's favor are sufficient to state a malicious-prosecution claim against Officer McCandless, but not the other Officer defendants.  *Commercial Money Ctr., Inc.*, 508 F.3d at 336.  Here, the grand jury indictment created a presumption of probable cause, which Bickerstaff could only overcome if she presented evidence that the officers knowingly or recklessly made false statements that were material to the decision to prosecute and did not consist only of grand jury testimony.  On one hand, Bickerstaff has not alleged that Officers Goshen, Nuti, or McKenzie made any false statements; rather, the claims against those officers are predicated merely upon their presence at the scene.  *See generally* ECF Doc. 1-1 at 8-9.  Therefore, accepting the facts in the complaint as true, there is no genuine issue of material fact regarding whether Officers Goshen, Nuti, and McKenzie maliciously prosecuted Bickerstaff, and they are entitled to judgment as a matter of law.  *Paskvan*, 946 F.3d at 1235.

On the other hand, Bickerstaff has alleged that Officer McCandless made false statements – including his statement that he pulled her over due to a headlight violation, which he allegedly knew was false – in the police report that led his supervisors to file a criminal complaint and influenced the prosecutors' decision to continue in her prosecution.  ECF Doc. 1-1 at 8-9.  These allegations, accepted as true, are sufficient to state a claim that could plausibly overcome Officer McCandless' ability to rely on the grand jury indictment as proof of probable cause.  *Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678.  Thus, accepting the facts in the complaint as true, there is a genuine issue of material fact regarding whether Officer McCandless is liable for maliciously prosecuting Bickerstaff.  *Paskvan*, 946 F.3d at 1235.

I recommend that the Court grant Cleveland and the Officer defendants' motion for judgment on the pleadings with regard to Bickerstaff's malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie.  But I also recommend that the Court deny Cleveland and the Officer defendants' motion for judgment on the pleadings with regard to Bickerstaff's malicious-prosecution claim against Officer McCandless.

### 2.    Prosecutor O'Malley

As discussed above, Prosecutor O'Malley is entitled to prosecutorial immunity from all of Bickerstaff's claims.  If, however, the Court were to look past Prosecutor O'Malley's prosecutorial immunity, judgment in Prosecutor O'Malley's favor would still be appropriate because the facts in Bickerstaff's pleadings complaint, accepted as true, are insufficient to state a malicious-prosecution claim against Prosecutor O'Malley.  Here, Bickerstaff's malicious-prosecution claim fails to allege any facts regarding the county prosecutors, but instead focuses only on conduct by the Officer defendants.  *See* ECF Doc. 1-1 at 8-9 (omitting any reference to the county prosecutors).  Because Bickerstaff's complaint was drafted and submitted by an attorney who represented her at the time, she is not entitled to liberal construction of her complaint.  *Luis*, 833 F.3d at 626; *Crosby*, 2017 U.S. Dist. LEXIS 13288.  Thus, even if this Court could find facts in various places throughout the complaint from which a malicious-prosecution claim against the county prosecutors could be constructed, we are not permitted to conjure such a claim.  *Luis*, 833 F.3d at 626; *Erwin*, 22 F. App'x at 580; *Crosby*, 2017 U.S. Dist. LEXIS 13288.

To the extent the Court could piece together a malicious-prosecution claim from the facts in Bickerstaff's other claims – were we permitted to do so – Prosecutor O'Malley would nevertheless be entitled to judgment on the pleadings.  Here, the facts in the complaint indicate

that Prosecutor O'Malley was involved in Bickerstaff's prosecution in two ways: (1) as supervisor to the assistant prosecutors who failed to present exculpatory evidence to the grand jury; and (2) in deciding to continue the prosecution after the indictment, despite knowing that Bickerstaff's lights were on before the traffic stop and that the gun found in Bickerstaff's car belonged to Edward Bickerstaff.  *See* ECF Doc. 1-1 at 4, 11-12.  To show that Prosecutor O'Malley violated her rights in his role as a supervising prosecutor, Bickerstaff would have to show that he encouraged or condoned the assistant prosecutors' unconstitutional acts.  *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (supervisory liability attaches only when the supervisor "encouraged or condoned the actions" of his subordinates).  Assuming Prosecutor O'Malley had encouraged assistant prosecutors to omit exculpatory facts from grand jury presentations, however, such omissions are not unconstitutional.  *See Martin*, 581 F. App'x at 511 ("[T]he government has no duty to provide potentially exculpatory evidence to the grand jury." (citing *United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004)); ECF Doc. 1-1 at 4, 10-12 (alleging only that there was a policy to withhold exculpatory evidence from grand juries). Further, assuming Prosecutor O'Malley personally decided to continue Bickerstaff's prosecution, he was entitled to rely on the grand jury indictment because Bickerstaff has not alleged that he knowingly or recklessly presented false testimony to the grand jury.  *Bickerstaff*, 830 F.3d at 398; *Barnes*, 449 F.3d at 716; *Martin*, 581 F. App'x at 511; *Robertson*, 753 F.3d at 616.  Thus, even if this court were to look past Prosecutor O'Malley's absolute immunity and Bickerstaff's failure to specifically allege a malicious-prosecution claim against Prosecutor O'Malley, he would nevertheless be entitled to judgment as a matter of law.

### 3. Sheriff Pinkney

Although Bickerstaff does not specifically name Sheriff Pinkney in her malicious prosecution claim, her false-imprisonment allegations that extend past the time legal process began fall within the sphere of malicious prosecution.  *See Wallace*, 549 U.S. at 390 (once legal process begins, claims that detention violated an individual's rights fall under malicious-prosecution).  Nevertheless, Sheriff Pinkney is qualifiedly immune from Bickerstaff's malicious-prosecution claim because he was entitled to rely on decision to charge Bickerstaff, the continued prosecution, and the grand jury indictment as probable cause.  *Everson*, 556 F.3d at 493; *Dorsey*, 517 F.3d at 394; *Bickerstaff*, 830 F.3d at 398; *Barnes*, 449 F.3d at 716; *Blevins*, 2019 U.S. App. LEXIS 15290 at *13; *Lyons*, 687 F.3d at 766; *Hensley*, 469 U.S. at 231.  The law is settled that even if the grand jury indictment had been obtained through false testimony, Sheriff Pinkney would still be entitled to rely upon it because Bickerstaff does not allege that *Sheriff Pinkney* presented false testimony to the grand jury.  *Bickerstaff*, 830 F.3d at 398; *Barnes*, 449 F.3d at 716; *Martin*, 581 F. App'x at 511; *Robertson*, 753 F.3d at 616.  Thus, I recommend that, to the extent Bickerstaff's complaint states a malicious-prosecution claim against Sheriff Pinkney, the Court grant the County defendants' motion to for judgment on the pleadings with regard to that claim.

