## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**Brenda Bickerstaff,**                                    **Case No. 1:18cv1142**

                                    **Plaintiff,**

        **-vs-**                                    **JUDGE PAMELA A. BARKER**

**Cuyahoga County,** *et al.***,**

                                                            **MEMORANDUM OPINION AND**
                                    **Defendants**          **ORDER**

Currently pending is *pro se* Plaintiff Brenda Bickerstaff's Objection to the Report & Recommendation of Magistrate Judge Parker dated June 11, 2020.  (Doc. Nos.  146, 148.) Also pending is Plaintiff's Motion to Strike the Cuyahoga County Defendants' Response to Plaintiff's Objection, which the County Defendants opposed.  (Doc. Nos. 152, 153.)

For the following reasons: Plaintiff's Motion to Strike (Doc. No. 152) is DENIED.  Plaintiff's Objection (Doc. No. 148) is also DENIED and the Magistrate Judge's Report & Recommendation (Doc. No. 146) is ADOPTED.

## I.      Relevant Background

As the procedural history and factual allegations are set forth at length in Magistrate Judge Parker's June 11, 2020 Report & Recommendation ("R&R"),[1] they will not be repeated in full herein. The Court will recite only that background necessary for resolution of Plaintiff's Objection and Motion to Strike.

### A.      Factual Allegations

---

[1] The parties do not object to either the Procedural Background or Facts Sections of the Report & Recommendation and, therefore, those sections of the R&R are hereby adopted.

In her Amended Complaint, Plaintiff alleges the following facts. Plaintiff is employed as a private investigator and often works for criminal defense attorneys on felony cases. (Doc. No. 101 at ¶ 18.) Sometimes her work has resulted in a not guilty verdict or vacated conviction, which "has caught the attention of the prosecutors and police officers." (*Id*. at ¶ 19.) Because of her involvement in these cases, she has been harassed by various assistant prosecutors and law enforcement officers over a period of years. [2] (*Id*. at ¶¶ 20-22, 47.) Plaintiff claims that she repeatedly complained about these police officers and county prosecutors but neither the City nor County ever investigated her complaints. (*Id*. at ¶¶ 11, 40, 41, 46.) Plaintiff also claims that no officers or prosecutors were ever disciplined for their harassing behavior. (*Id*. at ¶ 40.)

At some point, the Officer Defendants and assistant prosecutors met and planned to "initiate false criminal charges on the basis of an illegal and unconstitutional stop." (*Id.* at ¶ 54.) Specifically, these Defendants "agreed and understood that they would plot, plan, conspire, or act in concert with respect to the deprivation of plaintiff's rights by conducting an illegal stop and initiating false charges against her." (*Id*. at ¶ 56.)

On November 11, 2015, Plaintiff went to her residence where she retrieved her car from her adult son. (*Id*. at ¶ 10.) She and her son shared the vehicle. (*Id*.) Her son worked as a licensed security officer and owned a lawfully registered work firearm. (*Id*.) On this particular day, Plaintiff had received a call from a client and was in a rush. (*Id*.) Her son had just arrived home from work,

---

[2] Of particular relevance, Plaintiff alleges that, in November 2013, she filed a complaint against Defendant McCandless, alleging that he was "following her and harassing her in her job as a Private Investigator." (*Id*. at ¶ 11.) A copy of this complaint is attached as an exhibit to the Complaint herein. *See* Doc. No. 101-1 at PageID#s 755-756. Plaintiff also attaches to the Complaint an Affidavit, in which she lists eleven specific examples of conflicts she had with Assistant County Prosecutors in various cases that she worked on. (Doc. No. 101-1 at PageID#s 761-763.) She also states that she was wrongfully indicted in April 2012 for Intimidation of a Crime Victim or Witness and Telecommunications Harassment. (*Id*. at PageID# 763.) Plaintiff claims the officer who pursued the charges against her in that case was "sexting" with the alleged victim, but she was indicted anyway. (*Id*.) She asserts the case was later dismissed. (*Id*.)

and "passed the [car] keys to Bickerstaff outside as she then took her turn with the vehicle." (*Id.*)
"Unknown to Bickerstaff her son had left his lawfully registered work firearm in her vehicle in his
bag on the rear seat of her vehicle." (*Id.*)

Shortly after Plaintiff had driven away from her residence, at approximately 9:00 p.m.,
Defendant Officer McCandless pulled alongside her and initiated a traffic stop.  (*Id.* at ¶ 11.)  The
purported basis of this stop was that Plaintiff was driving without her headlights on.  (*Id.* at ¶ 12)
However, "at the subsequent criminal trial against Bickerstaff it was found that Bickerstaff indeed
had her headlights on as evidenced by McCandless' own body camera."  (*Id.*)  Defendant Officers
Goshen, Nuti and McKenzie were also on the scene.  (*Id.*)

At some point, the Officers discovered that Plaintiff's son's firearm was in the vehicle.  (*Id.*)
Plaintiff explained to the Officers that the gun was not hers and requested a police supervisor to the
scene.  (*Id.*)  Plaintiff's son also came to the scene to explain to the police that the gun belonged to
him, "as well as showing proof of ownership and a business reason to have the gun in the vehicle."
(*Id.* at ¶ 13.)  The police checked the serial numbers of the gun to confirm.  (*Id.*)

Nonetheless, Plaintiff was "unlawfully seized, and falsely arrested and imprisoned by
defendants who were without probable cause to stop Bickerstaff in the first place."  (*Id.* at ¶ 14.)
Officer McCandless allegedly "fabricated a report and provided the information to supervisors."  (*Id.*
at ¶ 30.)  Plaintiff was charged with Carrying a Concealed Weapon ("CCW") and Weapons Under
Disability ("WUD").  (*Id.* at ¶ 15.)  Plaintiff's case was presented to the Grand Jury by Cuyahoga
County prosecutors.  (*Id.*)  Plaintiff alleges as follows:

