IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA V. BICKERSTAFF, | ) | Case No. 1:18-cv-1142 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CUYAHOGA COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Plaintiff, Brenda V. Bickerstaff, pro se, initiated this action to seek redress for the alleged misuse of the criminal justice system to retaliate against her for her work as a private investigator and for reporting police misconduct. After two prior rulings, the only remaining claims are Bickerstaff's amended claims for malicious prosecution, civil conspiracy, abuse of process, and infliction of emotional distress against Cleveland Police Officers Daniel McCandless, Delonzo Goshen, Donald Nuti, and Timothy McKenzie (collectively, "Officer Defendants"). The Officer Defendants now seek summary judgment against Bickerstaff's surviving claims. ECF Doc. 187. Bickerstaff filed an opposition (ECF Doc. 192), the Officer Defendants filed a reply (ECF Doc. 195), and Bickerstaff filed a sur-reply (ECF Doc. 196).

I recommend that the Officer Defendant's motion for summary judgment be GRANTED IN PART and DENIED IN PART.

## I.      Relevant Procedural History

On April 20, 2018, Bickerstaff – then represented by counsel – filed a complaint in the

Cuyahoga County Court of Common Pleas against: the City of Cleveland; the Officer

Defendants; Cuyahoga County; Cuyahoga County Prosecutor Michael O'Malley; Cuyahoga

County Sheriff Clifford Pinkney (collectively, "County Defendants"); and two John Doe

Assistant County Prosecutors.  ECF Doc. 1-1; ECF Doc. 1-2.  Bickerstaff asserted nine counts

upon which she sought damages: (1) malicious prosecution pursuant to 42 U.S.C. § 1983;

(2-4) municipal liability under *Monell*[1] for unconstitutional policy or custom, failure to

supervise, and failure to investigate; (5) civil conspiracy pursuant to § 1983; (6) unlawful arrest

pursuant to § 1983; (7) false imprisonment pursuant to § 1983; (8) abuse of process pursuant to

§ 1983; and (9) intentional and negligent infliction of emotional distress pursuant to Ohio law.

*See* ECF Doc. 1-1 at 8-18.

On May 17, 2018, the County Defendants removed the case to federal court.  ECF Doc.

1.  On November 1, 2018, Bickerstaff informed the court that her attorney had been suspended

from practice.  ECF Doc. 13.  And on November 26, 2018, Bickerstaff elected to represent

herself going forward.  ECF Doc. 15.

On March 14, 2019, the County Defendants moved for judgment on the pleadings.  ECF

Doc. 41.  The City of Cleveland and the Officer Defendants followed suit on March 22, 2019.

ECF Doc. 43.  On October 21, 2019, the court granted the County Defendants' motion and

granted in part the motion of the other defendants.  ECF Doc. 97; *see* ECF Doc. 87.  Specifically,

the court dismissed all but Bickerstaff's claims for malicious prosecution against Officer

McCandless and her claims for civil conspiracy and emotional distress against the Officer

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Defendants.  ECF Doc. 97 at 26-27.  However, the court *sua sponte* granted Bickerstaff leave to amend: (1) her malicious-prosecution claim as against Detective Nuti and Officers Goshen and McKenzie; (2) her abuse-of-process claims as against the Officer Defendants; and (3) her *Monell* claims.  ECF Doc. 97 at 27.

On November 12, 2019, Bickerstaff filed an amended complaint, which asserted 42 U.S.C. § 1983 claims for malicious prosecution (Count I), civil conspiracy (Count IV), unlawful arrest (Count VI), false imprisonment (Count VII), and abuse of process (Count VIII); claims for liability under *Monell* (Counts III and V); and a claim for intentional and negligent infliction of emotional distress (Count IX).  ECF Doc. 101.[2]  The amended complaint also re-stated Bickerstaff's claims against the Prosecutor O'Malley and the John Doe Assistant Prosecutors, named as a new defendant Cuyahoga County Sheriff Frank Bova, and made specific allegations against Assistant Prosecutor Deborah Obed.  ECF Doc. 101 at 1, 8-9, 14, 17.

On November 26 and 27, 2019, the City of Cleveland and the County Defendants moved to dismiss Bickerstaff's amended *Monell* claims and her newly asserted claims.  ECF Doc. 102; ECF Doc. 105.  The Officer Defendants did not seek dismissal of Bickerstaff's amended claims. *See* ECF Doc. 103 (Officer Defendants' answer to the amended complaint).

On September 21, 2020, the court granted the City of Cleveland's and the County Defendants' motions to dismiss.  ECF Doc. 155; *see* ECF Doc. 146.  Specifically, the court dismissed as implausible Bickerstaff's *Monell* claims and dismissed her amended complaint to the extent she sought leave to add new claims against Sheriff Bova and Prosecutor Obed or revive her claims against Prosecutor O'Malley and the John Doe prosecutors.  ECF Doc. 146 at 31.  The court stated that still pending were Bickerstaff's claims against the Officer Defendants

---

[2] The counts are numbered as they were in the amended complaint, which skips from Count I to Count III without an intervening Count II.  ECF Doc. 101 at 9-10.

for malicious prosecution, civil conspiracy, abuse of process, and infliction of emotional distress. ECF Doc. 155 at 25-26.  Importantly for present purposes, the court did not address whether Bickerstaff could proceed on her re-asserted, previously dismissed claims of unlawful arrest and false imprisonment.  *See generally* ECF Doc. 146; ECF Doc. 155.

On January 13, 2022,[3] the Officer Defendants moved for summary judgment, generally arguing that: (1) Counts VI, VII, VIII, and IX were time-barred; (2) qualified immunity shielded them from liability as to Counts I and IV; (3) they were immune under Ohio law against Count IX; and (4) there was insufficient evidence to establish the elements of Count VIII or IX.  ECF Doc. 187.[4]  On February 18, 2022, Bickerstaff filed an opposition brief, contesting summary judgment only as to Counts I, IV, VIII, and IX.  ECF Doc. 192.  On February 25, 2022, the Officer Defendants filed a reply brief.  ECF Doc. 195.  And on March 7, 2022, Bickerstaff filed, without leave of court, a sur-reply.  ECF Doc. 196.

## II.     Factual Allegations[5]

Bickerstaff is a private investigator who works for private criminal defense lawyers in Northeast Ohio.  ECF Doc. 101 at 3, 6, 8; ECF Doc. 101-1 at 7-8.  She has faced harassment by prosecutors and law enforcement officers over the years because of the nature of her work, in response to which she has filed complaints.  ECF Doc. 101-1 at 8.  Among the officers she complained about was Officer McCandless, against whom she filed a complaint on November 11, 2013 because he was "always following behind" without pulling her over.  ECF Doc. 101 at 4; ECF Doc. 101-1 at 1.

---

[3] Between the court's September 21, 2020 memorandum opinion and order and January 3, 2022, the parties were engaged in discovery.  *See* Docket Entry dated 10/12/2021; ECF Doc. 185.

[4] The parties' arguments in support and against summary judgment will be discussed more fully, on an issue-by-issue basis, below.

[5] The allegations recited in Section II are drawn from Bickerstaff's amended complaint and the documents she attached thereto.  ECF Doc. 101; ECF Doc. 101-1; *see* Fed. R. Civ. P. 10(c).

On November 11, 2015, Bickerstaff received a call to meet with a client just as her son, Edward Bickerstaff ("Edward"), was returning from his job as a licensed security guard.  ECF Doc. 101 at 4.  In a hurry, Bickerstaff got the keys from Edward and left, unaware that Edward had left in the back seat his lawfully-registered work firearm (a shotgun) in a soft-shell case.  ECF Doc. 101 at 4; ECF Doc. 101-1 at 7.  Later that evening, Officer McCandless pulled Bickerstaff over under the false pretense that she was driving without her headlights on.  ECF Doc. 101 at 5; ECF Doc. 101-1 at 7.  Detective Nuti and Officers Goshen and McKenzie were also allegedly present.  ECF Doc. 101 at 5; ECF Doc. 101-1 at 7.  The officers found the gun, which Bickerstaff informed them belonged to her son and called for a supervisor.  ECF Doc. 101 at 5.

Edward came to the scene, claimed ownership of the shotgun, provided proof of ownership, and explained why the gun was in the car.  ECF Doc. 101 at 5; ECF Doc. 101-1 at 7.  The officers ran the shotgun's serial number and confirmed that it belonged to Edward.  ECF Doc. 101 at 5.  Despite Edward's explanation and proof of ownership, Bickerstaff was arrested and taken to jail.  ECF Doc. 101 at 5, 17.  Officer McCandless then prepared a "fabricated report" that he provided to his supervisors and upon which the Officer Defendants filed a criminal complaint, charging Bickerstaff with having a weapon under disability and carrying a concealed weapon.  ECF Doc. 101 at 5, 10.

On or about November 13, 2015, Prosecutor Obed, Detective Nuti, and Officer McCandless agreed to withhold exculpatory evidence when they presented the charges to a grand jury.  ECF Doc. 101 at 8-9.  Specifically, they agreed not to interview Edward, have Edward testify before the grand jury, or tell the grand jury that Bickerstaff did not know the shotgun was in her car.  ECF Doc. 101 at 5-6, 8.  In furtherance of the alleged conspiracy, Detective Nuti did

not interview Edward and deliberately omitted exculpatory facts when he testified before the grand jury. ECF Doc. 101 at 5-6, 8; ECF Doc. 101-1 at 7. Bickerstaff was then indicted with having weapons under disability, carrying a concealed weapon, and tampering with evidence. ECF Doc. 101-1 at 7.

A suppression hearing was held in Bickerstaff's criminal case, at which Officer Goshen testified and allegedly stated that Bickerstaff had admitted to him that the headlights of her car were off when he pulled her over. ECF Doc. 101 at 8. Body camera footage later revealed that her headlights were on. *Id.* Officer McKenzie also testified at the suppression hearing, stating that Bickerstaff did not stop immediately when Officer McCandless pulled her over. *Id.* On April 20, 2017, following a bench trial, Judge Michael Shaughnessy found Bickerstaff not guilty on all three charges. ECF Doc. 101 at 6, 9.

## III.    Evidence and Facts

### A.    Summary of Evidence Before the Court

In support of their motion for summary judgment, the Officer Defendants have submitted:

1. Affidavits from Officer McCandless (ECF Doc. 187-1), Officer Goshen (ECF Doc. 187-2), and Detective Nuti (ECF Doc. 187-3).