### F. Civil Conspiracy

Bickerstaff's civil-conspiracy claim relies on her malicious-prosecution claim.  In her complaint, Bickerstaff alleges that the Officer defendants and county prosecutors:

> engaged in a conspiracy to suppress Bickerstaff's constitutional rights by meeting and planning to initiate false criminal charges on the basis of an illegal and unconstitutional stop.  * * *  By engaging in an unconstitutional stop and not presenting all the evidence to the grand jury the police officers and the county prosecutors acted with intent to secure the malicious prosecution of Bickerstaff.
> * * *  Defendants agreed and understood that they would plot, plan[,] conspire[,]

32

or act in concert with respect to the deprivation of plaintiff's rights by conducting an illegal stop and initiating false criminal charges against her.  * * *  [T]hey agreed to take actions which would further their collective objective of harming Bickerstaff by conducting . . . [and] took affirmative acts in furtherance of the conspiracy by conducting an illegal stop, withholding evidence from the grand jury, and initiating false criminal charges against Bickerstaff.

ECF Doc. 1-1 at 13-14.

Cleveland, the Officer defendants, and the County defendants argue that they are entitled to judgment on the pleadings because the facts alleged in Bickerstaff's complaint are insufficient to state a civil-conspiracy claim.  ECF Doc. 41 at 11-12; ECF Doc. 43 at 15-16; ECF Doc. 70 at 5.  Specifically, they assert that Bickerstaff did not adequately allege that she was injured pursuant to an agreement or single plan between two or more persons.  ECF Doc. 41 at 11-12; ECF Doc. 43 at 15-16; ECF Doc. 70 at 5.  Bickerstaff responds that the defendants' motion should be denied because "[t]he police and county prosecutors met to conspire against [her] for the grand jury presentation, which was illegal because there was no probable cause."  ECF Doc. 67 at 12; *see also* ECF Doc. 69 at 12; ECF Doc. 77 at 2-7; ECF Doc. 83 at 3-5.

"'A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.'"  *Bickerstaff*, 830 F.3d at 400 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  To succeed, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted).  "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be [pleaded] with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Id.* (brackets, citation, and internal quotation marks omitted)  In *Bickerstaff*, the Sixth Circuit held that a claim that "all Defendants knowingly wrote and/or

33

solicited and/or facilitated and/or processed and/or presented false statements against Plaintiff
which falsely informed and guided a Grand Jury to indict her of crimes she never committed"
was too broad and vague to state a claim for civil conspiracy.  *Bickerstaff*, 830 F.3d at 400-01;
*see also Heyne*, 655 F.3d at 563-64 (rejecting the statement that "Defendants have conspired
among themselves and with others unnamed . . . to knowing and intentionally deny [Plaintiff's]
constitutional rights" as a legal conclusion "masquerading as [a] factual allegation[]").

### 1.      Officer Defendants

The facts alleged in Bickerstaff's complaint, accepted as true, are sufficient to state a
civil-conspiracy claim against the Officer defendants.  *Handy-Clay*, 695 F.3d at 538;
*Commercial Money Ctr., Inc.*, 508 F.3d at 336.  Here, Bickerstaff specifically alleges that the
Officer defendants met with unidentified county prosecutors to plan an unlawful arrest and with
the intent to maliciously prosecutor her.  ECF Doc. 1-1 at 13-14.  Although she does not allege
exactly *when or where* the Officer defendants met with the unidentified prosecutors, construing
the facts in Bickerstaff's favor, it is at least *plausible* that the Officer defendants met with the
prosecutors before Bickerstaff's November 11, 2015, arrest.  *Handy-Clay*, 695 F.3d at 538;
*Ashcroft*, 556 U.S. at 678; *Bickerstaff*, 830 F.3d at 400; *Heyne*, 655 F.3d at 563.  Further, it is
*plausible* that Bickerstaff's arrest was an overt act in furtherance of the alleged conspiracy.[13]
*Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678.  Moreover, the two-year statute of
limitations does not bar Bickerstaff's civil-conspiracy claim because Bickerstaff's subsequent
prosecution based on Officer McCandless' allegedly false police report was the last overt act in

---

[13] In the context of the alleged conspiracy, all of Officer McCandless's overt acts are imputed to the other
Officer defendants, whom Bickerstaff alleges were co-conspirators.  *See In re Polyurethane Foam
Antitrust Litig.*, 314 F.R.D. 226, 271 (N.D. Ohio 2014) ("[O]nce an affirmative act by one Defendant (or
even non-defendant co-conspirators) is shown it may be imputed to the other members of the conspiracy."
(citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008)); ECF Doc. 1-1 at 13-14.

the alleged conspiracy. *Cf. Kurz v. Michigan*, 548 F.2d 172, 174 (6th Cir. 1977) (indicating that a conspiracy to commit malicious prosecution accrues for statute-of-limitations purposes when the last overt act in the conspiracy occurred). Thus, accepting the facts in Bickerstaff's complaint as true, Bickerstaff has alleged facts that are sufficient to state a claim that the Officer defendants conspired with unidentified county prosecutors to maliciously prosecute her after a unlawful arrest. *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court deny Cleveland and the Officer defendants' motion for judgment on the pleadings with regard to Bickerstaff's civil-conspiracy claim.