> Enclosed is a copy of the grand jury transcript where the Detective Nuti left out details
> when he testified at the grand jury. He did that with the assistance of the grand jury
> prosecutor Deborah Obed, who knowingly presented the information to the grand jury
> in order to ensure and indictment. The information for the plaintiff son testimony

3

would have taken this alleged charges the outcome would have been different. Unfortunately the jurors did not have all the details in order to make an accurate decision. The reason being because relevant information determines if probable cause exists to indict the plaintiff, (Edward E. Bickerstaff II) the son of the plaintiff tried to explain to McCandless the complete accurate account of the facts. Officer McCandless did not want the true facts. None of this information was presented to the grand jury. Officer McCandless knew what he had committed was an unconstitutional traffic stop and he retaliated because the Plaintiff exercised her first amendment rights by filing a complaint against him prior to the traffic stop.

(*Id*. at ¶ 17) (reproduced as in original).

On April 20, 2017, Plaintiff was found not guilty of all charges.  (*Id*. at ¶ 31.)  Neither the Defendant Officers or the Cuyahoga County prosecutors "ever faced disciplinary action by the city of Cleveland or county" as a result of this incident.  (*Id.* at ¶ 40.)

### B.    Procedural History

In April 2018, Plaintiff, through counsel, filed a Complaint in the Cuyahoga County Court of Common Pleas against the following defendants: (1) Cuyahoga County; (2) Cuyahoga County Prosecutor Michael O'Malley; (3) John Doe Assistant County Prosecutors 1-2; (4) Cuyahoga County Sheriff Clifford Pinkney; (5) the City of Cleveland; and (6) City of Cleveland Police Officers Daniel McCandless, DeLonzo Goshen, Donald Nuti, and Timothy McKenzie.  (Doc. No. 1-1.)  Therein, Plaintiff asserted the following nine counts:  (1) malicious prosecution under 42 U.S.C. § 1983 (Count I); (2) "municipal liability under *Monell*" (Count II) (3) failure to supervise pursuant to 42 U.S.C. § 1983 (Count III) (4) "civil conspiracy to constitutional rights under 42 U.S.C. § 1983" (Count IV); (5) failure to investigate pursuant to 42 U.S.C. § 1983 (Count V); (6) unlawful arrest pursuant to 42 U.S.C. § 1983 (Count VI); (7) false imprisonment pursuant to 42 U.S.C. § 1983 (Count VII) (8) abuse of process pursuant to 42 U.S.C. § 1983 (Count VIII) and (9) intentional and negligent infliction of emotional distress (Count IX).

Defendants Cuyahoga County, Prosecutor O'Malley, and Sheriff Pinkney (hereinafter "the County Defendants") removed this action to this Court on May 17, 2018.  (Doc. No. 1.)  On November 26, 2018, Plaintiff advised the Court that she intended to proceed *pro se*.  (Doc. No. 15.)

The matter was subsequently referred to Magistrate Judge Parker for pre-trial supervision. (Doc. No. 16.)

In March 2019, the County and City of Cleveland Defendants each filed Motions for Judgment on the Pleadings,[3] which Plaintiff opposed.[4]  (Doc. No. 41, 43, 67.)  On August 12, 2019, Magistrate Judge Parker issued a R&R, in which he recommended that the Court grant the County Defendants' Motion for Judgment on the Pleadings and *sua sponte* dismiss the John Doe Assistant County Prosecutor Defendants.  (Doc. No. 87 at pp. 16-17, 54.)  He further recommended that the Court grant the City of Cleveland and Officer Defendants' Motion for Judgment on the Pleadings with regard to Plaintiff's claims for: (1) unlawful arrest; (2) false imprisonment; (3) abuse of process; (4) civil conspiracy (as against the City of Cleveland but not the Officer Defendants); (5) malicious prosecution (as against the City of Cleveland and Officers Goshen, Nuti, and McKenzie, but not Officer McCandless); (6) *Monell* liability (including custom-or-policy claims, failure-to-investigate claims, and failure-to-supervise claims); and (7) emotional distress (as against the City of Cleveland but not the Officer Defendants)  (*Id*. at pp. 54-55.)

---

[3] The County Defendants also filed a Motion for Stay of Discovery.  (Doc. No. 42.) On April 8, 2019, Magistrate Judge Parker denied the County Defendants' Motion to Stay Discovery with respect to Initial Disclosures but granted it with respect to all other discovery.  (Doc. No. 50.)

[4] Defendants filed Replies, and Plaintiff thereafter filed a series of responses to Defendants' Reply Briefs. (Doc. Nos. 70, 82.)  Defendants filed several motions to strike Plaintiff's additional replies.  (Doc. Nos. 74, 76, 78, 81, 84.)  Magistrate Judge Parker recommended that the Defendants' various Motions to Strike be granted.  (Doc. No. 87 at p. 12.)  However, he found that Plaintiff's improper filings clarified her arguments and therefore should remain on the docket as public records.  (*Id*. at pp. 12-13.)  This Court agreed that the Motions to Strike should be granted but found that Plaintiff's improper filings should be marked on the docket as stricken.  (Doc. No. 97 at p. 25.)

Magistrate Judge Parker recommended the City's Motion be denied with respect to Plaintiff's claims for malicious prosecution against Defendant McCandless, as well as her civil conspiracy and emotional distress claims against the Officer Defendants.  (*Id*. at p. 55.)  Finally, Magistrate Judge Parker recommended that the Court *sua sponte* grant Plaintiff leave to amend (1) the malicious-prosecution claim against Officers Goshen, Nuti, and McKenzie; (2) the abuse of process claim against the Officer Defendants; and (3) the *Monell* claims against Cleveland and Cuyahoga County. (*Id*.)