2. Video footage of Bickerstaff's traffic stop from the body cameras of Officers McCandless and Officer Matthew McKinney (ECF Doc. 187-4; ECF Doc. 187-5; ECF Doc. 187-6; ECF Doc. 189).[6]

3. A certified docket sheet for Cleveland Municipal Court, Case No. 2015 TRD 045565 (ECF Doc. 187-7).

---

[6] The video evidence was filed manually with the court in the form of a DVD containing three video files: (1) "A1 8920_Empire___TS___Info_For_Rpt__Gun_Conf_Bickerstaff(3).mp4" ("Video File A1"); (2) "A2 8920_Empire___Improp_Handle_Of_Firearm_In_MV___Hwwud__Gun_Arst(2).mp4" ("Video File A2"); and (3) "A3 8920_Empire___Improp_Handle_Of_Firearm_In_MV___Hwwud__Gun_Arst_Redac ted(1).mp4" ("Video File A3"). Video File A1 is Officer McCandless's body camera footage. Video Files A2 and A3 are Officer McKinney's body camera footage.

4.   Certified journal entries from Case No. 2015 TRD 045565 (ECF Doc. 187-8).

5.   Bickerstaff's responses to interrogatories (ECF Doc. 187-9).

6.   Bickerstaff's deposition transcript (ECF Doc. 191-1).

7.   Excerpts from Bickerstaff's criminal proceedings (ECF Doc. 191-1 at 113-15 (Bickerstaff's testimony and trial stipulations); ECF Doc. 195-1 (trial court ruling denying Bickerstaff's motion to suppress upon a determination that there was probable cause for the traffic stop)).

In opposition to the Officer Defendants' motion for summary judgment, Bickerstaff has submitted:

1.   Excerpts from Bickerstaff's criminal proceedings (ECF Doc. 192-1 (Officer McCandless's cross-examination); ECF Doc. 192-3 (Officer Goshen's direct examination)).

2.   A January 5, 2016 email from the Cuyahoga County Sheriff's Department in response to a public records request (ECF Doc. 192-2).

3.   The Officer Defendants' affidavits (ECF Doc. 192-5).

4.   Excerpts from Bickerstaff's deposition (ECF Doc. 192-4).

5.   Letters from the City of Cleveland's Department of Public Safety to Officer Goshen regarding disciplinary actions (ECF Doc. 192-6; ECF Doc. 192-7; ECF Doc. 192-8; ECF Doc. 192-9; ECF Doc. 192-10; ECF Doc. 192-11).[7]

**B.    Undisputed Facts[8]**

Bickerstaff is a private investigator who works for private criminal defense lawyers in

Northeast Ohio.  ECF Doc. 101-1 at 7 (Bickerstaff's affidavit).  She does not have nor has she

---

[7] The Officer Defendants have objected to the admissibility of these letters as irrelevant.  ECF Doc. 195 at 4 n.3.  Upon review, the undersigned agrees.  The letters concern disciplinary proceedings between November 2012 and December 2018, none of which pertain to his interactions with Bickerstaff.  Instead, the letters concern disciplinary proceedings for: (1) failing to turn on his body camera or inventory property, refusing an order to surrender his body camera, and submitting a false report (ECF Doc. 192-6; ECF Doc. 192-7); (2) interfering with the duties of another officer and obstructing official business (ECF Doc. 192-8); (3) a car accident (ECF Doc. 192-9); (4) driving while intoxicated (ECF Doc. 192-10); and (5) entering into a police pursuit without permission, leaving the City of Cleveland without permission, and using emergency procedures in a residential neighborhood (ECF Doc. 192-11).
[8] The following facts are undisputed or established by Rule 56 evidence.

ever held a Concealed Carry Weapons ("CCW") permit.  ECF Doc. 101-1 at 3 (January 6, 2016 letter from the Cuyahoga County Sheriff's Department in response to Bickerstaff's public records request).  And she has a prior felony conviction.  ECF Doc. 187-9 at 3.

In November 2013, Bickerstaff wrote a letter to, among others, the City of Cleveland's Office of Professional Standards regarding Officer McCandless.  ECF Doc. 101-1 at 1; ECF Doc. 191-1 at 40-41.  In her letter, she stated that Officer McCandless had been following her without pulling her over, she was given the wrong badge number for Officer McCandless when she called the station, she suspected Officer McCandless had ran her background and saw her record, and she suspected that McCandless was likely trying to stop her from investigating cases.  ECF Doc. 101-1 at 1-2.  Bickerstaff had also made a complaint against Officer Goshen and other officers.  ECF Doc. 191-1 at 113; ECF Doc. 192-3 at 5.

In September 2015, Bickerstaff began sharing a car with Edward.  ECF Doc. 191-1 at 10.  On November 11, 2015, Bickerstaff took the car from Edward just after he had finished using it.  ECF Doc. 191-1 at 11.  Bickerstaff drove to Severance Center to receive payment from one of her clients.  ECF Doc. 191-1 at 13.  Bickerstaff then drove to Family Dollar, where she got out and made a purchase.  ECF Doc. 191-1 at 13-14.  Unable to find everything she had been looking for, Bickerstaff began driving to another Family Dollar.  ECF Doc. 191-1 at 15.  On the way, however, she decided to return home to get some more money.  ECF Doc. 191-1 at 33.

Around 8:00 p.m., Officer McCandless initiated a traffic stop and pulled Bickerstaff over.  ECF Doc. 187-1 at 1-2.  With Officer McCandless was Officer McKinney.  ECF Doc. 187-1 at 2.  Bickerstaff agreed that Officer McKenzie took no part in her traffic stop, he was named in the complaint because she confused his name with that of Officer McKinney, and Officer McKenzie should not be a part of this case.  ECF Doc. 191-1 at 43-44.

8

Officer McCandless approached the driver's side of the car and informed Bickerstaff that she was stopped for driving without headlights and asked for her license and proof of insurance. ECF Doc. 187-1 at 2.  Meanwhile, Officer McCandless looked through her rear-passenger window with his flashlight. *Id.*  Officer McKinney was on the passenger-side of the car. *Id.* The two officers returned to their vehicle and began to process a citation for a traffic offense. ECF Doc. 187-1 at 3.

Bickerstaff exited her vehicle and asked that a supervisor be present. *Id.*; ECF Doc. 191-1 at 48.  Officer McCandless instructed Bickerstaff to re-enter her car, and she complied. ECF Doc. 187-1 at 3; ECF Doc. 191-1 at 49.  After Bickerstaff got back in the car, she reached to the back seat of her car to retrieve her recording device. ECF Doc. 191-1 at 49, 51.  As she did so, she hit something hard and realized that Edward had left his weapon in the car. ECF Doc. 191-1 at 49.  She then contacted Edward. *Id.*

Officer McCandless observed Bickerstaff's movements from his car and was asked by Officer McKinney if the bag in the back of Bickerstaff's car was a rifle bag. ECF Doc. 187-1 at 3.  Officer McCandless agreed that it was. *Id.*  Officer McCandless ran Bickerstaff's information through the Mobile Data Terminal in their vehicle and learned that Bickerstaff's license had been suspended. *Id.*

Officer McCandless walked over to Bickerstaff and stated that her license was under suspension, of which she said she was unaware. ECF Doc. 187-1 at 3; ECF Doc. 191-1 at 50. Officer McCandless asked Bickerstaff if there was a gun in the back seat, to which she replied, "That's my son's." ECF Doc. 187-1 at 3; ECF Doc. 191-1 at 50.  He also told Bickerstaff that the rifle bag was visible when he first stopped the car but was now covered with coats and clothing. ECF Doc. 187-1 at 3; ECF Doc. 191-1 at 51.  Bickerstaff denied covering or otherwise

attempting to hide the rifle bag and explained that she was attempting to reach her other bag (the one containing the recording device).  ECF Doc. 191-1 at 52.  Bickerstaff also explained that she did not know the gun was in the car, she called her son, and that her son had left the gun in the car.  ECF Doc. 187-1 at 3-4; ECF Doc. 192-1 at 11-12.

Officer McCandless asked if he could check the weapon for safety, and Bickerstaff agreed.[9]  ECF Doc. 187-1 at 3; ECF Doc. 191-1 at 53.  Before Officer McCandless opened the rifle bag, Bickerstaff informed him that it contained a shotgun.  ECF Doc. 187-1 at 3.  Officer McCandless confirmed that the bag contained a loaded shotgun, after which Bickerstaff informed him that she had a prior felony conviction.  ECF Doc. 187-1 at 3.  Bickerstaff was then placed under arrest and transported to central booking by Officer Goshen, who had arrived at some earlier point in the traffic stop.  ECF Doc. 187-1 at 4; ECF Doc. 187-2 at 1-2.  At some point, Edward had also come to the scene of the traffic stop.  ECF Doc. 192-1 at 12.

On November 12, 2015, Detective Nuti was assigned to investigate Bickerstaff's arrest and confirmed that she had a prior felony conviction.  ECF Doc. 187-3 at 1-2.  He attempted to interview Bickerstaff, but she refused to speak with him.  ECF Doc. 187-3 at 2.  Detective Nuti then consulted with a prosecutor and a grand jury packet was completed.  ECF Doc. 187-3 at 2.  On November 13, 2015, Bickerstaff was released from jail.  ECF Doc. 191-1 at 54.

On November 19, 2015, Officers McCandless and McKinney filed a complaint in Cuyahoga County Municipal Court, charging Bickerstaff with: (1) driving under suspension or revocation; (2) driving without headlights on; and (3) displaying plates that were not legally registered.  ECF Doc. 43-1 at 5-6 (traffic court docket); *see also* ECF Doc. 187-7 at 2-3.  On

---

[9] According to Bickerstaff, she only agreed to the weapon check because her brother had been killed by police and she did not want Officer McCandless to think that she was trying to do something to him.  ECF Doc. 191-1 at 53-54.

10

November 20, 2015, the Cuyahoga County Prosecutor's Office presented charges against Bickerstaff to a grand jury. ECF Doc. 187-3 at 2. Detective Nuti testified at the grand jury proceedings. ECF Doc. 187-3 at 2.