### 2. County Prosecutors

Bickerstaff's complaint does not allege sufficient facts to state a civil-conspiracy claim against any of the county prosecutors, because she does not specifically allege which county prosecutors met with the Officer defendants to plan a malicious-prosecution. *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Bickerstaff*, 830 F.3d at 400-01; *Heyne*, 655 F.3d at 563-64; *see* ECF Doc. 1-1 at 13-14. Even if Bickerstaff had alleged a plausible claim against the county prosecutors, they would nevertheless be entitled to absolute prosecutorial immunity because they acted within their prosecutorial functions.[14] *Burns*, 500 U.S. at 486; *Imbler*, 424 U.S. at 431 & n.34; *Joseph*, 795 F.2d at 555; *Grant*, 870 F.2d at 1139. Thus, the facts in Bickerstaff's complaint, accepted as true, have not set forth sufficient material to raise a right to relief above the speculative level and the County defendants are entitled to judgment as a matter of law. *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

---

[14] I incorporate my discussion of absolute prosecutorial immunity from pages 14-16, *supra*.

35

I recommend that the Court grant the County defendants' motion for judgment on the pleadings with regard to Bickerstaff's civil-conspiracy claim.

### G.    Abuse of Process

Bickerstaff's abuse-of-process claim alleges that the "[d]efendants with malice did abuse and pervert the prosecutorial system [in] an attempt to accomplish the goal of convicting Bickerstaff without probable cause . . ." ECF Doc. 1-1 at 17.  Cleveland, the Officer defendants, and the County defendants assert that the facts alleged in Bickerstaff's complaint are insufficient to state an abuse-of-process claim. ECF Doc. 41 at 14; ECF Doc. 43 at 16; ECF Doc. 70 at 8.

The Sixth Circuit "has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005).  If such a claim were cognizable under § 1983, a plaintiff would have to show: (1) a legal proceeding was set in motion in proper for and with probable cause; (2) the proceeding was perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage resulted.  *See id.* at 677; *see also Bickerstaff*, 830 F.3d at 399.

The facts alleged in Bickerstaff's complaint, accepted as true, are insufficient to state a plausible abuse-of-process claim.  *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336.  The existence of probable cause is a key element in an abuse-of-process claim. *See Voyticky*, 412 F.3d at 677, and *Bickerstaff*, 830 F.3d at 399.  Yet Bickerstaff's complaint specifically alleges that the defendants arrested and prosecuted her *without probable cause*. ECF Doc. 1-1 at 17.  Accepting the absence of probable cause as true for purposes of this claim, there is no genuine issue of material fact that the defendants abused the criminal process, and the

defendants are entitled to judgment as a matter of law. *Handy-Clay*, 695 F.3d at 538;

*Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court grant Cleveland's, the Officer defendants', and the County

defendants' motions for judgment on the pleadings with regard to Bickerstaff's abuse-of-process

claim.

### H. *Monell* Claims

Bickerstaff's complaint alleges three separate *Monell* claims seeking to impute liability

on Cleveland and Cuyahoga County for underlying constitutional violations: (1) a policy-or-

custom claim; (2) a failure-to-supervise claim; and (3) a failure-to-investigate claim. ECF Doc.

1-1 at 9-16; *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978) (official policy

or custom); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (a failure to

investigate a complaint could be used to show an "official policy" under *Monell*); *Mize v.

Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010) (failure-to-supervise claim under *Monell*).

Specifically, Bickerstaff alleges that Cleveland and Cuyahoga County had a policy to withhold

evidence from grand juries and "initiate baseless criminal charges." ECF Doc. 1-1 at 9-10.

Bickerstaff also alleges that Cleveland and Cuyahoga County failed to supervise, investigate

complaints that employees "abus[ed] their authority and harass[ed]" her, or discipline employees

for alleged misconduct, which "leads one to believe the city and county approved of these

tactics." ECF Doc. 1-1 at 10-16. Bickerstaff asserts that Cleveland and Cuyahoga County

"knew the police officer sand prosecutors would confront a situation where they would abuse

their authority to infringe upon the constitutional rights of citizens like Bickerstaff," but they

were deliberately indifferent. ECF Doc. 1-1 at 11-12. She contends that the officers' and

prosecutors' "free reign to abuse their authority" led to her alleged unlawful arrest and malicious prosecution.  ECF Doc. 1-1 at 11-16.

Cleveland and Cuyahoga County assert that they are entitled to judgment on the pleadings on Bickerstaff's *Monell* claims because Bickerstaff has not pleaded sufficient facts to show that: (1) they failed to supervise employees with deliberate indifference to employees' unconstitutional conduct; or (2) they had a custom or policy that led to unlawful arrests and malicious prosecutions.  ECF Doc. 41 at 7-8; ECF Doc. 43 at 10-15; ECF Doc. 70 at 4-5. Bickerstaff responds that "[t]he Cuyahoga County prosecutor's office has a history of patterns, practices[, and] customs [of] reckless acts withholding exculpatory information form defense attorneys," and that "[t]he city of Cleveland is aware they have policies to arrest citizens even though[] a person has not broken the law."  ECF Doc. 67 at 5, 8; *see also* ECF Doc. 69 at 5, 8 (stating that Prosecutor O'Malley's previous decision not to drop victim intimidation charges against Bickerstaff showed that he wanted to indict her despite a lack of probable cause); ECF Doc. 77 at 2-7; ECF Doc. 83 at 4-5.  In support of her *Monell* claims, Bickerstaff attaches to her response in opposition several documents, of which she asks this Court to take judicial notice. ECF Doc. 67 at 12-40; *see also* ECF Doc. 69-1 at 32, 34 (an additional letter and section from a report).  The County defendants ask the Court to not consider Bickerstaff's exhibits.

Although a local government or municipality may not be held vicariously liable for unconstitutional acts by its employees, it may be liable if its own action "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such a deprivation.  *See Monell*, 436 U.S. at 692.  "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused" them to suffer a constitutional violation.  *Connick*, 563 U.S. at 60 (quoting *Monell*, 436 U.S. at 691, 694);

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").  To satisfy this requirement, the plaintiff "must identify the policy, connect the policy to the [municipality] itself, and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).  Official policy includes lawmakers' decisions, policy-makers' acts, and "practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.  In *Board of County Commissioners v. Brown*, the Supreme Court explained that:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  * * * Whe[n] a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.