Plaintiff filed Objections and "Supplemental Objections" to the R&R on August 26, 2019, which Defendants opposed.  (Doc. Nos. 90, 91, 93, 94.)  The City of Cleveland and Officer Defendants filed Objections on August 27, 2019, which Plaintiff opposed.  (Doc. No.  92, 95.)

On October 21, 2019, the Court issued a Memorandum Opinion & Order adopting Judge Parker's R&R in all material respects.  (Doc. No. 97.)

Plaintiff thereafter filed an Amended Complaint on November 12, 2019.  (Doc. No. 101.)  In addition to pleading additional factual allegations, Plaintiff added Cuyahoga County Sheriff Frank Bova as a Defendant, and continued to name John Doe Assistant County Prosecutors 1-2 as Defendants.  (*Id*.)  The City of Cleveland and Cuyahoga County each filed Motions to Dismiss.  (Doc. Nos. 102, 105.)  Plaintiff opposed both motions.  (Doc. Nos. 107, 130.)

On March 11, 2020, Plaintiff filed a Motion for Leave to File Amended Complaint, in which she sought leave to add Cuyahoga County Jail Warden Gregory Croucher as Defendant based on interactions she had with him and other jail personnel in January and February 2020.  (Doc. No. 134.) The following day, Plaintiff filed another Motion to Amend on the same grounds.  (Doc. No. 136.) Several days later, she filed a Motion for Sanctions against the Cuyahoga County Defendants based

6

on comments allegedly made by Warden Croucher and defense counsel Robert Cathcart. (Doc. No. 137.)

On April 8, 2020, Magistrate Judge Parker issued an Order denying Plaintiff's Motions. (Doc. No. 140.) Plaintiff filed an Objection on April 13, 2020. (Doc. No. 141.) On June 5, 2020, the Court issued a Memorandum Opinion & Order adopting Judge Parker's Order.[5] (Doc. No. 144.)

Shortly thereafter, on June 11, 2020, Magistrate Judge Parker issued a Report & Recommendation, in which he recommended that the Court (1) grant the City of Cleveland's and County Defendants' Motions to Dismiss Plaintiff's *Monell* claims; and (2) grant the County Defendants' Motion to Dismiss the other amended and additional claims against the County Defendants and former Sheriff Bova. (Doc. No. 146.)

Plaintiff filed an Objection, to which the County Defendants filed a Response in Opposition. (Doc. Nos. 148, 151.) Plaintiff then filed a Motion to Strike the County Defendants' Response (Doc. No. 152), followed by a Reply in support of her Objection (Doc. No. 153.) On August 26, 2020, the County Defendants filed a Brief in Opposition to Plaintiff's Motion to Strike. (Doc. No. 154.)

## II.     Standard of Review

### A.     On Objections

Pursuant to Fed. R. Civ. P. 72(b)(3) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any finding or recommendation of a Magistrate Judge's Report and Recommendation to which specific objection is made. As explained in this Court's Local Rules, the district judge:

> shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept,

---

[5] In addition, throughout this time period, Plaintiff filed numerous motions seeking the recusal of Magistrate Judge Parker. (Doc. Nos. 52, 75, 113.) Each of these Motions was denied. (Doc. Nos. 56, 86, 121, 142.)

reject, or modify, in whole or in part, the findings or recommendations made by the
Magistrate Judge.

Local Rule 72.3(b).  "A party who files objections to a magistrate [judge]'s report in order to preserve
the right to appeal must be mindful of the purpose of such objections: to provide the district court
'with the opportunity to consider the specific contentions of the parties and to correct any errors
immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006).  Parties are not
permitted, at the district court stage, to raise new arguments or issues that were not presented to the
magistrate.  *Murr v. United States*, 200 F.3d 895, 902, fn1 (6th Cir.2000) (citing *United States v.
Waters*, 158 F.3d 933 (6th Cir.1998)).  *See also Shoemake v. Mansfield City School Dist. Bd. of Educ.*,
2015 WL 2195065 at * 2 (N.D. Ohio May 11, 2015).

Moreover, as the Supreme Court explained in *Thomas v. Arn*, 474 U.S. 140, 150 (1985), "[i]t
does not appear that Congress intended to require district court review of a magistrate judge's factual
or legal conclusions, under a *de novo* or any other standard, when neither party objects to those
findings."  A party who fails to file an objection waives the right to appeal.  *See United States v.
Walters*, 638 F.2d 947, 950 (6th Cir.1981).

## B.  Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and
construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551
F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint
must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic
recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a
speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009)
(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## III.  Analysis

### A.  Plaintiff's Motion to Strike (Doc. No. 152)

In her Motion to Strike, Plaintiff argues that the County Defendants' Response to her Objections should be stricken because, on August 3, 2020, these Defendants filed a notice that "Jillian

9

Eckart, Assistant Prosecuting Attorney, will now substitute as counsel of record for all Cuyahoga County defendants, in place of Robert F. Cathcart." (Doc. Nos. 149, 152.)  Plaintiff asserts that Ms. Eckart has a conflict because she was the prosecutor in Plaintiff's underlying state criminal case. (Doc. No. 149 at pp. 1-2.)  She asserts that "Ms. Eckart was fully aware before she filed the motion for substitution of counsel, that there would be [a] conflict and she would be subject to an ethical violation with the Ohio Supreme Court." (*Id*. at p.2.)

Plaintiff further asserts that, although signed by attorney Andrew Greenwell, the County Defendants' Response to Plaintiff's Objections "was indeed written by Jillian Eckart." (*Id*.)  Plaintiff claims, summarily, that she "learned this through her own investigation." (*Id*.)  Plaintiff argues that "the court should grant this motion to strike the [Response] filed by Attorney Greenwell representing the county defendants because it is Jillian Eckart and she cannot represent herself because she is a party to the case." (*Id*. at p. 4.)  Lastly, Plaintiff maintains Ms. Eckart's appearance in this matter is improper due to the possibility that she may be asked to testify as a witness. (*Id*. at p.3.)