On November 25, 2015, Bickerstaff was arraigned on her municipal court traffic charges and entered pleas of not guilty. ECF Doc. 187-8 at 1. On May 18, 2016, Bickerstaff entered a plea of no contest and consented to a finding of guilty to a reduced charge of driving without a license. ECF Doc. 43-1 at 7, 9; ECF Doc. 187-7 at 7-8; ECF Doc. 187-8 at 3. The remaining traffic charges were dismissed on the prosecutor's motion. ECF Doc. 43-1 at 3, 7-8; ECF Doc. 187-7 at 1-2, 7-8; ECF Doc. 187-8 at 3.

Meanwhile, a grand jury issued an indictment charging Bickerstaff with: (1) having weapons under disability, in violation of Ohio Rev. Code § 2923.13(A)(2); (2) carrying a concealed weapon, in violation of Ohio Rev. Code 2923.12(A)(1); and (3) tampering with evidence, in violation of Ohio Rev. Code § 2921.12(A)(1). ECF Doc. 101-1 at 7. On April 12, 2017, a hearing was held on Bickerstaff's motion to suppress, at which Officers McCandless testified. ECF Doc. 187-1 at 4. The trial court denied the motion to suppress, determining that: there was evidence to support probable cause for a stop; the plain view doctrine was not negated by the use of a flashlight; and driving under suspension was an arrestable offense. ECF Doc. 195-1 at 1-2.

A trial was held on Bickerstaff's charges, at which Officers Goshen and McCandless testified. ECF Doc. 187-1 at 1. ECF Doc. 187-2 at 2. Officer Goshen testified that he was not called to respond to Officer McCandless's traffic stop but decided to do so because he was free, and he knew that Officer McCandless was training a probationary officer. ECF Doc. 192-3 at 3-4. When Officer Goshen arrived at the scene, Officer McCandless was "conferring" with the

11

driver.  ECF Doc. 192-3 at 5.  On the drive to central booking, Officer Goshen asked Bickerstaff what she got pulled over for, to which she responded: "Headlight.  Headlights."  ECF Doc. 192-3 at 6.  Officer Goshen could not otherwise recall what they discussed.  ECF Doc. 192-3 at 7.

Officer McCandless testified that he knew of Bickerstaff prior to the traffic stop through "talk of the district."  ECF Doc. 192-1 at 10.  He might have also "ran her license plate when she was driving, but I never stopped her or had any interactions with her prior to that date."  ECF Doc. 192-1 at 11.  He denied knowing that it was Bickerstaff who filed a complaint against him. ECF Doc. 192-1 at 11.  Officer McCandless admitted he had earlier said Bickerstaff had a CCW permit because he thought she did.  ECF Doc. 192-1 at 9-10.

Officer McCandless testified that he did not actually see Bickerstaff put garments over the rifle bag; rather, he assumed that the movement he saw from his car was her attempting to conceal the rifle bag.  ECF Doc. 192-1 at 4.  He testified that after checking the gun, he called dispatch, but he could not recall what dispatch said in response.  ECF Doc. 192-1 at 7.  He also called the detective bureau on his cell phone to ask for a criminal history check.  ECF Doc. 192-1 at 8.  He believed Bickerstaff had a felony record, but he could not recall why.  ECF Doc. 191-2 at 9.

On April 20, 2017, Bickerstaff was acquitted on all charges of the indictment.  ECF Doc. 101 at 6, 9; see ECF Doc. 187 at 9 (agreeing that Bickerstaff was acquitted).

C.    **Body Camera Footage**

The body camera footage of Bickerstaff's traffic stop begins with Officers McCandless and McKinney in their vehicle driving, their overhead lights coming on, the brake lights of a car in front of theirs coming on, and the officers parking and exiting their vehicle.  Video File A1 at 00:00-00:37; Video File A2 at 00:00-00:37.  Because of the placement of the body cameras, the

12

footage from inside the officers' car is angled upwards, so that one cannot see in front of the officers' vehicle.  The footage also does not depict what the officers saw before they initiated the traffic stop.

Officer McCandless approached the driver's side of Bickerstaff's car from behind.  Video File A1 at 00:036.  Bickerstaff's car was parked behind another vehicle.  *Id.*  The bumper of the car in front of Bickerstaff's reflected light, which, as Officer McCandless positioned himself between his car and the bumper of the other car, became shadowed.  *Id.* at 00:36-46.  From Officer McKinney's perspective on the passenger's side, no light could be seen emanating from the front portion of Bickerstaff's car.  Video File A2 at 00:37-00:42.

Officer McCandless drew a flashlight and informed Bickerstaff that her headlights had been off.  *Id.* at 00:44-00:45.  Bickerstaff reached towards and turned a switch on her turn signal lever, after which the car in front of her became greatly illuminated.  Video File A1 at 00:45-00:49; Video File A2 at 00:42-00:48.  Officer McCandless asked Bickerstaff for her driver's license and insurance.  Video File A1 at 00:49-00:59.  As he waited for Bickerstaff to retrieve her insurance information, he looked through her rear passenger window with his flashlight.  *Id.* at 00:59-01:16.  A bag could be seen in the passenger-side back seat but the driver-side back seat was not visible.  *Id.* at 01:15.  The officers then returned to their vehicle.  Video File A1 at 01:16-01:26; Video File A2 at 01:13-01:29.

Once inside their vehicle, Bickerstaff exited her car, was instructed to get back inside, and she complied.  Video File A1 at 01:26-01:47; Video File A2 at 01:33-01:46.  Officer McCandless indicated over the radio that Bickerstaff had requested a supervisor to come to the scene.  Video File A1 at 01:56-02:08; Video File A2 at 01:53-02:07.  The radio dispatch officer could be overhead requesting a supervisor to come to the traffic stop.  Video File A1 at 02:08-

02:48; Video File A2 at 02:08-02:45.  Officer McCandless placed a call on his cellphone and turned off his body camera.  Video File A1 at 03:00-03:22.  Officer McKinney, in turn, appeared to mute the microphone of his camera.  *See* Video File A2 at 03:12-03:19 (McKinney moving his hand towards his chest); Video File A3 at 00:00-00:31 (no audio until McKinney motions to his chest again).[10]

Officers McCandless and McKinney returned to Bickerstaff's car.  Video File A3 at 00:31-00:42.  Officer McCandless informed Bickerstaff that a supervisor was on the way and asked if she knew that she was under suspension.  *Id.* at 00:42-00:47.  Bickerstaff disclaimed knowledge of her suspension.  *Id.* at 00:47-00:57.  Officer McCandless asked Bickerstaff, "is that a rifle in the back?" to which Bickerstaff responded, "that's my son's."  *Id.* at 00:57-01:00.  Officer McCandless claimed that he saw Bickerstaff "hide it," stating that: (1) the gun was "clearly visible" when Officer McCandless first stopped her; (2) Officer McKinney said there was a rifle in the back seat; (3) Officer McCandless saw her reach into her back seat; and (4) now there were several items covering the gun.  *Id.* at 01:00-01:24.  Bickerstaff responded that he did not see her hide the gun, but instead reach for her bag and, when asked whether it was loaded, that she'd have to call her son and ask.  *Id.* at 01:07-01:34.  Officer McCandless stated, "I'm going to check it for our safety, I'm going to check it, okay?"  *Id.* at 01:34-01:37.  Bickerstaff responded, "okay."  *Id.* at 01:36-01:37.  As Officer McCandless removed the rifle bag from the back seat, he asked Bickerstaff whether she knew it was there.  *Id.* at 01:37-01:42.  Bickerstaff responded that she did not know her son had it in there, all she knew is that it was a shotgun, and that it was for her son's job.  *Id.* at 01:42-01:51.

---

[10] The only available remaining footage from was from Officer McKinney's body camera.

The officers returned to their vehicle, where Officer McCandless took a shotgun out of the bag and unloaded seven shells from it. *Id.* at 01:51-02:57.  Officer McCandless then called in the information on the shotgun to dispatch. *Id.* at 03:13-03:48.  After some time, additional officers arrive at the scene. *Id.* at 08:00-08:06.  Officer McKinney explained to one of the arriving officers that they had pulled Bickerstaff over for not having her lights on, later determined that her license was under suspension, and then suspected she'd tried to hide something. *Id.* at 08:06-08:30.

Officer McKinney re-entered his vehicle. *Id.* at 10:49-10:54.  Inside the car, radio dispatch could be overhead stating that their search did not reveal any felonies listed on Bickerstaff's record. *Id.* at 10:54-11:13.  Officer McKinney exited his vehicle, went around to the driver's side of his vehicle where Officer McCandless was speaking with two other officers, and stated that he thought the bag holding the gun had to be secured. *Id.* at 11:14-11:43.

Officer McCandless then walked towards Bickerstaff's car and told Bickerstaff that she was in the possession of a concealed weapon. *Id.* at 11:44-12:02.  Bickerstaff responded that her son had just used her car. *Id.* at 12:06-12:10.  Officer McCandless replied that the gun was in her possession and that she could not have a loaded firearm inside a vehicle "like that." *Id.* at 12:12-12:16.  Officer McCandless also repeated that she was driving under suspension, to which she responded that she did not know she was driving under suspension. *Id.* at 12:16-12:28.  Officer McCandless then asked Bickerstaff if she had any felony convictions, to which she responded, "Yeah, I do.  You know I do.  You know I wrote you up.  You're the one I wrote up last year for following me." *Id.* at 12:28-12:38.  Officer McCandless asked her to get out of the vehicle, placed her in handcuffs, and placed her in their vehicle as he advised her of her rights. *Id.* at 12:38-13:58.

15

As Officer McKinney prepared the traffic citation, Officer McCandless told Bickerstaff that he knew her only by reputation and reiterated that he stopped her because her headlights were off, she was under suspension, and she tried to hide something in the backseat. *Id.* at 18:25-18:35.  Bickerstaff explained that she had a bag in the back seat with a recording device, and that's what she was reaching for. *Id.* at 18:35-19:07.  She further stated that her son had left the gun in the back seat. *Id.* at 19:07-19:13.  Officer McCandless stated that it did not matter because she was still a felon in possession. *Id.* at 19:13-19:23.  Bickerstaff then indicated, "That's my son right there." *Id.* at 19:53-19:54.  Dispatch could later be overhead confirming that a certain unnamed individual had a valid CCW permit. *Id.* at 24:50-25:12.  Bickerstaff requested that the window of the police vehicle be lowered so that she could talk with her son. *Id.* at 26:43-26:49.  Officer McKinney stood by his vehicle, and a new individual could be seen speaking with the other three officers. *Id.* at 26:50-27:38.