520 U.S. 397, 404-05 (1997) (emphasis in original) (citations omitted).  Such a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Id.* at 407.  "[S]imple or even heightened negligence will not suffice." *Id.*

When a plaintiff seeks to impose *Monell* liability based on a local government's failure to supervise, investigate, or discipline its employees, the plaintiff must show that: (1) the defendant government was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) the defendant government chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violations.  *See Mize v. Tedford*,

375 F. App'x at 500 (failure to supervise); *Leach*, 891 F.2d at 1247-48 (failure to investigate); *Wiggins v. Dupont*, No. 1:17-cv-1107, 2018 U.S. Dist. LEXIS 87468 *15 (N.D. Ohio May 24, 2018) (failure to discipline).  "[L]esser standards of fault and causation would open municipalities to unprecedented liability under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 389-92 (1989).

### 1.   Judicial Notice

Courts may take judicial notice of at least some documents in the public record when considering a motion for judgment on the pleadings.  *Cf. Stafford v. Jewelers Mut. Ins. Co.*, 554 F. App'x 360, 369 (6th Cir. 2014) (addressing judicial notice when considering a Rule 12 motion).  However, the court is limited to taking judicial notice of facts which are not subject to reasonable dispute, such as the fact that a document exists and not the truth of the matters asserted within the document.  *Id.*

Bickerstaff asks the court take judicial notice of nine documents, which she asserts support her *Monell* claims:

> (1) a journal entry in *State v. Griffin*, Cuy. Cty. Ct. Com. Pl. Case No. CR-17-621174-A, in which a defendant pleaded guilty to felonious assault charges, ECF Doc. 67 at 13-14;
>
> (2) an article indicating that former Prosecutor Bill Mason had a practice of bringing criminal charges in cases with little or no evidence to support a conviction, ECF Doc. 67 at 15-26;
>
> (3) a March 25, 2019, letter complaining to the Cuyahoga County Prosecutor's office that "Blaise Thomas," accused her of harassing a state witness, ECF Doc. 67 at 28-29;
>
> (4) a January 6, 2016, letter from Sheriff Pinkney responding to a public records request and stating that Brenda Bickerstaff did not have a CCW permit, ECF Doc. 67 at 31;
>
> (5) a June 27, 2016, letter to Sheriff Pinkney complaining that a sheriff's office employee was rude to her when she was trying to get information about where a client was being held, ECF Doc. 67 at 32-34;

(6) an April 6, 2016, email to Cuyahoga County complaining that a sheriff's deputy called a judge in her then-pending criminal case to say that she had harassed sheriff's deputies, ECF Doc. 67 at 36;

(7) a June 5, 2017, letter complaining that sheriff's deputy Fanera was rude to her when she went to the courthouse and told her she was banned from one of the floors of the courthouse, ECF Doc. 67 at 37-40;

(8) an April 25, 2013, letter complaining that prosecutors lied to her and failed to provide the court with information about her arresting officers' (Lucarelli) sexual misconduct with crime victims, ECF Doc. 69-1 at 32; and

(9) a section of a report indicating that on one occasion an off-duty officer had used excessive force, but that the Cleveland Police Department did not discipline him, ECF Doc. 69-1 at 34.

I recommend that the Court decline to take judicial notice of any of these documents.  Bickerstaff has not shown how most of the attached documents are relevant to her case.  The journal entry from *State v. Griffin*, has no apparent bearing on any of the issues in this case.  The article regarding former Prosecutor Mason's practices does not indicate whether Cuyahoga County was on notice of any meritless criminal cases brought under Prosecutor O'Malley's leadership.  The letters complaining about sheriff's office employees' conduct do not in any way indicate that Cleveland or Cuyahoga County were aware that officers would arrest and detain people without probable cause.  The March 2019 letter is not temporally relevant to Bickerstaff's claims, as it was written well-after the conduct alleged in the complaint occurred.  The April 2013 letter indicating that prosecutors withheld exculpatory impeachment evidence and the report indicating that an off-duty officer was not disciplined for using excessive force could be relevant to whether Cleveland and Cuyahoga County were on notice that officers and prosecutors engaged in unconstitutional misconduct.  Nevertheless, even if the court took judicial

notice of those documents, it could only take notice that those documents *exist* and could not take notice of their contents. *Stafford*, 554 F. App'x at 369.

I recommend that the Court decline to take judicial notice of any of the documents attached to Bickerstaff's response.

### 2.    Cleveland

The facts alleged in Bickerstaff's complaint, accepted as true, are insufficient to state a *Monell* claim. Bickerstaff's conclusory allegation that Cleveland had a "custom or policy" does not raise her claim above the speculative level, because it does not identify a specific custom or policy that Cleveland adopted or identify a decision by a policy-maker. *Garner*, 8 F.3d at 364; *Connick*, 563 U.S. at 61; *Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678; *Jackson*, 864 F.3d at 466. Similarly, Bickerstaff has not alleged sufficient facts to state a plausible claim that Cleveland caused the alleged constitutional violations by failing to supervise, investigate, or discipline its employees with deliberate indifference toward the likelihood that a lack of corrective action would result in a constitutional violation. Although Cleveland was aware that Officer McCandless was following Bickerstaff to try to catch her on an infraction, that fact alone does not indicate that Officer McCandless was committing or likely to commit a constitutional violation. *See United States v. Herrin*, 468 F. App'x 444, 446 (6th Cir. 2012) ("'mere pursuit' does not necessarily constitute a seizure"); *see also California v. Hodari D.*, 499 U.S. 421, 628 (1991) (a seizure does not occur until a suspect submits to an officer's authority). Bickerstaff also does not allege any facts indicating that Cleveland knew officers had engaged, or were likely to engage, in any conspiracies to violate individuals' civil rights. *Mize*, 375 F. App'x at 500; *Leach*, 891 f.2d at 1247-48; *Wiggins*, 2018 U.S. Dist. LEXIS 87468 at *15; *Harris*, 489 U.S. at 389-92; *Brown*, 520 U.S. at 404-07; *see* ECF Doc. 1-1 at 9-16. At most, Bickerstaff

alleges that the City of Cleveland had a policy of withholding exculpatory evidence from grand juries and was aware that its officers withheld exculpatory evidence, but such conduct is not a constitutional violation.  *Martin*, 581 F. App'x at 511 ("[T]he government has no duty to provide potentially exculpatory evidence to the grand jury."); *United States v. Angel*, 355 F.3d at 475; ECF Doc. 1-1 at 9-16.  Thus, accepting the facts in Bickerstaff's complaint as true, the complaint fails to raise a right to relief above the speculative level, and Cleveland is entitled to judgment as a matter of law.  *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court grant Cleveland's motion for judgment on the pleadings on Bickerstaff's *Monell* claims.