The County Defendants argue that Plaintiff's Motion should be denied because their Response to Plaintiff's Objection was timely, and motions to strike are generally disfavored. (Doc. No. 154.)  Defendants argue that "Plaintiff cites no law or facts justifying the striking of the County Defendants' [Response] to Plaintiff's Objections." (*Id*.)  The County Defendants do not address Plaintiff's arguments regarding Ms. Eckart and the possibility of a conflict, asserting only that "these allegations do not provide any grounds whatsoever to strike" the Defendants' Response. (*Id*. at fn 1.)

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An immaterial matter is that which has 'no bearing on the subject matter of the litigation,'" while "[i]mpertinent

allegations include statements that are not necessary to the issues presented." *McKinney v. Bayer Corp.*, 2010 WL 2756915 at *1 (N.D. Ohio July 12, 2010) (quoting *Johnson v. Cty. of Macomb*, 2008 WL 2064968 at *1 (E.D. Mich. May 13, 2008)). A scandalous matter "refers to 'any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Id.* (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).

"A court has broad discretion in determining whether to grant a motion to strike." *Id.* at *2. However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009). Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket." *Taylor v. JP Morgan Chase Bank, N.A.,* 2018 WL 5777497 at *3 (E.D. Tenn. Nov. 2, 2018).

Here, the Court declines to strike the County Defendants' Response to Plaintiff's Objection. Defendants' Response is signed by attorney Matthew Greenwell, not by Ms. Eckart. Although Plaintiff claims that she learned "through her own investigation" that the Response was, in fact, written by Ms. Eckart, she cites no evidence of any kind in support of this allegation. Moreover, notwithstanding Plaintiff's assertions to the contrary, a review of the docket reveals that Ms. Eckart is not a named Defendant in the instant action.[6] Lastly, Plaintiff's concerns about a possible conflict

---

[6] To the extent Plaintiff may be suggesting that Ms. Eckart is one of the John Doe Defendants, this argument is rejected. As noted above, the John Doe Assistant County Prosecutor Defendants were dismissed from the original Complaint by Magistrate Judge Parker in his August 2019 Report & Recommendation (Doc. No. 87 at pp. 16-17, 54.) Plaintiff did not object to this particular recommendation, which the Court adopted in October 2019. (Doc. No. 97.) Although Plaintiff purports to name the John Doe Assistant County Prosecutors 1-2 as Defendants in her Amended Complaint, Plaintiff was not granted leave to do so. As set forth *infra*, the Court adopts Magistrate Judge Parker's current recommendation that any amended and/or additional claims against the County Defendants be dismissed. Thus, Ms. Eckart can in no way be

11

due to the fact that Ms. Eckart "is a witness" are unfounded under the circumstances.  (Doc. No. 152 at p. 3.)  While it is possible that Ms. Eckart's involvement in this matter might have been cause for concern had any of Plaintiff's claims against the County survived, the Court adopts, *infra,* Magistrate Judge Parker's recommendation that all claims against the County Defendants be dismissed.

Accordingly, and for all the reasons set forth above, Plaintiff's Motion to Strike (Doc. No. 152) is denied.

### B.  Plaintiff's Objection to the R&R (Doc. No. 148)

Plaintiff raises several objections to Magistrate Judge Parker's June 2020 R&R.  (Doc. No. 148.)  First, Plaintiff asserts that Judge Parker improperly "decided to use Liberal Construction for Pro Se Pleadings," in order to "to weaken the claims for the plaintiff."  (*Id.* at p. 5.)  She further complains that Judge Parker instructed her to rewrite her Complaint and did so for the express purpose of "assist[ing] the defendants in this case, which he has done all along."  (*Id.* at p. 6.)

Second, Plaintiff objects to Magistrate Judge's Parker finding that she failed to allege plausible *Monell* claims against either the City of Cleveland or Cuyahoga County.  (*Id.* at p. 3, 8-9.)  She maintains that she sufficiently alleged that both the City and County were put on notice of their unconstitutional conduct due to her numerous complaints of harassment by police and prosecutors.  (*Id.* at p. 8.)  Plaintiff further asserts that the United States Department of Justice's December 2014 Report regarding the City of Cleveland Police Department is sufficient to establish that the City had a pattern or practice of violating citizens' constitutional rights, arguing that "the investigation

---

considered to have been a Defendant in this action at the time the County Defendants filed their Response to Plaintiff's Objection.

completed by [the DOJ] did not just investigate the use of deadly force" but also investigated the City's handling of citizen complaints of police misconduct.  (*Id.* at p. 9.)

Finally, Plaintiff argues that the Magistrate Judge improperly concluded that the County is not responsible for withholding exculpatory evidence during grand jury proceedings.  (*Id*. at p. 8.) Rather, Plaintiff maintains that, under *Brady v. Maryland,* 373 U.S. 83 (1963), "prosecutors have to produce the information whether it is favorable or not."  (*Id*.)

Neither the City nor the County meaningfully respond to Plaintiff's substantive arguments. Indeed, the docket reflects that the City did not file any response to Plaintiff's Objections.  While the County did respond, it did not address any of the specific Objections noted above.  (Doc. No.  151.) Rather, the County simply argues that Plaintiff's Objections should be denied as improper because they "merely regurgitate[] the content of her Amended Complaint and generally object[] to Magistrate Judge Parker's Report and Recommendation."  (*Id*. at p. 1.)

The Court disagrees with the County and finds that Plaintiff properly raised the specific Objections noted *supra*.  Accordingly, the Court will review these Objections *de novo*.