## IV.  Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party bears the initial burden of establishing the absence of a genuine dispute of fact, either by pointing to evidence so establishing or by pointing out an absence of evidence to support the nonmovant's case. Fed. R. Civ. P. 56(c)(1)(A)-(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  The burden then shifts to the nonmovant to show that there is a genuine dispute of fact. *Anderson*, 477 U.S. at 248-50.  To do so, the nonmovant may not rely on her pleadings; she must set forth "specific facts showing that there is a genuine

16

issue for trial." *Celotex Corp.*, 477 U.S. at 324. The relevant question at all times is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

In determining whether a genuine issue of fact exists, "the evidence is construed, and all reasonable inferences are drawn, in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013). But there is "an added wrinkle" when, as here, there is video evidence. *Scott v. Harris*, 550 U.S. 372, 378 (2007). We view the facts in light of the videos to the extent they "show facts so clearly that a reasonable jury could view those facts in only one way." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017). Any relevant gaps or uncertainties, however, are viewed in the light most favorable to the nonmovant. *Id.* at 544, 547.

### A.      False Imprisonment and Unlawful Arrest

In the motion for summary judgment, the Officer Defendants are not sure whether Bickerstaff's 42 U.S.C. § 1983 claims for false imprisonment and unlawful arrest are still pending. ECF Doc. 187 at 2 n.1. Bickerstaff does not directly address this point but restricts her argument to asserting that the Officer Defendants are liable for "malicious prosecution, civil conspiracy, abuse of process, and inflic[tion] of emotional distress." ECF Doc. 192 at 4; *see generally* ECF Doc. 196.[11]

The Officer Defendants' confusion is understandable. The court previously dismissed the false imprisonment and unlawful arrest claims asserted in Bickerstaff's initial complaint, *without*

---

[11] The undersigned notes that neither this court's local rules nor the Federal Rules of Civil Procedure provide for the filing of sur-replies. N.D. Ohio, Local Rule 7.1; Fed. R. Civ. P. 7; *see also Key v. Shelby Cnty*, 551 F. App'x 262, 265 (6th Cir. 2014). Leave of court is, therefore, necessary before a sur-reply can be filed. *Eberhard v. Chicago Title Ins. Co.*, No. 1:11 CV 834, 2014 U.S. Dist. LEXIS 199698, at *8 (N.D. Ohio Jan. 8, 2014). Although the court would be within its discretion to strike the sur-reply under its inherent authority to manage its docket, the undersigned will consider it because the Officer Defendants have not sought to strike the sur-reply. *Petrovic v. United States*, No. 17-6186, 2018 U.S. App. LEXIS 15620, at *7 (6th Cir. June 8, 2018) (unreported).

leave to amend.  ECF Doc. 97 at 26-27.  The reason why leave to amend was not given was because any amended claim would be barred by the applicable statute of limitations, making any amendment futile.  ECF Doc. 87 at 20-21, 52.  But Bickerstaff's amended complaint nevertheless included claims for false imprisonment and unlawful arrest.  ECF Doc. 101 at 17.  And unlike the City of Cleveland and the County Defendants, the Officer Defendants did not move to dismiss any of the amended claims, such that the amended claims were not addressed when the court dismissed the claims that fell outside the scope of leave to amend.  ECF Doc. 146 at 27-31; ECF Doc. 155 at 21-22.  However, the Officer Defendants touched upon the matter in their answer, in which they asserted that Bickerstaff's false imprisonment and unlawful arrest claims had already been dismissed and, therefore, barred by the doctrine of the law of the case.  ECF Doc. 103 at 3.

To clarify the matter for the parties, Bickerstaff's re-asserted claims for false imprisonment and unlawful arrest are *not* pending before the court.  Bickerstaff could only re-assert her claims in an amended complaint with leave of court.  Fed. R. Civ. P. 15(a).  She did not seek and was not given leave to amend her false imprisonment and unlawful arrest claims.  Therefore, her amendment as to those claims "is without legal effect."  *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 913 (N.D. Ohio 2009).

Moreover, I agree with the Officer Defendants that Bickerstaff's amended claims would be barred by the doctrine of the law of the case.  Under that doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation."  *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990); *see also Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001).  The court has already determined that the claims are barred by the applicable statute of limitations and dismissed them without leave to amend,

18

*i.e.*, with prejudice.  ECF Doc. 97 at 26; Fed. R. Civ. P. 41(b).  The court could only revisit that ruling upon a showing of "extraordinary circumstances, such as where the initial decision was clearly erroneous and would work a manifest injustice."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *see also Hayden*, 13 F. App'x at 302.  Bickerstaff has not argued that the court's prior dismissal of her false imprisonment and unlawful arrest claims was clearly erroneous nor has she attempted to defend her claims against the Officer Defendants' motion for summary judgment.  Therefore, I find that extraordinary circumstances have not been presented for the court to revisit its previous ruling.

Accordingly, as a matter of clarification, Bickerstaff has no false imprisonment or unlawful arrest claims that are pending before the court.  This report and recommendation will not, therefore, address the Officer Defendants other arguments for why Bickerstaff's amended claims for false imprisonment and unlawful arrest should be dismissed.

### B.    Statute of Limitations

The Officer Defendants argue Bickerstaff's claims for abuse of process and intentional and negligent infliction of emotional distress are time-barred under the applicable statute of limitations.[12]  ECF Doc. 187 at 10-11.  They argue that both claims are subject to a two-year

---

[12] Bickerstaff's Count IX claim has a heading indicating that it asserts a claim for both intentional and negligent infliction of emotional distress.  ECF Doc. 101 at 18.  However, the content of Bickerstaff's Count IX claim is premised on the "reckless[]" use of the prosecutorial system to cause her wrongful imprisonment.  *See id.*  Labels aside, I read Bickerstaff's Count IX claim as asserting only a claim of intentional infliction of emotional distress.  *See Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854, 886 (N.D. Ohio 2012) ("Under Ohio law, reckless infliction of emotional distress and intentional infliction of emotional distress are the same cause of action.").  Even if the court were to liberally construe Bickerstaff's complaint as asserting a separate claim for negligent infliction of emotional distress, I would nevertheless recommend that summary judgment be granted.  Bickerstaff cannot maintain a claim for negligent infliction of emotional distress based on her own arrest and prosecution.  *Walkosky v. Valley Mem'ls*, 146 Ohio App.3d 149, 153 (Ohio Ct. App. 2001) ("Negligent infliction is limited to such instances where one was a bystander to an incident or was in fear of physical consequences to [her] own person." (quotation marks omitted)); *see also Snyder v. United States*, 990 F. Supp.2d 818, 834 (S.D. Ohio 2014) (dismissing a claim of negligent infliction of emotional distress because there was no physical peril in being handcuffed, arrested, and imprisoned).  And a claim for

statute of limitations that began to accrue once her she was arraigned on her traffic offenses on November 25, 2015 – expiring on November 25, 2017.  ECF Doc. 187 at 11; ECF Doc. 195 at 2.

Bickerstaff has not addressed the issue of timeliness in her opposition or sur-reply.  *See generally* ECF Doc. 192; ECF Doc. 196.

Summary judgment based on an argument that the applicable statute of limitations has expired "is appropriate if the limitations period has expired, and there is no issue of material fact as to when the plaintiff's cause of action accrued."  *Panzica v. Corr. Corp. of Am.*, 559 F. App'x 461, 463 (6th Cir. 2014).  The burden is on the defendant to show the limitations period has expired, after which the burden shifts to the plaintiff to establish that then exception applies. *Henry v. Norfolk S. Ry. Co.*, 605 F. App'x 508, 510 (6th Cir. 2015).

Claims brought under 42 U.S.C. § 1983 are subject to statute of limitations for personal injury actions under the law of the state in which the claim arises, which in Ohio is two years from the date of accrual.  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007); *see also Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).  The date of accrual is, in turn, determined by reference to federal law, under which the "statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis for his or her injury has occurred."  *Cooey*, 479 F.3d at 416 (quotation marks omitted).

---

negligent infliction of emotional distress would suffer from the same damages deficiency as her claim for intentional infliction of emotional distress, which is discussed in Section IV.F. below.  *Powell v. Grant Med. Ctr.*, 148 Ohio App. 3d 1, 5-6 (Ohio Ct. App. 2002) (stating that a claim for infliction of emotional distress, whether intentional or negligent, requires serious emotional distress resulting from the tortious act).  I would not find that a negligent infliction of emotional distress claim, which is subject to a two-year statute of limitation, is time-barred because, as discussed in connection with Bickerstaff's abuse-of-process claim, a genuine dispute of material fact exists as to when Bickerstaff learned of her felony proceedings.  *Lawyers Coop. Publ. Co. v. Muething*, 65 Ohio St.3d 273, 280-81 (Ohio 1992) (holding that a claim of negligent infliction of emotional distress is subject to a two-year statute of limitations).

The Officer Defendants have failed to meet their burden of establishing that Bickerstaff's claims are time-barred.  Abuse-of-process claims are subject to a four-year statute of limitations. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 300 (Ohio 1994) (citing Ohio Rev. Code § 2305.09).  The Officer Defendants argue that a shorter, two-year statute of limitations applies because they are employees of a political subdivision.  ECF Doc. 187 at 11 (citing *Read v. City of Fairview Park*, 764 N.E.2d 1079, 1081 (Ohio App. Ct. 2001)).  In *Read* the Eighth District Court of Appeals interpreted Ohio Rev. Code § 2744.04(A), which provides for a two-year statute of limitations for claims against a political subdivision, to also apply to claims against employees of a political subdivision, which "prevails" over the general statute of limitations in § 2305.09.  764 N.E.2d at 1081-82.  As our sister court has noted, *Read* has not been universally embraced by the Ohio courts.  *Pippin v. City of Reynoldsburg*, Case No. 2:17-cv-598, 2019 U.S. Dist. LEXIS 166351, at *23 (S.D. Ohio Sept. 27, 2019).  And the Ohio Supreme Court has not expressed itself on the matter.  *See Dolan v. City of Glouster*, 2014-Ohio-2017, ¶86 n.20 (Ohio Ct. App. 2014) (stating that *Read* is only binding in the Eighth District Court of Appeals).