### 3. Cuyahoga County

Like Bickerstaff's *Monell* claims against Cleveland, Bickerstaff's complaint fails to allege a *Monell* claim against Cuyahoga County that raises the right to relief above the speculative level.  *Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678; *Jackson*, 864 F.3d at 466.  Bickerstaff's allegation that Cuyahoga County had a custom or policy directing its prosecutors to withhold exculpatory evidence from grand juries is insufficient to state a *Monell* claim because, as discussed above, prosecutors have no duty to present exculpatory evidence to a grand jury.  *Martin*, 581 F. App'x at 511; *United States v. Angel*, 355 F.3d at 475; *Monell*, 436 U.S. at 692; *Connick*, 563 U.S. at 60; *Robertson*, 753 F.3d at 662.  Further, Bickerstaff's complaint does not allege any facts indicating whether Cuyahoga County was on notice that its prosecutors were likely to maliciously prosecute individuals or engage in a conspiracy to do so.  *Mize*, 375 F. App'x at 500; *Leach*, 891 f.2d at 1247-48; *Wiggins*, 2018 U.S. Dist. LEXIS 87468 at *15; *Harris*, 489 U.S. at 389-92; *Brown*, 520 U.S. at 404-07; *see generally* ECF Doc. 1-1.

43

Even if the Court accepted Bickerstaff's various complaints against county prosecutors as providing Cuyahoga County with notice that prosecutors were out to get her, her complaint does not allege any facts indicating whether Cuyahoga County was on notice that the assistant prosecutors in her case – who are as yet unnamed – were likely to violate individuals' constitutional rights.  ECF Doc. 1-1 at 11-12, 25-26.

Moreover, Bickerstaff has not shown that the County's employees committed any underlying constitutional violations that could support a *Monell* claim.  *Monell*, 436 U.S. at 692; *Connick*, 563 U.S. at 60; *Robertson*, 753 F.3d at 622.  As discussed above, the prosecutors were entitled to rely on the grand jury indictment, notwithstanding their failure to present exculpatory information, in prosecuting her.  *Bickerstaff*, 830 F.3d at 398; *Barnes*, 449 F.3d at 716; *Martin*, 581 F. App'x at 511; *Angel*, 355 F.3d at 475; *Monell*, 436 U.S. at 692; *Connick*, 563 U.S. at 60; *Robertson*, 753 F.3d at 662; ECF Doc. 1-1 at 9-16.  Similarly, the sheriff's office employees were entitled to rely upon the officers' arrest and the grand jury indictment as probable cause to continue her detention.  *Bickerstaff*, 830 F.3d at 398; *Barnes*, 449 F.3d at 716; *Martin*, 581 F. App'x at 511; *Angel*, 355 F.3d at 475; *Blevins*, 2019 U.S. App. LEXIS 15290 at *13; *Lyons*, 687 F.3d at 766; *Hensley*, 469 U.S. at 231; *Monell*, 436 U.S. at 692; *Connick*, 563 U.S. at 60; *Robertson*, 753 F.3d at 662; ECF Doc. 1-1 at 9-16.  Thus, accepting the facts in Bickerstaff's complaint as true, Bickerstaff has failed to plead sufficient facts to raise the right to relief on a *Monell* claim above the speculative level, and Cuyahoga County is entitled to judgment as a matter of law.  *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court grant Cuyahoga County's motion for judgment on the pleadings with regard to Bickerstaff's *Monell* claims.

## I.      Statutory Immunity and Emotional-Distress Claims

Bickerstaff's complaint alleges that Cleveland, the Officer defendants, and the County defendants committed the alleged constitutional violations with the intent to cause her emotional distress, or with recklessness toward whether she would suffer emotional distress.  ECF Doc. 1-1 at 17-18.  She asserts that the defendants' conduct was "extreme and outrageous."  *Id.*

Cleveland, the Officer defendants, and the County defendants argue that they are entitled to judgment on the pleadings on Bickerstaff's emotional distress claims, because they are entitled to statutory immunity under Ohio law.  ECF Doc. 41 at 12-14; ECF Doc. 43 at 9-10; ECF Doc. 70 at 7-8; ECF Doc. 82 at 6-8.  The County defendants also argue that Bickerstaff has failed to allege sufficient facts to state an emotional-distress claim.  ECF Doc. 41 at 14-15; ECF Doc. 70 at 8-9.  Liberally construed, Bickerstaff responds that the defendants' statutory-immunity arguments should be denied because there is no immunity from constitutional claims.  ECF Doc. 67 at 11-12; ECF Doc. 69 at 11-12.

### 1.      Emotional Distress Standard

The Sixth Circuit has distinguished between prayers for damages due to "severe emotional distress" sustained as a result of a constitutional violation actionable under 42 U.S.C. § 1983, and independent emotional-distress claims, which are not actionable under 42 U.S.C. § 1983.  *See, e.g.*, *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir. 1997) (noting that, whereas an independent, state-law emotional-distress claim requires the plaintiff to show outrageous or extreme conduct by the defendant, there is no such requirement in a prayer for emotional damages based on a constitutional violation); *see also Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005) ("We have not, however, held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C.

45

§ 1983.").  Thus, when federal courts are confronted with an independent emotional-distress

claim, they must apply state law.  *Cf. Voyticky*, 412 F.3d at 678 (applying Ohio law in evaluating

an intentional infliction of emotional-distress claim in a § 1983 case).