### 1.    Use of Liberal Rule of Construction and Opportunity to Amend Complaint

In the R&R, Magistrate Judge Parker notes generally that "pleadings by *pro se* litigants are construed and held to less stringent standards than formal pleadings by lawyers."  (Doc. No. 146 at p. 16.)  Plaintiff complains that the Magistrate Judge's use of this liberal construction standard in evaluating her *pro se* Amended Complaint was improper and worked to her disadvantage.  The Court disagrees.

The Sixth Circuit has repeatedly held that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed.  *See,*

*e.g., Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004).  Indeed, the Sixth Circuit has made this rule of construction mandatory, noting that "courts *must* apply 'less stringent standards' in determining whether *pro se* pleadings state a claim for which relief can be granted."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (emphasis added).  *See also Johnson v. CCA*, 21 Fed. Appx. 330, 332 (6th Cir. Sept. 14, 2001).

Thus, Magistrate Judge Parker's use of a liberal construction standard was not only appropriate under the circumstances but required by Sixth Circuit precedent.  Moreover, Plaintiff has not adequately explained or demonstrated how Judge Parker's use of a liberal construction standard harmed her in any way.  To the contrary, federal courts routinely describe the liberal construction standard as a benefit to *pro se* plaintiffs, as it requires the application of *less* stringent standards.  *See, e.g., Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999); *Miller v. Ryder Truck Rental*, 2013 WL 444250 at * 3 (N.D. Ohio Feb. 3, 2013).  Accordingly, this argument is without merit and denied.

The Court also rejects Plaintiff's curious argument that Magistrate Judge Parker erred by recommending that she be *sua sponte* granted leave to amend certain of her claims, including her *Monell* claims against the City and County.  Plaintiff did not object to this recommendation at the time and this Court adopted it in its October 21, 2019 Memorandum Opinion & Order.  (Doc. No. 97.)  Plaintiff thereafter amended her original Complaint, adding numerous allegations in support of her various claims, including her *Monell* claims.  She now suggests that the Magistrate Judge forced her to rewrite her original Complaint as part of an elaborate effort to assist the Defendants.

This argument is entirely unsupported and without merit.  First, Plaintiff was not forced, instructed, or required to amend her original Complaint.  If she wanted to decline the opportunity to

14

amend, she could certainly have done so.  She did not.  Second, Plaintiff has not articulated any basis whatsoever for her argument that granting her leave to amend her Complaint prejudiced her in any way.  To the contrary, the opportunity to amend could only have inured to Plaintiff's benefit, as it provided her a second chance to sufficiently plead her claims.  Finally, the Court once again rejects Plaintiff's insinuations that Magistrate Judge Parker has been biased or unfair.  Plaintiff has raised this argument in one form or another on several occasions over the course of the last two years.  (Doc. Nos. 52, 75, 113.)  Each time, the Court has addressed Plaintiff's arguments and rejected them as unfounded.  (Doc. Nos. 56, 86, 142.)  The Court does so again here and finds that Plaintiff has failed to demonstrate anything improper in Magistrate Judge Parker's handling of the instant action.

Accordingly, Plaintiff's first Objection to Magistrate Judge Parker's June 2020 R&R is without merit and overruled.

### 2.    *Monell* claims against Defendant Cuyahoga County

In her Amended Complaint, Plaintiff alleges that the County had a custom or policy of withholding evidence from grand juries and "initiat[ing] baseless criminal charges."  (Doc. No. 101 at ¶¶ 35-52.)  Plaintiff also alleges that the County failed to supervise prosecutors, investigate complaints that employees "abus[ed] their authority and harass[ed]" her, or discipline employees for alleged misconduct, which "leads one to believe the city and county approved of these tactics."  (*Id*.)  Plaintiff asserts that the County "knew [that]. . . prosecutors would confront a situation where they would abuse their authority to infringe upon the constitutional rights of citizens like Bickerstaff," but they were deliberately indifferent.  (*Id*.)  Instead of adequately regulating prosecutors, Plaintiff contends that the County gave them "free reign to abuse their authority," resulting in her alleged malicious prosecution.  (*Id.*)

The Magistrate Judge recommends that the Court dismiss Plaintiff's *Monell* claims against the County on the grounds that her Amended Complaint fails to identify a specific custom, policy, or decision by a policy-maker that the County adopted to direct its prosecutors to withhold exculpatory evidence from grand juries.  (Doc. No. 146 at p. 23.)  The Magistrate Judge further finds that, "even if she could have done so, [Plaintiff] would still have failed to state a *Monell* claim because the law does not impose upon prosecutors the duty to present exculpatory evidence to a grand jury."  (*Id.*)  Lastly, the Magistrate Judge concludes that Plaintiff "does not allege any facts indicating that Cuyahoga County was on notice that its prosecutors were likely to maliciously prosecute individuals or engage in a conspiracy to do so."  (*Id.* at 24.)

In her Objections, Plaintiff maintains that the Magistrate Judge erred in finding that she failed to sufficiently plead a plausible *Monell* claim against the County.  Specifically, Plaintiff points to allegations in her Amended Complaint regarding her numerous complaints against the County Prosecutor's Office "for interfering with her work as a private investigator."  (Doc. No. 148 at p. 3.)  She argues as follows:

> The complaint explains in detail how these prosecutors met[,] went to the grand jury[,] and then proceeded to trial against the plaintiff all in violation of our First Amendment rights to protected speech and the right to complain against the actions of these defendants. The complaint described policies both the city and county have to violate her first amendment rights of its residents including the plaintiff and the deliberate indifference city and county superiors have to protecting those rights. To date nothing has been done to protect the plaintiff against these violations. All of this and more are detailed in the complaint. Certainly there are enough plausible facts to show a plausible case against all defendants. Especially at the complaint stage of the litigation. The plaintiff is not required to completely make out her case against any of these defendants but rather only state plausibly that claims can be established so that the case can go forward. That was established in this case.