Ordinarily, this court would have to address in the first instance whether the Ohio Supreme Court would conclude that § 2744.04(A) applies to employees of political subdivisions. *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016).  Which statute of limitations applies would be determinative of whether Bickerstaff's abuse-of-process claim is time-barred in whole or only in part.  Bickerstaff's claim is premised upon the wrongful institution of criminal proceedings, which could mean either her traffic court proceedings or her felony proceedings. ECF Doc. 101 at 18.  Bickerstaff became aware of her pending traffic proceedings when she was arraigned on November 25, 2015.  ECF Doc. 187-8 at 1.  Her April 20, 2018 complaint would be

untimely as to that proceeding under the two-year statute of limitations but not under the four-year statute of limitations.

The question is more difficult with respect to Bickerstaff's felony proceedings because no evidence has been presented as to when the indictment was issued, when Bickerstaff was arrested on the felony indictment, or when Bickerstaff was arraigned on the charges in that indictment.  The only evidence in the record is an April 1, 2016 journal entry from Bickerstaff's traffic court proceedings stating that there was a "Pending Felony." ECF Doc. 187-7 at 6. Viewing the record silence in a light most favorable to Bickerstaff, there is a genuine dispute of material fact as to whether an abuse of process claim would be time-barred under the two-year statute of limitations. *Panzica*, 559 F. App'x at 463.

The Officer Defendants have likewise failed to establish that Bickerstaff's claim for intentional infliction of emotional distress is time-barred.  Generally, an intentional-infliction-of-emotional-distress claim is subject to a four-year statute of limitations, unless the acts underlying the claim would support another tort, in which case the statute of limitations for that other tort would govern. *Crist v. Pugin*, No. 3:08 CV 501, 2008 U.S. Dist. LEXIS 49274, at *7-8 (N.D. Ohio June 25, 2008).  However, the Officer Defendants argue that the two-year statute of limitations in § 2744.04(A) applies instead. ECF Doc. 187 at 10-11.  As discussed above, the Ohio Supreme Court has not addressed whether § 2744.04(A) includes claims applicable to employees of political subdivisions.  And Ohio Courts have continued to apply the four-year statute of limitations to officer defendants. *Batchelder v. Young*, 2006-Ohio-6097, ¶14 n.1 (Ohio Ct. App. 2006) (collecting cases); *but see Gnezda v. City of N. Royalton*, 2004-Ohio-1678, ¶15 (Ohio Ct. App. 2004) (Eighth District Court of Appeals).  Bickerstaff's intentional-infliction-of-emotional-distress claim could also be read to encompass both her traffic court and felony court

22

proceedings, for which, as discussed above, there would remain a genuine dispute of material fact as to when her claim with respect to her felony proceedings began to accrue. *Panzica*, 559 F. App'x at 463.

Because neither party has briefed the gap in Ohio law and because there is, even under the shorter interpretation of the statute of limitations, a genuine dispute of material fact as to timeliness, I find that the Officer Defendants have failed to meet their burden of establishing that Bickerstaff's abuse-of-process and infliction-of-emotional-distress claims are time-barred.[13] *Pippin*, 2019 U.S. Dist. LEXIS 166351, at *23.

## C.    Malicious Prosecution

The Officer Defendants argue that that they are entitled to judgment as a matter of law with respect to Bickerstaff's claim of malicious prosecution under the doctrine of qualified immunity.  ECF Doc. 187 at 12-15.  Specifically, they argue that: (1) there is no genuine dispute of material fact that Bickerstaff did not have her headlights on when she was pulled over, such that there was reasonable suspicion to stop her; (2) Bickerstaff is collaterally estopped from relitigating the issue of probable cause for her stop, detention, arrest, and prosecution; (3) there is no genuine dispute of material fact that Bickerstaff was driving under suspension, such that she could be arrested; and (4) there was sufficient evidence to submit to a grand jury and a trier of

---

[13] Although not asserted in the body of their argument, the Officer Defendants' heading states that Bickerstaff's civil-conspiracy claim is also time-barred.  ECF Doc. 187 at 10.  If the Officer Defendants meant to argue that claim was also time-barred, they have done so insufficiently.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Moreover, Bickerstaff's civil-conspiracy claim did not begin to accrue until the last overt act in the alleged conspiracy – Officer Goshen's and Officer McCandless's testimony in April 2017 – making her April 20, 2018 complaint timely as to that claim.  ECF Doc. 101 at 8-9; ECF Doc. 187-1 at 4; ECF Doc. 191-1 at 58-59, 64-65; *see LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106-07 (6th Cir. 1995); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 271 (N.D. Ohio 2014).

fact her charges.  ECF Doc. 187 at 14-15.  Alternatively, they argue that Bickerstaff cannot show a violation of a clearly established right.  ECF Doc. 187 at 17-18

In her opposition brief, Bickerstaff argues that Officer McCandless violated her constitutional rights by initiating a traffic stop out of malice because he knew who she was before pulling her over, misrepresented the truth during his trial testimony, and lied about whether Bickerstaff had a CCW permit.  ECF Doc. 192 at 3-4.  She argues that Officer Goshen lied when he stated that Bickerstaff admitted to her lights not being on.  ECF Doc. 192 at 4.  And she argues that Detective Nuti and Prosecutor Obed worked to ensure she was indicted.  ECF Doc. 192 at 4.

The Officer Defendants respond that Bickerstaff has not offered specific evidence of a constitutional violation and has not disputed the trial court's finding of probable cause or the sufficiency of the evidence so establishing.  ECF Doc. 195 at 2-3, 5.  They argue that Officer McCandless's testimony did not show a misrepresentation of fact or falsity, and McCandless's statements regarding her CCW permit were not material to a prosecution.  ECF Doc. 195 at 3-4.  They argue Officer Goshen's presence at the scene was insufficient for a viable cause of action.  ECF Doc. 195 at 4.

In her reply brief, Bickerstaff argues that Officer McCandless used his knowledge of Bickerstaff's background to get Bickerstaff indicted and then face public humiliation.  ECF Doc. 196 at 3.  She argues that his false statements regarding the headlights and her CCW permit establish an ulterior motive.  ECF Doc. 196 at 4.  She argues that Officer McCandless likely knew that Bickerstaff would reach into her back seat for her recorder to make up a charge of tampering with evidence.  Id.  And she argues that Officer Goshen misled the jury when he testified that Bickerstaff never told him the headlights were off.  ECF Doc. 196 at 5.

24

Under the doctrine of qualified immunity, public officials are immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  Whether qualified immunity applies depends on whether: (1) the public official's conduct violated a statutory or constitutional right; and (2) that unlawfulness of official's conduct was clearly established at the time.  *Howse v. Hodous*, 953 F.3d 402, 406 (6th Cir. 2020 (6th Cir. 2020).  The burden is on the plaintiff to show that the answer to both questions is "Yes."  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).  If either answer is "No," qualified immunity shields the defendant officer from liability.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  When, as here, more than more officer is involved, each officer's entitlement to qualified immunity must be considered separately.  *Wright v. City Euclid*, 962 F.3d 852, 865 (6th Cir. 2020).

To establish a violation of the Fourth Amendment for malicious prosecution, the plaintiff must show that:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alterations omitted; quotation marks omitted).  Whether probable cause for a prosecution exists is determined "from an objective perspective, which, even in the context of malicious-prosecution claims, renders irrelevant the subjective state of mind of the defendant, whether good faith or ill will."  *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010) (quotation marks omitted).  Probable cause exists when the facts

would lead an ordinary prudent person to believe the plaintiff committed the crime charged. *Mott v. Mayer*, 524 F. App'x 179, 186 (6th Cir. 2013).

"[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quotation marks omitted).  In the case of an officer defendant, the presumption can be rebutted when: (1) the officer knowingly or recklessly makes a false statement (including affidavits and investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence were material to the plaintiff's ultimate prosecution; and (3) *the false statements do not consistent solely of grand-jury testimony*.  *King*, 852 F.3d at 587.

### 1.  Officer McKenzie

Judgement as a matter of law is warranted with respect to Bickerstaff's claim of malicious prosecution as to Officer McKenzie.  Bickerstaff conceded at her deposition that Officer McKenzie is not and should not be a defendant in this case.  ECF Doc. 191-1 at 43-44, 63.  She explained that he was named in the complaint as a result of confusion between his name and that of Officer McKinney's.  ECF Doc. 191-1 at 43.  More importantly, there is no evidence that Officer McKenzie took part in either Bickerstaff's traffic court of felony proceedings, such that there is no evidence upon a reasonable factfinder could conclude that Officer McKenzie influenced or participated in either Officer McCandless's decision to bring traffic court charges or the prosecutor's decision to bring felony charges against Bickerstaff.  *See King*, 852 F.3d at 580.

I recommend, therefore, that summary judgment be granted on Bickerstaff's malicious-prosecution-claim against Officer McKenzie and that the claim be dismissed.  *See Martin*, 712 F.3d at 957.

2.    **Detective Nuti**

Judgment as a matter of law is warranted with respect to Bickerstaff's claim of malicious prosecution as to Detective Nuti.  Detective Nuti's alleged involvement in Bickerstaff's prosecution was limited to his presence at the traffic stop, his preparation to testify before the grand jury, and his grand jury testimony.  ECF Doc. 101 at 5, 8-9.  Specifically, Bickerstaff's theory of liability pertains to Detective Nuti's failure to interview Edward and deliberate omission of exculpatory facts to the grand jury (*i.e.*, that Bickerstaff did not know the gun was in her car).  ECF Doc. 101 at 5-6, 8; ECF Doc. 101-1 at 7; ECF Doc. 191-1 at 66; *see* ECF Doc. 191-1 at 44 (Bickerstaff's testimony that Detective Nuti was *not* at the scene of arrest).  Neither party disputes, however, the existence of a valid indictment, creating a presumption that Bickerstaff's felony charges were supported by probable cause.  *Bickerstaff*, 830 F.3d at 398.  Thus, Detective Nuti could only be liable to the extent he made false statements or misleading omissions, *other than* his grand jury testimony and preparation for grand jury testimony.  *King*, 852 F.3d at 587.  Because the only evidence presented to establish liability against Detective Nuti concerns his investigation (preparation for grand jury testimony) and his actual grand jury testimony, Bickerstaff has failed to rebut the presumption created by a valid indictment.  *See id*; *see also Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (stating that omitting exculpatory evidence to the grand jury, as opposed to an affirmative false statement, "may not suffice to defeat the presumption" created by a valid indictment).