 To show that a defendant intentionally or negligently inflicted emotional distress under

Ohio law, "'a plaintiff must prove (1) that the defendant intended to cause [or should have

known that his actions would cause] the plaintiff to suffer serious emotional distress, (2) that the

defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the

proximate cause of the plaintiff's serious emotional distress.'"  *See Burgess*, 735 F.3d at 480

(citing *Phung v. Waste Mgmt., Inc.*, 644 N.E.2d 286, 289 (Ohio 1994)).  Conduct is "extreme and

outrageous" when it "go[es] beyond all possible bounds of decency, and [would] be regarded as

atrocious, and utterly intolerable in a civilized community."  *See Yeager v. Local Union 20,

Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983),

*abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051, 1054 (Ohio 2007).

## 2. Ohio Statutory Immunity

 Ohio provides statutory immunity from liability to political subdivisions, including

municipalities and counties, and employees of political subdivisions.  *See* Ohio Rev. Code

§§ 2744.02, Ohio Rev. Code §§ 2744.03.  Under Section 2744.02(A)(1), political subdivisions

are not liable for damages in tort actions for any injuries or losses caused by any act or omission

of the political subdivision or its employees.  Ohio Rev. Code § 2744.02(A)(1).  Although this

immunity is subject to some exceptions, there are no exceptions to immunity that apply to tort

claims resulting from the governmental functions of a political subdivision or its employees.  *See*

Ohio Rev. Code § 2744.02(B) (providing for exceptions when injuries or losses are caused by

negligent operation of motor vehicles, negligent performance of proprietary functions, negligent

failure to maintain roads, negligent failure to maintain government buildings, and when civil

liability is expressly imposed by statute).  "The employees of political subdivisions are immune

from liability pursuant to R.C. 2744.03(A)(6) unless the employee's acts or omissions 'were with

malicious purpose, in bad faith, or in a wanton or reckless manner.'"  *Cook v. Cincinnati*, 658

N.E.2d 814, 820 (Ohio App. Ct. 1995) (quoting Ohio Rev. Code § 2744.03(A)(6)); *see also id.* at

820-21 ("[A] police officer, for example, cannot be held personally liable for acts committed

while carrying out his or her official duties unless one of the exceptions to immunity is

established").  Ohio courts have construed these exceptions as follows:

> "'Malice' is the willful and intentional design to do injury or the intention or
> desire to harm another, usually seriously, through conduct which is unlawful or
> unjustified.  * * *  'Bad faith' involves a dishonest purpose, conscious
> wrongdoing, the breach of a known duty through some ulterior motive or ill will,
> as in the nature of fraud, or an actual intent to mislead or deceive another.  * * *
> [W]anton misconduct is the failure to exercise any care whatsoever.  * * *  [M]ere
> negligence is not converted into wanton conduct unless the evidence establishes a
> disposition to the perversity on the party of the tortfeasor.  Such perversity must
> be under such conditions that the actor must be conscious that his conduct will, in
> all likelihood, result in an injury.'"  * * *  '[R]eckless' conduct refers to an act
> done with knowledge or reason to know of facts that would lead a reasonable
> person to believe that the conduct creates an unnecessary risk of * * * harm[, and]
> that this risk is greater than that necessary to make the conduct negligent.

*Thornton v. Summit County Children Serv. Bd.*, No. 23490, 2007-Ohio-4657 ¶¶11-12 (Ohio App.

Ct. 2007) (citations omitted).  Statutory immunity is an affirmative defense, and it is waived if

not raised.  *See Supportive Solutions, LLC v. Elec. Classroom of Tomorrow*, 997 N.E.2d 490,

495 (Ohio 2013).

### 3. Cleveland and Cuyahoga County

The facts alleged in Bickerstaff's complaint, accepted as true, are insufficient to state

plausible state-law emotional-distress claims against Cleveland and the County defendants.

*Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678; *Jackson*, 864 F.3d at 466.  Cleveland

and Cuyahoga County are statutorily immune from Bickerstaff's state-law emotional-distress claim because: (1) Bickerstaff bases her claims of Cleveland and the County defendants' conduct within their governmental functions; and (2) Bickerstaff's claims against Cleveland and Cuyahoga County do not fall within any of the exceptions in Ohio Rev. Code § 2744.02. Ohio Rev. Code § 2744.02;  Sheriff Pinkney is also entitled to statutory immunity, because Bickerstaff's complaint does not allege facts indicating that he acted with malicious purpose, in bad faith, or in a wanton or reckless manner with regard to Bickerstaff's detention in the Cuyahoga County Jail. Ohio Rev. Code § 2744.03(A)(6); *Cook*, 658 N.E.2d at 820; *Thornton*, 2007-Ohio-4657 ¶¶11-12.  Even if Cleveland, Cuyahoga County, and Sheriff Pinkney were not entitled to statutory immunity, however, Bickerstaff's emotional distress claims – which are predicated on her constitutional claims – would still fail because, as discussed above, Bickerstaff's complaint does not allege sufficient facts to raise plausible constitutional claims against Cleveland, Cuyahoga County, or Sheriff Pinkney.  Accordingly, there is no genuine issue of fact that Cleveland, Cuyahoga County, and Sheriff Pinkney intentionally or negligently caused Bickerstaff emotional distress through constitutional violations, and Cleveland, Cuyahoga County, and Sheriff Pinkney are entitled to judgment as a matter of law. *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court grant the defendants' motions for judgment on the pleadings with respect to Bickerstaff's emotional-distress claims against Cleveland, Cuyahoga County, and Sheriff Pinkney.

### 4.    Prosecutor O'Malley

Similarly, the facts in Bickerstaff's complaint, accepted as true, are insufficient to state a plausible emotional-distress claim against Prosecutor O'Malley. *Handy-Clay*, 695 F.3d at 538;

*Ashcroft*, 556 U.S. at 678; *Jackson*, 864 F.3d at 466.  Although Prosecutor O'Malley acted at all times within his governmental function, he is not entitled to statutory immunity from Bickerstaff's emotional-distress claims, because she alleges that he acted with recklessness toward whether his subordinates intended her prosecution to cause her emotional distress.  Ohio Rev. Code § 2744.03(A)(6); *Cook*, 658 N.E.2d at 820; *Thornton*, 2007-Ohio-4657 at ¶¶11-12. Nevertheless, as discussed above, Prosecutor O'Malley is still entitled to absolute prosecutorial immunity from all of Bickerstaff's claims – including her state claims – because he acted at all times within his role as a prosecutor and supervising prosecutor.  *See Tuleta v. Medical Mut. of Ohio, et al.*, No. 100032, 2014-Ohio-930 ¶¶17-21 (Ohio App. Ct. 2014) (applying the same absolute immunity standard under federal law to an emotional-distress claim under Ohio law). Thus, Bickerstaff's complaint does not raise the right to relief on an emotional-distress claim against Prosecutor O'Malley above the speculative level, and Prosecutor O'Malley is entitled to judgment as a matter of law.  *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court grant the County defendant's motion for judgment on the pleadings with respect to Bickerstaff's emotional-distress claim against Prosecutor O'Malley.