(*Id.*) (reproduced as in original).  Finally, Plaintiff argues that Magistrate Judge Parker erred as a matter of law in finding that the County was not required to present exculpatory information to the grand jury in her underlying criminal case.  (*Id.* at p. 8.)

 The County failed to meaningfully respond to Plaintiff's Objections.

 It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  *See also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012).  Rather, a plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing.  *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692–94).  Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio*, 747 F.3d at 388-389 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted).

 "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). *See also D'Ambrosio*, 747 F.3d at 386.  Moreover, a plaintiff must show a "direct

causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Doe v. Claiborne Cnty., Tenn. By. & Through Claiborne Cnty. Bd of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (internal quotation marks omitted); *see also Baynes*, 799 F.3d at 621; *Fair v. Franklin Cnty., Ohio*, 2000 WL 659418 at *3 (6th Cir. May 11, 2000) ("*Monell* requires that a plaintiff identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (same).

When a plaintiff seeks to impose *Monell* liability based on a local government's custom or policy of failing to supervise, investigate, or discipline its employees, the plaintiff must show that the government's policy or custom was "representative of (1) a clear and persistent pattern of illegal activity, (2) which the [government] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [government's] custom was the cause" of the deprivation of her constitutional rights. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) (holding that a policy or custom cannot be established solely by a single instance of an employee's alleged misconduct). *See also Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1989); *Mize v. Tedford*, 375 Fed. Appx 497, 500 (6th Cir. 2010); *Wiggins v. Dupont*, 2018 WL 2372416 at *5 (N.D. Ohio May 24, 2018).

For the following reasons, the Court agrees with the Magistrate Judge that Plaintiff has failed to allege a plausible *Monell* claim against the County. As noted above, this claim is based on Plaintiff's allegation that the County had a policy or custom of (1) withholding evidence from grand juries and (2) "initiat[ing] baseless criminal charges." (Doc. No. 101 at ¶¶ 35-52.) The Sixth Circuit

recently discussed the distinction between governmental policies and customs, for purposes of *Monell*, as follows:

> "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."

> *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citation omitted). Thus, while policies are created through the official acts of the municipality's ultimate decision-makers, a custom can be informal but must be so extensive as to still be attributable to the municipality as a whole. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008). In the latter case, "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004); *see also Doe v. Claiborne County ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (defining customs under *Monell* as "[d]eeply embedded traditional ways of carrying out state policy" (alteration in original) (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968, 84 L.Ed. 1254 (1940))).

*Lipman v. Budish*, --- F.3d -----, 2020 WL 5269826 at * 16 (6th Cir. Sept. 4, 2020).

Here, Plaintiff has failed to identify an official policy, created through the acts of the County's ultimate decision makers, that directs County prosecutors to withhold evidence from grand juries or initiate malicious prosecutions. Nor has Plaintiff identified an informal custom on the part of the County to direct its prosecutors to do either of these things. While Plaintiff alleges generally that the County engaged in this conduct, Plaintiff's conclusory allegations are not sufficient to plausibly allege that the alleged practices at issue represent a custom that is "so widespread as to have the force of law."[7] *Brown*, 520 U.S. at 403-404. Furthermore, the Court finds that Plaintiff has failed to

---

[7] As noted *supra*, in the Amended Complaint, Plaintiff identifies eleven incidents in which she alleges that County Prosecutors "harassed" her. (Doc. No. 101 at ¶¶ 20-23; Doc. No. 101-1 at PageID#s 762-763.) Ten of these alleged

plausibly allege that County policy-making officials had knowledge of the offending conduct or that they acquiesced in it. Although Plaintiff alleges that she complained about various County prosecutors on previous occasions, Plaintiff's allegations do not plausibly allege that the County was on notice that the County prosecutor assigned to her underlying criminal case was likely to violate Plaintiff's constitutional rights.[8]

Moreover, as the Magistrate Judge correctly notes, even if the County had a policy or custom of withholding evidence from grand juries, the Sixth Circuit has held that prosecutors are not required to present exculpatory evidence to grand juries. *See Martin v. Mauer*, 581 Fed. Appx. 509, 511 (6th

---

instances do not involve any allegation that County prosecutors withheld evidence from grand juries or maliciously prosecuted her. Rather, these incidents involved situations where Plaintiff alleges that County prosecutors improperly accused her of harassing or threatening witnesses in criminal cases for which she had been hired by the defense as a private investigator. (*Id.*) Thus, these incidents are not relevant to Plaintiff's claim that the County had a custom of withholding evidence from grand juries and initiating malicious prosecutions. One of the incidents identified by Plaintiff in her Amended Complaint does involve a case in which Plaintiff alleges that the County prosecutor withheld evidence from the grand jury, resulting in her malicious prosecution. (Doc. No. 101 at ¶ 22.) The Court finds, however, that this single incident is not sufficient to plausibly allege a custom that is so widespread as to have the force of law.