Moreover, Detective Nuti had no obligation to present exculpatory evidence to the grand jury.  *Lester*, 986 F.3d at 610-11; *see also United States v. Williams*, 504 U.S. 36, 47 (1992); *State v. Wilks*, 154 Ohio St. 3d 359, 364 (2018).  Even if the law were otherwise and Nuti had an obligation to present exculpatory evidence to the grand jury, the Rule 56 evidence before the

court does not contain a copy of the grand jury transcript, without which the court cannot determine whether statements by Detective Nuti to the grand jury were made falsely or recklessly or were omitted. *See Snow v. Nelson*, 634 F. App'x 151, 157 (6th Cir. 2015) ("Without a transcript of the grand jury proceedings, there is no evidence … that undermines the presumption of probable cause created by the indictment."). And elsewhere in their motion for summary judgment, the Officer Defendants assert that they are shielded by absolute immunity for their testimony. ECF Doc. 187 at 16. "Grand-jury witnesses enjoy absolute immunity from suit based on their grand jury testimony," including officers who conspire to present false testimony. *Dipasquale v. Hawkins*, 748 F. App'x 688, 692-93 (6th Cir. 2018). Although the Officer Defendants did not affirmatively plead absolute immunity in their answer, which ordinarily would result in forfeiture, Bickerstaff has not asserted that the officers have forfeited the defense. *See generally* ECF Doc. 103; *Compare Parnell v. City of Detroit*, 786 F.3d 43, 47 n.3 (6th Cir. 2019), *with United States v. Mitchell*, 832 F. App'x 387, 389 (6th Cir. 2020) ("[F]orfeiture can itself be forfeited[.]").

Because Bickerstaff has failed to establish a constitutional violation by Detective Nuti, I recommend that summary judgment be granted on Bickerstaff's malicious-prosecution-claim against Detective Nuti and that the claim be dismissed. *See Martin*, 712 F.3d at 957.

### 3. Officer Goshen

Judgment as a matter of law is warranted with respect to Bickerstaff's claim of malicious prosecution as to Officer Goshen. Officer Goshen's alleged misconduct consists of testifying falsely at Bickerstaff's suppression hearing (that she admitted to having her headlights on). ECF Doc. 101 at 8; ECF Doc. 191-1 at 65. Because Officer Goshen's misconduct concerns suppression hearing testimony, as opposed to grand jury testimony, he could be liable if his

testimony was false and material to her ultimate prosecution.  *See King*, 852 F.3d at 587.  The issue of whether Bickerstaff's headlights were on would be relevant to the validity of the traffic stop, not whether probable cause existed for her felony charges for having a weapon while under disability, carrying a concealed carry weapon, and tampering with evidence.  *See Ohio Rev. Code §§ 2921.12(A)(1), 2923.12(A)(1), 2923.13(A)(2)*.  It could be argued that the prosecutor's belief in the validity of the traffic stop motivated the decision to bring felony charges because evidence seized from an invalid stop (*i.e.*, Bickerstaff's possession of the shotgun) would otherwise be inadmissible at trial.  *See State v. Henderson*, 51 Ohio St. 3d 54, 56 (Ohio 1990) ("[E]vidence obtained as a result of an illegal arrest is inadmissible at trial[.]").  But admissibility affects proof at trial; it does not affect whether there was probable cause to conclude that Bickerstaff committed the crimes for which she was indicted.  *Cf. Creech v. Pater*, 701 F. App'x 456, 459 (6th Cir. 2017) ("Detective Crouch's failure to promptly disclose the evidentiary defect in the case against Creech may have violated Ohio's laws against, for example, malicious prosecution or abuse of process, but it did not cause Creech's detention without probable cause because it did not destroy probable cause."); *see also Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) ("[A] finding of probable cause does not require … evidence that would be *admissible* at trial[.]" (emphasis added)).  Thus, Bickerstaff has failed to establish a genuine issue of material fact that Officer Goshen violated her constitutional rights through his suppression hearing testimony.

Because Bickerstaff has failed to establish a constitutional violation by Officer Goshen, I recommend that summary judgment be granted on Bickerstaff's malicious-prosecution-claim against Officer Goshen and that the claim be dismissed.  *See Martin*, 712 F.3d at 957

### 4.      Officer McCandless

#### a.      Constitutional Violation

Judgement as a matter of law is not warranted with respect to Bickerstaff's malicious-prosecution-claim against Officer McCandless.  Officer McCandless's liability is premised on instituting a stop without probable cause, preparing a false report that served as a basis for filing a criminal complaint against her, and testifying falsely.  ECF Doc. 101 at 4-6, 10.  Initially, Bickerstaff's malicious-prosecution-claim is not cognizable to the extent it pertains to Officer McCandless's institution of charges in traffic court.  The reason why is that she entered a no-contest plea in the proceeding and the charge for driving without headlights was dismissed.  ECF Doc. 43-1 at 3, 7, 9; ECF Doc. 187-7 at 1-2, 7-8; ECF Doc. 187-8 at 3.  The Sixth Circuit does not allow for malicious-prosecution-claims following a no-contest plea – even as to a dismissed charge.  *See Shelton v. Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004).

Bickerstaff's claim as against Officer McCandless could proceed, however as to: (1) whether Officer McCandless did not have probable cause to stop Bickerstaff; (2) the extent to which his report served as the basis for the felony charges against Bickerstaff; and (3) the extent to which Officer McCandless's allegedly false testimony affected the prosecutor's decision to continue a prosecution against Bickerstaff.  The Officer Defendants contend that the issue of probable cause for Bickerstaff's stop cannot be disputed.  Their argument is contingent upon whether the video evidence corroborates Officer McCandless's statements that the headlights were off.  The Officer Defendants have a compelling argument that Bickerstaff's headlights were off *after* she was pulled over, given the lack of light reflecting off the bumper of the car ahead of hers and her act of turning on her headlights after being told that they were off.  Video File A1 at 00:36-00:49; Video File 2 at 00:37-00:48.  But the video evidence does not depict what Officers

30

McCandless and McKinney saw *before* they initiated the traffic stop. See Video File A1 at 00:00-00:37; Video File A2 at 00:00-00:37. The gap in the evidence must be resolved in Bickerstaff's favor, such that a genuine issue of material fact would exist as to whether Officer McCandless had probable cause to stop her car. *Latits*, 878 F.3d at 544, 547; *Burgess*, 735 F.3d at 471.

The Officer Defendants' issue-preclusion argument, however, is more compelling. The preclusive effect of a state court judgment is determined by reference to the law of the state where the judgment occurred: Ohio. *Haring v. Prosise*, 462 U.S. 306, 313 (1983). Under Ohio law, issue preclusion requires: (1) privity between the party against whom estoppel is sought and the party in the prior action; (2) a final judgment on the merits after a full and fair opportunity to litigate the issue; (3) the issue upon which estoppel is asserted must be been actually tried and decided and must be necessary to the final judgment; and (4) the issues in both proceedings must have been identical. *United States v. Delano*, 543 F. Supp. 2d 791, 798 (N.D. Ohio 2008) (citing *Prokos v. City of Athens*, 118 F. App'x 921, 926 (6th Cir. 2004). In this case, Bickerstaff was a party to the suppression hearing, Bickerstaff has not disputed that she had a full and fair opportunity to litigate the validity of the traffic stop in her Cuyahoga County case, that the issue of probable cause for the traffic stop was actually tried, and that the issues are the same: whether probable cause existed to support the traffic stop and to detain her. ECF Doc. 195-1 at 1-2. Therefore, she cannot establish a constitutional violation with respect to her traffic stop and detention[14] because she is precluded from relitigating the issues decided in the state-court motion to suppress.

---

[14] Even if there were no probable cause for the stop, that would affect the admissibility of the evidence seized from the stop, not whether probable cause existed for institution of the felony charges brought against Bickerstaff. *Creech*, 701 F. App'x at 459; *Harris*, 513 F.3d at 511.

Bickerstaff is also unable to establish a constitutional violation with respect to Officer McCandless's alleged fabrication of a report that was then relied upon to institute felony charges. Bickerstaff has alleged that Officer McCandless prepared a false report, which she testified is corroborated by the fact of her indictment.  ECF Doc. 101 at 10; ECF Doc. 191-1 at 59.  But there is no Rule 56 evidence before the court regarding the existence or content of any report prepared by Officer McCandless.  Bickerstaff's own testimony is insufficient because she has not established her personal knowledge of the report.  *See* Fed. R. Civ. P. 56(c)(4).  Thus, Bickerstaff has not established that a genuine dispute of material fact exists as to whether Officer McCandless prepared a false report upon which her felony charges were brought.  *See Perkins v. Rogers Grp., Inc.*, No. 3:12-CV-403, 2013 U.S. Dist. LEXIS 165368, at *15 (E.D. Tenn. Nov. 21, 2013).

Bickerstaff is also unable to establish a constitutional violation based on Officer McCandless's testimony that she had a CCW permit.  Such testimony could only relate to Bickerstaff's charge of carrying a concealed weapon.  But according to Bickerstaff, she was indicted under Ohio Rev. Code § 2923.12(A)(1).  ECF Doc. 101-1 at 7.  Unlike subsection (B)(1) of that statute, which makes it a crime for a person to fail to disclose possession of a CCW permit during a traffic stop, subsection (A)(1) makes it a crime to have a deadly weapon other than a handgun.  Whether Bickerstaff had a CCW permit is not relevant to the existence of probable cause for committing a crime charged under subsection (A)(1).  *Cf.* Ohio Rev. Code § 2923.12(C)(2) (stating that subsection *(A)(2)* does not apply to a person with a valid CCW permit).