### 5.    The Officer Defendants

Accepting the facts in Bickerstaff's complaint as true, Bickerstaff has raised a *plausible* emotional-distress claim against the Officer defendants.  *Handy-Clay*, 695 F.3d at 538; *Ashcroft*, 556 U.S. at 678; *Jackson*, 864 F.3d at 466.  Although the Officer defendants acted within their roles as police officers when they arrested her and when McCandless filed a police report against her, Bickerstaff has alleged that the conspired to initiate the arrest and charge her with malice and in bad faith.  Ohio Rev. Code § 2744.03(A)(6); *Cook*, 658 N.E.2d at 820; *Thornton*, 2007-

Ohio-4657 at ¶¶11-12.  Here, Bickerstaff alleges that the Officer defendants acted maliciously when they met with unnamed prosecutors to plan an arrest and bring charges against her.  ECF Doc. 1-1 at 13-14.  Further, she alleges that they acted in bad faith when they brought charges against her despite knowing that she did not own the gun found in her back seat, and when Officer McCandless filed a false police report against her.  *Id.* at 8-9, 13-14.  These alleged acts fall within exceptions to statutory immunity for officers.  *Thornton*, 2007-Ohio-4657 at ¶¶11-12.

Moreover, the only other defense that the Officers have raised against Bickerstaff's emotional distress claims – the statute of limitations – also fails here.  Because the alleged conspiracy would be outrageous conduct if accepted as true, a four-year limitations period applies to Bickerstaff's emotional distress claim.  *See Presti v. Ahrens*, No. 54620, 1988 Ohio App. LEXIS 4506 *19-20 (Ohio App. Ct. 1988) (Emotional-distress claims that are based on truly extreme or outrageous facts, such as "a particularly diabolical false imprisonment," are measured under the four-year statute of limitations even though they overlap with another tort); *Lee v. Lucas*, No. 1:10-cv-151, 2011 U.S. Dist. LEXIS 125756 *14-15 (finding that an emotional-distress claim based on unlawful arrest/false imprisonment was subject to a four-year statute of limitations because claim alleged extreme facts – a conspiracy to hide exculpatory evidence, fabricate inculpatory evidence, and mislead prosecutors).  Bickerstaff's complaint was filed well-within the four-year window.  ECF Doc. 1-1.  Thus, Bickerstaff has raised a *plausible* emotional-distress claim against the Officer defendants, and the Officer defendants are not entitled to judgment as a matter of law.  *Handy-Clay*, 695 F.3d at 538; *Commercial Money Ctr., Inc.*, 508 F.3d at 336; *Paskvan*, 946 F.2d at 1235.

I recommend that the Court deny Cleveland and the Officer defendants' motion for judgment on the pleadings with respect to Bickerstaff's emotional distress claims against the Officer defendants.

## VI.  Leave to Amend

"There is currently no rule of law in [the Sixth Circuit] that requires a district court, *sua sponte*, to give a *pro se* plaintiff leave to amend [her] complaint absent a request." *Brown v. Matauszak*, 415 F. App'x 608, 615-16 (2011) (noting that several other circuit courts have required courts to permit a plaintiff to file a curative amendment even when the plaintiff did not seek leave to amend).  Nevertheless, "[w]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  *Sua sponte* consideration of leave to amend is especially important when the defects in the pleadings are likely the result of a *pro se* litigant's lack of legal training.  *See Brown*, 415 F. App'x at 614-15 (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)).  In *Gordon v. England*, the Sixth Circuit addressed a similar scenario in an employment discrimination case and remanded for the district court to consider whether to grant leave to amend, even though the plaintiff had not asked for it.  354 F. App'x 975, 981-83 (6th Cir. 2009).  The court explained that the plaintiff "was proceeding *pro se* after having been . . . abandoned by her attorney," she was unlikely to have been aware of the technical requirements of Rule 15, and the serious allegations – racial discrimination, retaliation, and sexual harassment – merited an opportunity to amend the complaint.  *Id.* at 81-82.

51

Leave to amend is not appropriate in every scenario, however.  When amendment would be futile or cause undue delay that would unfairly prejudice the defendant, leave to amend should be denied.  *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002).

Although Bickerstaff has not asked for leave to amend her complaint, the facts of this case favor *sua sponte* leave to amend.  *PR Diamonds, Inc.*, 364 F.3d at 698; Fed. R. Civ. P. 15(a)(2); *Brown*, 415 F. App'x at 614-15; *Gordon*, 354 F. App'x at 981-83.  Here, Bickerstaff is proceeding *pro se* after her attorney's indefinite suspension from the practice of law for unethical conduct, and Bickerstaff's lack of legal training may have caused her to be unaware of the technical requirements of Rule 15.  *See Brown*, 415 F. App'x at 614-15; *Gordon*, 354 F. App'x at 981-83.  Bickerstaff's complaint also alleges serious conduct that merits careful scrutiny: a conspiracy to between law enforcement officers and prosecutors to have her arrested and bring meritless criminal charges against her in retaliation for her work as a criminal defense investigator.  ECF Doc. 1-1; *see Gordon*, 354 F. App'x at 981-83.  Further, at this early stage in litigation, granting leave to amend will not unfairly prejudice the defendants.  *Dubuc*, 312 F.3d at 752.