[8] The Court notes that, in her Objections, Plaintiff suggests that her *Monell* claim is also based on the County's policy or custom of harassing her in retaliation for her complaints against County prosecutors and her success in representing criminal defendants. (Doc. No. 148 at p. 3.) Even assuming *arguendo* that it is, the Court finds that Plaintiff has failed to plausibly allege a policy or custom that supports a *Monell* claim against the County on this basis. As with her other *Monell* claims, Plaintiff has failed to identify an official policy, created through the acts of the County's ultimate decision makers, that directs County prosecutors to retaliate against Plaintiff. Nor has Plaintiff identified an informal custom on the part of the County to direct its prosecutors to do so. While Plaintiff identifies several instances in which prosecutors have raised concerns about her alleged treatment of victims and witnesses in criminal cases, Plaintiff has not plausibly alleged that these incidents amount to a widespread custom of retaliation and harassment against her in violation of her First Amendment rights. In this regard, the instant case is distinguishable from the Sixth Circuit's recent decision in *Lipman, supra*, 2020 WL 5269826. In *Lipman*, the complaint alleged six different instances, involving multiple different caseworkers, in which a child was improperly interviewed by County social workers about her abuse in the presence of her alleged abusers. *Id.* at *17. The Sixth Circuit found that, "at the motion-to-dismiss stage, without the benefit of discovery, these facts are enough to draw the reasonable inference that this custom was widespread throughout DCFS and known to policymakers within the county." *Id.* In that case, then, the court found sufficient allegations to plead a *Monell* claim because the County social workers had a duty to protect the child and each of the six instances in the complaint were examples of County social workers failing to fulfill that duty. Here, however, the County prosecutors had a duty to protect the victims and witnesses in their criminal cases and properly raised concerns about Plaintiff's treatment of those victims and witnesses to the state court, leaving it up to the state court to decide what actions, if any, should be taken. Thus, *Lipman* is distinguishable from the instant matter and does not support a finding that Plaintiff herein sufficiently plead a plausible *Monell* claim against the County on this basis.

Cir. 2014) (stating that "the government has no duty to provide potentially exculpatory evidence to the grand jury.")  *See also United States v. Angel*, 355 F.3d 462, 475 (6th Cir.2004); *United States v. Happ*, 2008 WL 5101214 at * 9 (S.D. Ohio Nov. 25, 2008).  Plaintiff's argument that prosecutors were required to present exculpatory evidence to the grand jury pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) is without merit.

The Court further finds that Plaintiff has failed to sufficiently allege a *Monell* claim based on the County's alleged failure to supervise, investigate and/or discipline its prosecutors.  Specifically, the Court finds that Plaintiff has failed to plausibly allege (1) a clear and persistent pattern of illegal activity, (2) which the County knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the County's custom was the cause of the deprivation of Plaintiff's constitutional rights.  *See Thomas*, 398 F.3d at 433.

Accordingly, and for all the reasons set forth above, Plaintiff's Objections with respect to her *Monell* claims against the County are without merit.  The Court hereby adopts Magistrate Judge Parker's recommendation that the County's Motion to Dismiss Plaintiff's *Monell* claims (Doc. No. 105) be granted.

Finally, the Court notes that Plaintiff has not objected to the Magistrate Judge's conclusion that "Bickerstaff's amended complaint exceeded the scope of this court's grant of leave to amend when she (1) added new parties, including former Sheriff Bova and Prosecutor Obed; and (2) included/amended claims against the sheriff and county prosecutors," including claims against the previously dismissed John Doe defendants.  (Doc. No. 146 at p. 27.)  Nor has Plaintiff objected to the Magistrate Judge's recommendation that these additional claims and parties be dismissed as exceeding the scope of leave to amend.  Accordingly, and in the absence of any objection, the Court

adopts the Magistrate Judge's recommendation that the County's Motion to Dismiss (Doc. No. 105) said claims be granted.

### 3. *Monell* Claims against the City of Cleveland

As she did against the County, Plaintiff alleges, in her Amended Complaint, that the City of Cleveland had a custom or policy of withholding evidence from grand juries and "initiat[ing] baseless criminal charges." (Doc. No. 101 at ¶¶ 35-52.) Plaintiff also alleges that the City failed to supervise its police officers, investigate complaints against them, or discipline officers for alleged misconduct, which "leads one to believe the city and county approved of these tactics." (*Id*.) Of particular relevance herein, Plaintiff also alleges as follows:

> 51. The city of is well aware of their practices and polices concerning the police. The city of Cleveland has policies of violating the constitutional rights of its citizens. The department of justice put out a report that Chronicles several instances similar to mine where they have prosecuted people unfairly and unconstitutionally; abused the process of the judicial system to convict citizens similar to what they did with the plaintiff; and have done all of the things in this complaint in violation of the plaintiff's constitutional rights, including the plaintiff's right to be free from illegal searches, seizures, arrest prosecution and the plaintiff's first amendment right to complain about the way it's police officers and behaved towards the plaintiff. See EX-F Page 37 from the United States Department of Justice Civil Rights Division. Investigative Report Dates December 4th 2014.
>
> This is the basis the plaintiff Monell claims and all of the instances that the plaintiff cite in this complaint demonstrates a policy on behalf of the city to violate the plaintiff's constitutional rights. Also no police officers have faced any reprimand or discipline and the supervisors of these individuals and the city are "deliberately indifferent" to what their officers do to violate citizens constitutional rights. ***

(*Id*. at ¶ 51) (reproduced as in original).

The Magistrate Judge concluded that "the facts alleged in Bickerstaff's amended complaint, accepted as true, continue to be insufficient to raise a plausible right to relief on a *Monell* claim against the City of Cleveland." (Doc. No. 146 at p. 20.) Specifically, Magistrate Judge Parker determined

that Plaintiff's claim failed because "she still has not pointed to a specific custom, policy, or decision by a policy-maker directing or permitting police to undertake wrongful arrests or malicious prosecutions." (*Id*. at p. 21.)  In so finding, the Magistrate Judge rejected Plaintiff's reliance on the December 2014 DOJ report, noting that "the report did not investigate whether or indicate that Cleveland had a pattern or practice of undertaking wrongful arrests or malicious prosecutions." (*Id*.) Lastly, Judge Parker found that "Bickerstaff still has not alleged sufficient facts to state a plausible claim that Cleveland caused the alleged constitutional violations by failing to supervise, investigate, or discipline its employees with deliberate indifference toward the likelihood that a lack of corrective action would result in a constitutional violation." (*Id*. at p. 22.)