I find that Bickerstaff would, however, potentially be able to establish a constitutional violation based on Officer McCandless's alleged misrepresentation of what happened during the

traffic stop at her trial. *See Moldowan v. City of Warren*, 578 F.3d 351, 378-79 (6th Cir. 2009) (stating that a police officer can violate a criminal defendant's due process rights by withholding or suppressing exculpatory material in the course of his investigation); *State v. Brown*, 2017-Ohio-7701, ¶ 39 (Ohio Ct. App. 2017) (same). Specifically, Bickerstaff challenges the veracity of Officer McCandless's statement that he saw her covering the rifle bag and withheld exculpatory evidence. ECF Doc. 191-1 at 40; ECF Doc. 192 at 3; ECF Doc. 196 at 4. From the available record, the tampering-with-evidence charge is premised upon Officer McCandless's purported observation that the rifle bag was initially uncovered, that Bickerstaff reached toward the back seat, and that the rifle bag was observed to be covered afterwards. ECF Doc. 192-1 at 4. But the video evidence does not necessarily corroborate Officer McCandless's account, because the video does not depict the condition of the rifle bag in the back seat prior to Officer McCandless's accusation. *See* Video File A1 at 01:15. Therefore, a genuine issue of material fact exists as to whether the rifle bag was uncovered initially and whether Officer McCandless saw Bickerstaff cover the rifle bag. By extension, there would be a genuine dispute of material fact as to whether an ordinarily prudent person could conclude whether Bickerstaff concealed the rifle bag with the purpose of impairing an investigation. *See Mott*, 524 F. App'x at 186; *State v. Straley*, 139 Ohio St.3d 339, 342 (Ohio 2014).

There is also a genuine dispute of material fact as to Bickerstaff's firearm-related offenses. If Officer McCandless never conveyed to Prosecutor Obed Bickerstaff's claimed lack of knowledge of the rifle bag, Bickerstaff's explanation of why she reached into the back seat, and her son's presence at the scene corroborating her account, there would be a genuine issue of material fact as to whether evidence existed to support her firearm-related offenses. *King*, 852 F.3d at 587. Specifically, there would be a genuine issue of material fact as to whether

Bickerstaff *knowingly* concealed ready at hand a deadly weapon and as to whether she *knowingly* had a firearm while being under disability.  *See Mott*, 524 F. App'x at 186; Ohio Rev. Code §§ 2923.12(A)(1); 2923.13(A)(2).  Therefore, there is a genuine dispute of material fact as to whether Officer McCandless violated Bickerstaff's Fourth Amendment rights via malicious prosecution.

**b.**     **Clearly Established**

The appropriate examination of whether a clearly established right was violated is context-specific.  *See Beck v. Hamblen Cnty.*, 969 F.3d 592, 599-600 (6th Cir. 2020).  The Fourth Amendment protection against malicious prosecution is violated only when the defendant's "deliberate or reckless falsehoods result in arrest and prosecution without probable cause."  *Newman v. Twp. of Hamburg*, 773 F. 769, 772 (6th Cir. 2014).  This requires a degree of blameworthiness on the part of the defendant "beyond mere negligence or innocent mistake." *Johnson v. Mosely*, 790 F.3d 649, 654 (6th Cir. 2015).

Bickerstaff has established a genuine dispute of material fact as to whether Officer McCandless's alleged omissions were deliberate or reckless, resulting in a clear violation of Bickerstaff's Fourth Amendment rights.  There is no dispute that sometime prior to her arrest, Bickerstaff had filed a complaint against Officer McCandless.  ECF Doc. 191-1 at 40-41. Officer McCandless stated during the traffic stop that he knew Bickerstaff by way of reputation. Video File A3 at 18:25-18:35.  Officer McCandless testified that he was aware of "talk of the district" about Bickerstaff, had run her license plate information before, and had unexplained knowledge of her felony status even before her arrest.  ECF Doc. 192-1 at 9-11.  And as discussed above, a reasonable jury could conclude that an evidentiary basis did not exist for Bickerstaff's felony charges without Officer McCandless's alleged omissions or falsehoods.

Thus, a reasonable trier of fact could conclude that Officer McCandless deliberately or recklessly omitted exculpatory information or gave erroneous information to the prosecution without which Bickerstaff would not have been prosecuted.  *See Coffey v. Carroll*, 933 F.3d 577, 591 (6th Cir. 2019).  Thus, I find that he is not shielded by qualified immunity.

Because Bickerstaff has adduced sufficient Rule 56 evidence to establish that a constitutional violation was committed by Officer McCandless and because the right violated was clearly established, I recommend that summary judgment be denied on Bickerstaff's malicious prosecution claim against Officer McCandless.

### 5.    Malicious Prosecution Summary

Because Bickerstaff has failed to establish that Detective Nuti and Officers Goshen and McKenzie violated her Fourth Amendment rights on a theory of malicious prosecution, I recommend that summary judgment be GRANTED and that her Count I claim for malicious prosecution be DISMISSED IN PART *as to those defendants*.  But because Bickerstaff has demonstrated the existence of a genuine issue of material fact as to whether Officer McCandless violated Bickerstaff's Fourth Amendment rights and because he is not shielded by qualified immunity; I recommend that summary judgment be DENIED as to the Count I claim against him.  Thus, on Bickerstaff's Count I malicious prosecution claims against the Officer Defendants, summary judgement should be GRANTED in PART and DENIED in PART.

### D.    Civil Conspiracy

The Officer Defendants argue that Bickerstaff's civil-conspiracy claim fails as a matter of law because there was probable cause to stop, detain, and prosecute Bickerstaff; Bickerstaff has not presented any evidence establishing an underlying unlawful act by the Officer Defendants; and they are shielded by the doctrines of qualified and absolute immunity.  ECF Doc. 187 at 16-

17. Bickerstaff's arguments in her opposition brief and sur-reply are the same as those summarized above with respect to her substantive malicious-prosecution claim. *See generally* ECF Doc. 192; ECF Doc. 196.

To establish a federal civil-conspiracy claim, the plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). "A plaintiff cannot succeed on a conspiracy claim when there was no constitutional violation that injured the plaintiff." *Peroli v. Huber*, No. 21-3202, 2021 U.S. App. LEXIS 34515, at *30 (6th Cir. Nov. 19, 2021) (unreported) (alternations omitted; quotation marks omitted).

Bickerstaff's civil-conspiracy claim relies on her malicious-prosecution claim. *See* ECF Doc. 101 at 15-16. Based on the above analysis, Bickerstaff has not established a genuine dispute of material fact that a constitutional violation occurred on a theory of malicious prosecution as to Detective Nuti, or Officers Goshen and McKenzie. Bickerstaff can only maintain a conspiracy claim if she could establish the existence of a conspiracy to prosecute her among these defendants and Officer McCandless. But Bickerstaff has not presented sufficient evidence from which a reasonable trier of fact could conclude that such a conspiracy existed. Bickerstaff asserts that a conspiracy existed by virtue of the fact of her indictment. ECF Doc. 191-1 at 58. But there is no Rule 56 evidence before the court that Officer McCandless ever met with Detective Nuti as part of Detective Nuti's investigation. Officer Goshen only testified to his interaction with Bickerstaff while transporting her to jail, the transcript of which does not corroborate her claim that he falsely claimed she admitted to having her headlights on. ECF

36

Doc. 192-3 at 6-7.  And Bickerstaff testified that Officer McKenzie was wrongly included as a defendant in the case.  ECF Doc. 191-1 at 43-44.  The evidence presented is just as consistent with independent conduct, thereby failing to establish a genuine dispute of fact as to the existence of a conspiracy.  *See Womack v. Conley*, 595 F. App'x 489, 494 (6th Cir. 2014).  And Bickerstaff's conclusory allegation that a conspiracy existed at least as between Officer McCandless and the prosecutor is insufficient.  *See Bickerstaff*, 830 F.3d at 401.  Therefore, the Officer Defendants are entitled to judgment as a matter of law with respect to Bickerstaff's claim of civil conspiracy.

Accordingly, I recommend that summary judgment be GRANTED with respect to Bickerstaff's Count IV claim for civil conspiracy and that the claim be DISMISSED.

### E.  Abuse of Process

The Officer Defendants argue that, to the extent such a claim is even cognizable under 42 U.S.C. § 1983, Bickerstaff's abuse-of-process claim fails as a matter of law because there is no evidence that her criminal proceedings were perverted to serve a purpose for which they were not designed or damages.  ECF Doc. 187 at 19-21.  To the extent Bickerstaff asserts a state law claim, the Officer Defendants argue that they are entitled to absolute immunity under Ohio law. ECF Doc. 187 at 18.

In her opposition brief, Bickerstaff argues that an ulterior motive for her criminal proceedings is established by Officer McCandless's false statements concerning her CCW permit, Officer McCandless's prior knowledge of Bickerstaff's identity, and Officer Goshen's false testimony that her headlights were on.  ECF Doc. 192 at 2-4.

In their reply brief, the Officer Defendants reiterate the merits of their argument.  ECF Doc. 195 at 5.  In her sur-reply, Bickerstaff adds that although she did not receive medical

treatment for her distress, she treated it in other ways, such as counseling through her church. ECF Doc. 196 at 5.

### 1.    42 U.S.C. § 1983

Judgment as a matter of law is warranted with respect to Bickerstaff's Count VIII claim for abuse of process to the extent that it has been asserted under 42 U.S.C. § 1983.  The Sixth Circuit has stated that "a federal abuse of process claim does not exist in the law of this circuit." *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014).  And the Sixth Circuit has affirmed the dismissal of abuse-of-process claims brought under § 1983 on the basis that they are not cognizable.  *E.g.*, *Cratty v. City of Wyandotte*, No. 18-1710, 2019 U.S. App. LEXIS 12561, at *9-10 (6th Cir. 2019) (unreported); *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015); *Rapp*, 557 F. App'x at 448.

### 2.    Ohio Law

Bickerstaff's abuse-of-process claim, however, is cognizable to the extent it alleges a violation of Ohio law.[15]  *Moore*, 612 F. App'x at 823; *see El Bey v. Roop*, 500 F.3d 402, 413 (6th Cir. 2008).  The elements of an Ohio abuse-of-process claim are:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich*, 68 Ohio St. 3d at 298.

Under Ohio law, an employee of a political subdivision is immune from liability unless: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with

---

[15] Liberal construction of Bickerstaff's claim at this juncture in the case would not prejudice the Officer Defendants because they have argued the elements of an abuse-of-process claim under Ohio law.  ECF Doc. 187 at 19.

malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6).