But not all of the defects in Bickerstaff's claims can be cured by amendment.  As discussed above, Bickerstaff's unlawful arrest and false imprisonment claims are barred by the applicable two-year statute of limitations.  Bickerstaff's claims against Sheriff Pinkney are barred by qualified immunity; her claims against Prosecutor O'Malley are barred by absolute prosecutorial immunity; and her claims against the John Doe prosecutor defendants are barred by both the applicable statute of limitations and absolute prosecutorial immunity.  Thus, leave to amend these claims should be denied as futile.  *Dubuc*, 312 F.3d at 752.

On the other hand, Bickerstaff could potentially amend her complaint to revive the following claims: (1) the malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie; (2) the abuse-of-process claim against the Officer defendants[15]; and (3) the *Monell* claims against Cleveland and Cuyahoga County.  I recommend that the Court *sua sponte* grant Bickerstaff leave to amend these claims.

Leave to amend should be limited to allow Bickerstaff to cure the deficiencies identified in her: (1) malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie, *see* page 29, *supra*; (2) abuse-of-process claim against the Officer defendants, *see* pages 36-37, *supra*; and (3) *Monell* claims against Cleveland and Cuyahoga County, *see* pages 42-44, *supra*.  Because an amendment could not cure the deficiencies in the other claims recommended for dismissal, any amendment seeking to amend or otherwise revive those claims should not be permitted.

## VII.    Summary and Recommendations

The following table summarizes the above findings regarding whether Bickerstaff's claims survive the defendants' motions for judgment on the pleadings and whether her claims are subject to leave to amend:

**Count I**
**Malicious Prosecution (42 U.S.C. § 1983)**

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| Official Capacity Defendants | Duplicative of Government claims | No | No |
| Jon Doe Prosecutors 1 and 2 | Lack of Service and Statute of Limitations | No | No |
| Prosecutor O'Malley | Absolute Prosecutorial Immunity | No | No |
| Sheriff Pinkney | Qualified Immunity | No | No |
| *Officer McCandless* | *None* | *Yes* | *N/A* |
| Officers Goshen, Nuti, McKenzie | Insufficient Facts Pleaded | No | *Yes* |
| Cleveland & Cuyahoga County | No Respondeat Superior Liability | No | No |

---

[15] Although a sufficient abuse-of-process claim would be inconsistent with Bickerstaff's other claims, Rule 8 permits parties to plead alternative and inconsistent claims.  *See* Fed. R. Civ. P. 8(d).

### Counts II, III, and V
#### *Monell* Claims – Custom-or-Policy, Failure-to-Supervise, and Failure-to-Investigate

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| Official Capacity Defendants | Duplicative of Government claims | No | No |
| Cleveland & Cuyahoga County | Insufficient Facts Pleaded | No | *Yes* |

### Count IV
#### Civil Conspiracy (42 U.S.C. § 1983)

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| Official Capacity Defendants | Duplicative to Government claims | No | No |
| Jon Doe Prosecutors 1 and 2 | Lack of Service and Statute of Limitations | No | No |
| Prosecutor O'Malley | Absolute Prosecutorial Immunity | No | No |
| *Officer Defendants* | *None* | *Yes* | *N/A* |
| Cleveland & Cuyahoga County | No Respondeat Superior Liability | No | No |

### Counts VI and VII
#### Unlawful Arrest and False Imprisonment (42 U.S.C. § 1983)

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| Official Capacity Defendants | Duplicative of Government claims | No | No |
| Jon Doe Prosecutors 1 and 2 | Lack of Service and Statute of Limitations | No | No |
| Prosecutor O'Malley | Absolute Prosecutorial Immunity | No | No |
| Officer Defendants | Statute of Limitations | No | No |
| Sheriff Pinkney | Qualified Immun. & Statute of Limitations | No | No |
| Cleveland & Cuyahoga County | No Respondeat Superior Liability | No | No |

### Count VIII
#### Abuse of Process (42 U.S.C. § 1983)

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| Official Capacity Defendants | Duplicative of Government claims | No | No |
| Jon Doe Prosecutors 1 and 2 | Lack of Service and Statute of Limitations | No | No |
| Prosecutor O'Malley | Absolute Prosecutorial Immunity | No | No |
| Officer Defendants | Insufficient Facts Pleaded | No | *Yes* |
| Cleveland & Cuyahoga County | No Respondeat Superior Liability | No | No |

### Count IX
#### Infliction of Emotional Distress (State Law)

| Defendant | Deficiency | Surviving | Amend |
|---|---|---|---|
| John Doe Prosecutors 1 and 2 | Lack of Service and Statute of Limitations | No | No |
| Cleveland & Cuyahoga County | Statutory Immunity and Insufficient Facts | No | No |
| Sheriff Pinkney | Statutory Immunity and Insufficient Facts | No | No |
| Prosecutor O'Malley | Absolute Prosecutorial Immunity | No | No |
| *Officer Defendants* | *None* | *Yes* | *N/A* |

Based on the above, I recommend that the Court GRANT the County defendants' motion for judgment on the pleadings (ECF Doc. 41) as to all claims. I also recommend that the Court GRANT in part Cleveland and the Officer defendants' motion for judgment on the pleadings

(ECF Doc. 43) with regard to Bickerstaff's claims for: (1) a unlawful arrest; (2) false imprisonment; (3) abuse of process; (4) civil conspiracy against Cleveland and the County defendants; (5) malicious prosecution against Cleveland, the County defendants, and Officers Goshen, Nuti, and McKenzie; (6) *Monell* liability (including custom-or-policy claims, failure-to-investigate claims, and failure-to-supervise claims) against Cleveland and Cuyahoga County; and (7) emotional distress against Cleveland and the County defendants.

Because the facts alleged in Bickerstaff's complaint are sufficient to state claims for malicious prosecution against Officer McCandless, as well as civil conspiracy and emotional distress against the Officer defendants, I recommend that the DENY in part Cleveland and the Officer defendants' motion for judgment on the pleadings (ECF Doc. 43) with respect to those claims.  Finally, I recommend that the Court GRANT *sua sponte* Bickerstaff leave to amend (1) the malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie; (2) the abuse-of-process claim against the Officer defendants; and (3) the *Monell* claims against Cleveland and Cuyahoga County.

Dated: August 12, 2019

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).