In her Objections, Plaintiff again emphasizes the fact that she has filed numerous complaints against City of Cleveland police officers in the past "for interfering in her work as a private investigator." (Doc. No. 148 at pp. 3, 8.)  She complains that the Officer Defendants were aware that there was no basis for the charges against her and lied under oath before the grand jury in order to maliciously prosecute her in retaliation for filing complaints against them. (*Id*. at pp. 3, 6-8. 9.) Finally, Plaintiff objects to the Magistrate Judge's failure to consider the DOJ Report, arguing that the scope of that Report was not limited to excessive force issues but also included an investigation of the City's failures to properly address citizen complaints of misconduct. (*Id*. at p. 9.)

The Court agrees with the Magistrate Judge that Plaintiff has failed to allege a plausible *Monell* claim against the City. Plaintiff has failed to identify an official policy that directs City police officers to withhold evidence from grand juries or initiate malicious prosecutions. Nor has Plaintiff identified an informal custom on the part of the City to direct its police officers to engage in this behavior.  Notably, and as the Magistrate Judge correctly observed, the Amended Complaint contains

23

no allegations that any of the Officer Defendants had a history of making prior wrongful arrests or pursuing malicious prosecutions, sufficient to put the City on notice that Plaintiff's constitutional rights were likely to be violated.  Further, Plaintiff has not set forth any facts suggesting that the City ignored a clear and persistent pattern of misconduct on the part of the Officer Defendants.[9]

The Court also rejects Plaintiff's argument that the findings set forth in the December 2014 DOJ Report support the *Monell* claims set forth in the Amended Complaint.  Again, as noted above, Plaintiff's *Monell* claims relate to the City's alleged policies or customs of (1) withholding evidence from grand juries, and (2) initiating malicious prosecutions.  A review of the December 2014 DOJ Report reveals that it was primarily focused on addressing allegations that the City of Cleveland had a pattern or practice of using *excessive force*, and did not address in detail the specific alleged policies or customs at issue in Plaintiff's *Monell* claims.  *See* United States Department of Justice, Civil Rights Division, Investigation of the Cleveland Division of Police (Dec. 4, 2014) (hereinafter "DOJ Report").  Thus, the Court agrees with the Magistrate Judge that the DOJ Report is not relevant to Plaintiff's *Monell* claims against the City and does not show that the City had notice of a clear and persistent pattern of activity of the type conduct alleged here.

Plaintiff, however, asserts that the DOJ Report is, in fact, relevant because it addresses systemic deficiencies in the City of Cleveland's handling of citizen complaints of police misconduct.

---

[9]  Plaintiff does allege that, in November 2013 (two years prior to her November 2015 arrest and prosecution), Plaintiff wrote a letter to the City, in which she complained that Defendant McCandless had been following her.  (Doc. No. 101-1 at PageID# 755.)  She also stated that she had "expressed concerns about other officers harassing me from that same district."  (*Id.* at PageID# 756.)  This letter, however, does not indicate that Defendant McCandless had previously engaged in any of the conduct complained of in the Amended Complaint; i.e., withholding evidence, engaging in allegedly unlawful traffic stops, or otherwise pursuing malicious prosecutions. Moreover, the Court is skeptical that this single letter, written two years prior to the events forming the basis of the Amended Complaint, is sufficient to put the City on notice that any of the Officer Defendants were likely to violate Plaintiff's constitutional rights in the manner described in the Amended Complaint.

It is true that the DOJ Report does identify and discuss, at some length, certain inadequacies in the Cleveland Police Department's system for evaluating citizen complaints of police misconduct. *See* DOJ Report at pp. 38-42. However, even assuming *arguendo* that this section of the DOJ Report might relate to Plaintiff's *Monell* claims against the City, the fact remains that the investigation underlying the Report was conducted in 2013 and 2014, over a year prior to Plaintiff's underlying arrest and prosecution herein. Upon careful consideration, the Court finds that this section of the DOJ Report, standing alone, is not sufficient to plausibly allege a *Monell* claim against the City based on any alleged failure to investigate.[10]

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's Objections with respect to her *Monell* claims against the City are without merit. The Court hereby adopts Magistrate Judge Parker's recommendation that the City's Motion to Dismiss Plaintiff's *Monell* claims (Doc. No. 102) be granted.

## IV. Conclusion

Accordingly, and for all the reasons set forth above, Plaintiff's Motion to Strike (Doc. No. 152) is DENIED. Plaintiff's Objection (Doc. Nos. 148) is also DENIED. The June 2020 Report and Recommendation of Magistrate Judge Parker (Doc. No. 146) is ADOPTED, and Defendants' Motions to Dismiss (Doc. Nos. 102, 105) are GRANTED.

Defendants Cuyahoga County and the City of Cleveland are, therefore, DISMISSED from the instant action. The following claims remain pending against the Officer Defendants: (1) malicious

---

[10] The Court notes that several other courts in this District have refused to allow civil rights plaintiffs to rely on the DOJ Report in support of *Monell* claims against the City of Cleveland. *See, e.g., Yatsko v. Graziolli*, 2020 WL 2104556 at * 9 (N.D. Ohio May 1, 2020); *Warren v. Tankersley*, 2015 WL 5567103 at * 4-5 (N.D. Ohio Sept. 21, 2015). The Sixth Circuit has also expressed some hesitation regarding the relevance of the DOJ Report in this context. *See Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020).

prosecution (42 U.S.C. § 1983); (2) civil conspiracy (42 U.S.C. § 1983); (3) abuse of process (42

U.S.C. § 1983); and (4) infliction of emotional distress (state law).

**IT IS SO ORDERED.**


       *s/Pamela A. Barker*
       PAMELA A. BARKER
Date:  September 21, 2020       U. S. DISTRICT JUDGE

26