Although not argued by the Officer Defendants, Bickerstaff's amended complaint has failed to plausibly allege a claim for abuse of process under Ohio law.  Bickerstaff's complaint alleges that she was prosecuted "to accomplish the goal of convicting Bickerstaff without probable cause and in retaliation for asserting First Amendment free speech rights." ECF Doc. 101 at 18.  By its very nature, however, an abuse of process claim is premised upon the *existence* of probable cause to support the legal proceedings. *Yaklevich*, 68 Ohio St. 3d at 301 n.6.  This pleading defect was present in Bickerstaff's original complaint, and it was the basis upon which the court previously dismissed the claim. ECF Doc. 1-1 at 17; ECF Doc. 87 at 36-37.  The pleading defect has not been cured. *Compare* ECF Doc. 1-1 at 17, *with* ECF Doc. 101 at 18. Therefore, Bickerstaff's state law claim for abuse of process is implausible and may be dismissed on that basis. *See Pierce v. Woyma*, 2012-Ohio-3947, ¶ 23 (Ohio Ct. App. 2012) ("[R]ecovery under competing causes of action for malicious prosecution and abuse of process under the same set of facts is impossible.").

Moreover, even without the pleading defect, the Officer Defendants would be entitled to summary judgment on Bickerstaff's abuse-of-process claim.  Judgment as a matter of law is warranted with respect to Bickerstaff's abuse-of-process claim against Officer McKenzie.  As discussed above, Bickerstaff concedes that Officer McKenzie should not be part of this case. ECF Doc. 191-1 at 43-44.

Judgment as a matter of law is also warranted with respect to Bickerstaff's abuse-of-process claim against Detective Nuti and Officers Goshen and McCandless, but not on the basis

of absolute immunity. There is no dispute that these officers were acting within the scope of their employment. But evidence has been presented that, before her arrest, Bickerstaff had filed complaints against Officers Goshen and McCandless. ECF Doc. 191-1 at 40-41; ECF Doc. 192-3 at 5. According to the video and testimonial evidence, Officer McCandless knew Bickerstaff by way of reputation and through "talk of the district," he believed that she had a felony conviction and CCW permit, and he had run her license plate information. ECF Doc. 192-1 at 9-11; Video File A3 at 18:25-18:35. Circumstantial evidence, therefore, exists that Officer McCandless instituted traffic court proceedings and that Detectives Nuti and Officers Goshen and McCandless instituted criminal proceedings against Bickerstaff with either malice or bad faith. *See Thornton v. Summit Cnty. Children Servs. Bd.*, 2007-Ohio-4657, ¶11 (Ohio Ct. App. 2007) (defining malice and bad faith).

Although the Officer Defendants might not enjoy absolute immunity, Bickerstaff has not presented evidence establishing the elements of an abuse-of-process claim. As against Detective Nuti, as discussed above, his only involvement in Bickerstaff's criminal proceedings was investigating Bickerstaff's arrest and testifying at her grand jury proceedings. No Rule 56 evidence is before the court that Detective Nuti knew of Bickerstaff's complaints against Officers Goshen and McCandless or that Detective Nuti was aware of Bickerstaff's general reputation. Thus, there is no Rule 56 evidence that Detective Nuti participated in her grand jury proceedings with the intent to achieve some improper objective.

As against Officers Goshen and McCandless, however, there is a genuine dispute of material fact as to the second element of an abuse-of-process claim. Bad faith alone is not enough to establish that the proceedings were instituted for an ulterior purpose. *See Yaklevich*, 68 Ohio St. 3d at 298 n.2 ("[T]here is no liability for abuse of process where the defendant has

done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." (alterations omitted; quotation marks omitted)).  Bickerstaff must present evidence that criminal proceedings were initiated against her in "an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as a threat." *Ikremah Omran v. Lucas*, 2021-Ohio-4592, ¶41 (Ohio Ct. App. 2021).  Bickerstaff's evidence of her prior complaints against Officer McCandless and Officer Goshen and her reputation in the district can serve as circumstantial evidence from which a reasonable trier of fact could conclude that her traffic court proceedings were instituted against her for an improper purpose – retaliation against her for filing complaints.

Where Bickerstaff's abuse-of-process claim against Officers Goshen and McCandless fails, however, is that no Rule 56 evidence has been presented of damages.  *See Jones v. Norfolk S. Ry. Co.*, 2005-Ohio-879, ¶26 (Ohio Ct. App. 2005) (granting summary judgment for failure to show direct damages resulting from criminal trespass proceedings).  The only harm Bickerstaff alleges as a result of the alleged abuse of process was her unlawful imprisonment and prosecution.  ECF Doc. 101 at 18.  But the very nature of an abuse of process claim assumes probable cause to institute her criminal proceedings and, by extension, her imprisonment.  *See Yaklevich*, 68 Ohio St. 3d at 301 n.6

In her sur-reply, Bickerstaff indicates that she suffered unnecessary stress while her criminal case was pending, she was subject to public scrutiny while being on the news, and she was humiliated.  ECF Doc. 196 at 5.  But the kinds of damages recoverable under a claim of abuse of process must be concrete.  *See Husa v. Knapp*, 2020-Ohio-6986, ¶37 (Ohio Ct. App. 2020) (finding that "feeling 'like shit'" was not a compensable injury on an abuse-of-process claim).  For example, she could recover for attorney fees expended in defending her criminal

41

case, expenses associated with obtaining psychological treatment for her emotional distress, and damage to her reputation.  *See Gemperline v. Franano*, 2021-Ohio-2394, ¶¶23-24 (Ohio Ct. App. 2021); *Ruggerio v. Kavlich*, 2010-Ohio-3995, ¶31 (Ohio Ct. App. 2010).  But there is no Rule 56 evidence before the court that Bickerstaff paid any legal fees in her criminal case, that she has paid for mental health treatment, or of the nature and extent of the damage to her reputation. Without these, Bickerstaff cannot establish a genuine dispute of material fact as to the third element of an abuse-of-process claim.  *See Donohoe v. Burd*, 722 F. Supp. 1507, 1522 (S.D. Ohio 1989) ("This Court cannot consider remote, indefinite or speculative injuries or damages."); *Adkins v. Adkins*, No. WD-88-7, 1989 Ohio App. LEXIS 251, at *5-6 (Ohio Ct. App. Jan. 27, 1989) (unreported).

### 3. Summary of Abuse-of-Process Claim

Because Bickerstaff has not asserted a cognizable claim for abuse of process, either as a federal claim or as a state law claim, and she has otherwise failed to establish liability under Ohio law, I recommend that summary judgment be GRANTED on Bickerstaff's Count VIII claim for abuse of process and that the claim be DISMISSED.

### F. Intentional Infliction of Emotional Distress

The Officer Defendants argue that they are absolutely immune from liability as to Bickerstaff's claim for intentional infliction of emotional distress.  ECF Doc. 187 at 18. Alternatively, the Officer Defendants argue that Bickerstaff has failed to establish the elements for an intentional-infliction-of-emotional-distress-claim.  ECF Doc. 187 at 20-21.

Bickerstaff's arguments for establishing liability for infliction of emotional distress are the same as those for malicious prosecution and abuse of process.  *See* ECF Doc. 192 at 3-4; ECF Doc. 196.

Under Ohio law, an intentional-infliction-of-emotional-distress claim requires: "(1) that the defendant intended to cause the plaintiff to suffer serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Burgess v. Fisher*, 735 F.3d 462, 480 (6th Cir. 2013) (quotation marks omitted).

As discussed above, Officer McKenzie is an improperly named defendant so there is no genuine dispute of material fact that Bickerstaff's claim for intentional infliction of emotional distress against him should be dismissed.  As also discussed above, there is a genuine dispute of material fact as to whether the Officer Defendants are entitled to absolute immunity.  However, Bickerstaff has failed to present sufficient Rule 56 evidence to establish the other elements of an intentional-infliction-of-emotional-distress claim.  Bickerstaff cannot maintain a claim for intentional infliction of emotional distress based on her traffic stop and detention because, as determined by the trial court, there was probable cause for both the stop and her detention and Bickerstaff is precluded from relitigating the matter in this court.  *See Hale v. Vance*, 267 F. Supp. 2d 725, 737 (S.D. Ohio 2003) ("[W]here the detention and arrest are lawful, they cannot give rise to a subsequent civil action against the detaining or arresting officer for inflicting emotional distress.").

Bickerstaff could sustain a claim of intentional infliction of emotional distress based on Officer McCandless's allegedly false statements at trial concerning her possession of a firearm and that she attempted to hide the firearm.  ECF Doc. 196 at 3-4.  But Bickerstaff has not presented Rule 56 evidence that she suffered serious emotional distress within the meaning of Ohio law.  The degree of distress contemplated by an infliction-of-emotional-distress claim must be "both severe and debilitating," such as "traumatically induced neurosis, psychosis, chronic

depression, or phobia." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (Ohio 1983).  Other than her general allegation of stress from having to go through criminal and now civil proceedings, Bickerstaff has not submitted Rule 56 evidence that she suffered severe emotional harm as a result of the Officer Defendants' allegedly tortious acts.  ECF Doc. 196 at 5-6.  Her general allegations of stress do not go beyond "mere upset or hurt feelings," which is insufficient to sustain an infliction-of-emotional-distress claim.  *Paugh*, 6 Ohio St. 3d at 78; *see Crable v. Nestle USA, Inc.*, 2006-Ohio-2887, ¶ 58 (Ohio Ct. App. 2006) ("Summary judgment is appropriate when the plaintiff presents no testimony from experts or third parties as to the emotional distress suffered and where the plaintiff does not seek medical or psychological treatment for the alleged injuries.").

Accordingly, I recommend that summary judgment be GRANTED with respect to Bickerstaff's Count IX claim for intentional infliction of emotional distress and that the claim be DISMISSED.

## V.    Summary & Recommendation

Based on the foregoing, I recommend that the Officer Defendants' motion for summary judgment (ECF Doc. 187) be GRANTED IN PART and DENIED IN PART.

Specifically, I recommend that the motion be GRANTED as to Bickerstaff's claims in Count I (except as to Officer McCandless), Count IV, Count VIII, and Count IX because: (1) Bickerstaff has failed to establish a Fourth Amendment violation of malicious prosecution; (2) there is no circumstantial evidence from which to establish a genuine issue of fact to the existence of a civil conspiracy; (3) abuse of process is not cognizable under 42 U.S.C. § 1983; and (3) Bickerstaff has failed to establish the necessary elements of an abuse of process claim or an intentional infliction of emotional distress claim under Ohio law.

And I recommend that the motion be DENIED as to Bickerstaff's Count I claim for malicious prosecution against Officer McCandless because a genuine dispute of material fact exists as to whether there was probable cause for her felony prosecution and as to whether Officer McCandless acted deliberately or recklessly.

Dated: April 26, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).