## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Brenda Bickerstaff,** | | **Case No. 1:18cv1142** |
| | **Plaintiff,** | |
| **-vs-** | | **JUDGE PAMELA A. BARKER** |
| | | **Magistrate Judge Thomas M. Parker** |
| **Cuyahoga County, _et al._,** | | |
| | **Defendants** | **MEMORANDUM OPINION AND ORDER** |

On April 26, 2022, Magistrate Judge Thomas Parker issued a Report & Recommendation that the Motion for Summary Judgment of Defendants City of Cleveland Police Officers Daniel McCandless, Delonzo Goshen, Donald Nuti, and Timothy McKenzie (hereinafter "the Officer Defendants") be granted in part and denied in part. (Doc. No. 207.) Defendant McCandless filed an Objection (Doc. No. 212) on May 10, 2022. Plaintiff Brenda Bickerstaff did not file an Objection but did file a _pro se_ response to Defendant McCandless' Objection. (Doc. No. 213.)

For the following reasons, the Magistrate Judge's Report & Recommendation (Doc. No. 207) is ADOPTED IN PART and REJECTED IN PART. The Court REJECTS the Report & Recommendation to the extent it recommends that Defendant McCandless be denied qualified immunity with respect to Plaintiff's federal malicious prosecution claim. The Court ADOPTS the Report & Recommendation in all other respects, as set forth below. Accordingly, Defendant McCandless' Objection is GRANTED and the Officer Defendants' Motion for Summary Judgment (Doc. No. 187) is GRANTED.

## I.    Facts[1]

Plaintiff Brenda Bickerstaff ("Bickerstaff") is a private investigator who works for private criminal defense lawyers in Northeast Ohio.  (Affidavit of Brenda Bickerstaff (Doc. No. 101-1) at ¶ 1, PageID# 761.)  *See also* Bickerstaff Depo. (Doc. No. 191-1) at Tr. 8.  The majority of her investigations occur in Cuyahoga County, Ohio.  (Bickerstaff Aff. (Doc. No. 101-1) at ¶ 1.) Bickerstaff believes that her investigative work "has caught the attention of the prosecutors and police officers, which [she believes] has caused her [to be] harassed and intimidated by them making false allegations to the court when she investigates cases."  (Doc. No. 101 at ¶ 19.)  Over the years, she has filed complaints against multiple City of Cleveland Police Officers because of her concerns of harassment.  (Doc. No. 191-1 at PageID# 1604.)

Of particular note, in November 2013, Bickerstaff sent a letter to the City of Cleveland's Office of Professional Standards in which she complained about Defendant herein, Cleveland Police Officer Daniel McCandless.  (Doc. No. 101 at ¶ 11; Doc. No. 101-1 at PageID#s 755-756.) Specifically, Bickerstaff asserted that Officer McCandless was "always following behind" her and behaving like a "bully" in order to try to stop her from investigating cases.[2]  (Doc. No. 101-1 at PageID#s 755-756.)  Bickerstaff also, at some point, made a complaint against Defendant Cleveland Police Officer Delonzo Goshen.  (Doc. No. 192-3 at PageID# 1630.)

---

[1] Defendant McCandless objects to several of the Magistrate Judge's factual findings.  (Doc. No. 212 at pp. 3-5.) Accordingly, this Court has reviewed the summary judgment record *de novo* and sets forth its own recitation of the facts, *infra.*

[2] Neither party has directed this Court's attention to any clear evidence regarding whether Bickerstaff's complaint was investigated and, if so, the results of that investigation.  In her deposition, Bickerstaff stated only that "it took them [i.e., the City of Cleveland] almost two years to even reply" to her complaint.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 64.) However, she then testified that "they still didn't even reply to the complaint."  (*Id.*)  During Bickerstaff's criminal trial proceedings, Officer Candless testified that he was unaware that she had "written him up."  (Doc. No. 192-1 at Tr. 88, PageID# 1623.)

In the fall of 2015, Bickerstaff was sharing her vehicle (a 2010 Nissan) with her son, Edward Bickerstaff ("Edward").  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 10-11.)  Bickerstaff alleges that, at that time, Edward was a security guard, owned a registered firearm for work, and had a Concealed Carry Weapons ("CCW") permit.  (Doc. No. 101 at ¶ 10; Bickerstaff Aff. (Doc. No. 101-1) at ¶ 3, PageID# 761.)  Bickerstaff did not have a CCW permit.  (Doc. No. 192-2.)  It is undisputed that she has a prior felony conviction.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 39; Doc. No. 191-1 at PageID# 1605.)

On November 11, 2015, Edward had been using the Nissan.  That evening, he dropped the Nissan off with Bickerstaff at her residence in Cleveland, at which point she "ran outside, grabbed the keys, jumped in the car and drove off."  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 11.)  Bickerstaff drove to Severance Center to receive payment from the wife of a client.  (*Id*. at Tr. 11-13.)  She then drove to a Family Dollar where she made a purchase, after which she decided to return home to get some more money.  (*Id*. at Tr. 13-15, 33-34.)

At approximately 8:00 p.m., Officer McCandless and his partner, Officer Matthew McKinney,[3] initiated a traffic stop of Bickerstaff's vehicle.  (McCandless Decl. (Doc. No. 187-1) at ¶¶ 2-3.)  Bickerstaff pulled over and stopped her vehicle at the side of a residential road.  (*Id*. at ¶ 5.)  She was the only occupant of the vehicle.  (*Id*. at ¶ 7.)  Officer McCandless parked the patrol car

---

[3] In her Amended Complaint, Bickerstaff alleges that Cleveland Police Officer Timothy McKenzie was present at the traffic stop and names him as a Defendant herein.  (Doc. No. 101.)  However, during her deposition, Bickerstaff testified that Officer McKenzie was not, in fact, present at the traffic stop and that she named him as a defendant because she confused his name with that of Officer McKinney.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 43-44.)  Bickerstaff agreed that "Officer McKenzie wasn't there.  He's not a part of this litigation."  (*Id*.)

3

behind Bickerstaff's vehicle.  (*Id.* at ¶ 5.)  Both Officer McCandless and Officer McKinney turned on their wearable body cameras.[4]  (*Id.*)

The video footage shows the following.  Officer McCandless approached the driver's side of Bickerstaff's vehicle with a flashlight, while Officer McKinney approached the passenger side. (Video File A1 at 0:42; Video File A2 at 00:40.)  Officer McCandless said to Bickerstaff: "You got your headlights on now? Because you had them off the whole time you were going down St. Clair."[5] (Video File A1 at 00:42 - 00:47.)  Bickerstaff said, "all right."  (*Id.* at 00:50.)  Officer McCandless then asked her to provide her driver's license and proof of insurance.  (*Id.* at 00:58-00:59.)  While Bickerstaff was getting her proof of insurance, Officer McCandless shined his flashlight into the back seat of her car.  (*Id.* at 1:05.)  Once Bickerstaff had produced her license and proof of insurance, Officer McCandless and Officer McKinney proceeded back to the patrol car to process a citation. (*Id.* at 1:24.)  Shortly thereafter, Bickerstaff got out of her vehicle and faced the patrol car.  (*Id.* at 1:35.)  Officer McCandless told her to get back into the car.  (*Id.* at 1:36.)  Bickerstaff requested that

---

[4] Video footage from both Officers' body cameras was manually filed with the Court in the form of a DVD.  The DVD contains three video files: (1) "A1 8920 _ Empire_ TS_Info_For_Rpt_Gun_Conf_Bickerstaff(3) mp4" ("Video File A1"); (2) "A2_8920_Empire_Improp_Handle_Of_Firearm_In_MV_Hwwud_Gun_Arst(2).mp4 ("Video File A2"); and (3) "A3_8920_Empire_Improp_Handle_Of_Firearm_In_MV_Hwwud_Gun_Arst_Redacted(1).mp4"  ("Video  File  A3"). Video File A1 is Officer McCandless' body footage.  Video Files A2 and A3 are Officer McKinney's body camera footage.  In addition, the parties submitted (1) Declarations from Officer McCandless, Officer Goshen, and Detective Nuti (Doc. Nos. 187-1, 187-2, 187-3); (2) Bickerstaff's deposition transcript (Doc. No. 191-1); (3) Bickerstaff's Affidavit (Doc. No. 101-1 at PageID#s 761-762); (4) Bickerstaff's interrogatory responses (Doc. No. 187-9); and (5) excerpts from Bickerstaff's criminal proceedings (Doc. Nos. 191-1 at PageID#s 1604-1606, 192-1, 192-3, 195-1.)

[5] The parties dispute whether Bickerstaff was, in fact, driving with her headlights off.  Bickerstaff testified during her deposition that her headlights were on, both while she was driving and when she was pulled over.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 35-36.)  Officer McCandless, on the other hand, avers that Bickerstaff had been driving with her headlights off and, further, that her headlights were initially off when he pulled her over.  (McCandless Decl. (Doc. No. 187-1) at ¶¶ 3, 7.)  He avers that, after he approached her car and told her she had been driving with her headlights off, Bickerstaff "then clicked on her front headlights for the vehicle."  (*Id.* at ¶ 7.)  The video footage does not show whether Bickerstaff's headlights were on prior to the traffic stop.  The footage does appear to show Bickerstaff turning her headlights on after Officer McCandless tells her that she had been driving with her headlights off.  *See* Video File A2 at 00:41 to 00:46; Video File A1 at 00:42 to 00:47.

4

a supervisor be called to the scene and returned to her vehicle.  (*Id*. at 1:35- 1:37.)  Officer

McCandless can then be heard calling dispatch to convey Bickerstaff's request for a supervisor.[6]  (*Id*.

at 2:10.)

During her deposition, Bickerstaff testified that, after she returned to her vehicle, she reached

around to retrieve her recording device, which was in a bag in the back seat.  (Bickerstaff Depo. (Doc.

No. 191-1) at Tr. 49.)  She testified that, as she did so, she "hit something hard."  (*Id*.)  Bickerstaff

explained that she then looked in the back seat, noticed Edward's rifle bag, and realized that Edward

had left his weapon in the car. [7]  (*Id*.)  She contacted her son immediately.  (*Id*.)  Throughout her

deposition, Bickerstaff was adamant that she was not aware that either the rifle bag or the weapon

was in the vehicle until that moment.  (*Id*. at Tr. 15, 19, 31-32.)

Meanwhile, the body cam footage shows Officers McCandless and McKinney return to

Bickerstaff's vehicle.  Officer McCandless advised Bickerstaff that his supervisor was coming to the

scene.  (Video File A3 at 00:42- 00:47.)  He also informed Bickerstaff that her driver's license was

suspended.  (*Id*.)  Bickerstaff stated that she was not aware of that.  (*Id*. at 00:47 to 00:57.)  Officer

McCandless then asked Bickerstaff: "Is that a rifle in the back?"  (*Id*. at 00:57-00:58.)  Bickerstaff

---

[6] At this point, Officer McCandless turned off his body camera and Officer McKinney muted the microphone of his camera.  Officer McKinney later turned his microphone back on.  The remaining body camera footage of Bickerstaff's traffic stop is from Officer McKinney's body camera and is labeled Video File A3.

[7] Officer McCandless avers that, while he was in his patrol car, he saw Bickerstaff reach into the back seat area of her vehicle.  (McCandless Decl. (Doc. No. 187-1) at ¶ 9.)  He further avers that Officer McKinney asked him, "Was that a rifle bag in the back seat?"  (*Id*.)  Officer McCandless avers that he then "confirmed that I saw it in plain sight as well and thought that it was a firearm."  (*Id*.)  Officer McCandless avers that he "then conferred with the assigned CPD Supervisor, Sgt. Gill, by radio from inside the zone car."  (*Id*.)  Neither Officer McKinney's question about the rifle bag, Officer McCandless' response, or Officer McCandless' conversation with Sergeant Gill are captured by any of the video footage submitted in this action.

responded "That's my son's," to which Officer McCandless replied "That's your son's, but it's in your car." (*Id*. at 00:59 to 01:00.)  The video footage then captures the following exchange:

> **McCandless:** Is that a loaded weapon back there? Because I saw you hide it.
>
> **Bickerstaff:** No, you didn't see me hide it.  I pulled my bag over to the front… [inaudible]
>
> **McCandless:** You put the coats over it.  Because when we pulled up, it was clearly visible.  And even my partner said, is that a rifle in there? Okay, and when we went back to the car, I saw you reach back there….
>
> **Bickerstaff:** Sir. . . to pull my bag….
>
> **McCandless:** ….and now you have several things covering it.

(*Id*. at 01:00 to 01:24.)  Officer McCandless then asked whether the gun was loaded, to which Bickerstaff responded that she would have to call her son to ask.  (*Id*. at 01:25 – 01:33.)  Officer McCandless stated, "I'm going to check it for our safety, I'm going to check it, okay?"  (*Id*. at 01:34 - 01:36.)  Bickerstaff responded "okay." (*Id*. at 01:37.)  As Officer McCandless removed the rifle bag from the back seat, he asked Bickerstaff whether there were any other weapons in the vehicle. (*Id*. at 01:37 – 01:42.)  Bickerstaff responded "Yeah, I didn't know he had it in there." (*Id*. at 01:42-01:44.)  When Officer McCandless asked if she knew what kind of weapon it was, Bickerstaff stated "as far as I know it's a shotgun.  It's for his job." (*Id*. at 01:44 – 01:51.)

The Officers returned to their vehicle, where Officer McCandless took a shotgun out of the rifle bag and unloaded seven shells from it.  (*Id*. at 01:51-02:57.)  Officer McCandless can be heard identifying the shotgun as a 12-gauge Mossberg.  (*Id.* at 03:13 – 03:48.)  He called in the information on the shotgun to dispatch, including the weapon's serial number.  (*Id*.)  After some time, additional officers arrived at the scene, including Defendant Officer Delonzo Goshen and his partner Officer Aarius Waters.  (*Id*. at 08:00-08:06.)  *See also* Goshen Decl. (Doc. No. 187-2) at ¶ 3.  Officer

6

McKinney explained to one of the arriving officers that they had pulled Bickerstaff over for not having her lights on, later determined that her license was under suspension, and then saw her moving around in the vehicle and suspected she'd tried to hide something.  (Video File A3 at 08:06-08:30.)

Officer McKinney then re-entered the patrol car.  (*Id*. at 10:49-10:54.)  Inside the car, radio dispatch could be overhead stating that their search did not reveal any felonies listed on Bickerstaff's record.  (*Id*. at 10:54-11:13.)  Officer McCandless then walked towards Bickerstaff's car and told her that she was in the possession of a concealed weapon.  (*Id*. at 11:44-12:02.)  Bickerstaff responded that her son had just used her car.  (*Id*. at 12:06-12:10.)  Officer McCandless replied that the gun was in her possession and that she could not have a loaded firearm inside a vehicle "like that." (*Id*. at 12:12-12:16.)  Officer McCandless also repeated that she was driving under suspension, to which Bickerstaff responded that she did not know she was driving under suspension.  (*Id*. at 12:16-12:28.) Officer McCandless then asked Bickerstaff if she had any felony convictions, to which she responded, "Yeah, I do. You know I do. You know I wrote you up. You're the one I wrote up last year for following me." (*Id*. at 12:28-12:38.)  Officer McCandless asked her to get out of the vehicle, placed her in handcuffs, placed her in the patrol car, and advised her of her *Miranda* rights.  (*Id.* at 12:38-13:58.)

As Officer McKinney was sitting in the patrol car preparing the traffic citation, Bickerstaff can be heard complaining about her handcuffs and stating, "you're not going to get away with this." (*Id*. at 16:47 – 17:03.)  The ensuing conversation between Bickerstaff and Officer McCandless is difficult to hear.  At one point, however, Officer McCandless can be heard telling Bickerstaff that he knew her only by reputation and that he stopped her because her headlights were off, she was under suspension, and she tried to hide something in the backseat.  (*Id*. at 18:25-18:35.)  Bickerstaff

explained that she had a bag in the back seat with a recording device, and that's what she was reaching for.  (*Id*. at 18:35-19:07.)  She again stated that her son had left the gun in the back seat.  (*Id*. at 19:07-19:13.)  Officer McCandless stated that it did not matter because she was still a felon in possession.  (*Id*. at 19:13-19:23.)  At some point, Edward appeared at the scene.[8]  Officer Goshen then transported Bickerstaff to central booking "because she seemed hostile to the arresting officers."  (Goshen Decl. at ¶ 5.)

Defendant City of Cleveland Police Detective Donald Nuti was assigned to investigate Bickerstaff's arrest.  (Nuti Decl. (Doc.  No. 187-3) at ¶ 2.)  As part of his investigation, Detective Nuti confirmed that Bickerstaff had a prior felony conviction for assault on a peace officer.  *See State of Ohio v. Bickerstaff*, Cuyahoga County Court of Common Pl. Case No. CR-95-332489.[9]  He then consulted with a prosecutor and a grand jury packet was completed.  (Nuti Decl. (Doc. No. 187-3) at ¶ 3.)  Bickerstaff was released from jail on November 13, 2015.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 54.)

On November 19, 2015, Bickerstaff was charged in Cleveland Municipal Court with driving without headlights, driving under suspension, and displaying fictitious plates.  *See State of Ohio/City of Cleveland v. Bickerstaff*, Case No. 2015 TRD 045565 (Cleve. Muni. Ct.)  *See also* Doc. No. 187-7; Bickerstaff Depo. (Doc. No. 191-1) at Tr. 54-55.  In May 2016, she pled no contest to driving under suspension.  (*Id*.)  The remaining traffic charges were dismissed on the prosecutor's motion.  (Doc. No. 187-7.)

---

[8] At approximately the 20:00 minute mark of Video File A3, Bickerstaff indicated, "That's my son right there."  (*Id*. at 19:53-19:54.)

[9] In both her discovery responses and deposition, Bickerstaff acknowledges that she has a prior felony conviction.  *See* Doc. No. 187-9 at PageID# 1468; Bickerstaff Depo. (Doc. No. 191-1) at Tr. 39.

Meanwhile, on November 20, 2015, the Cuyahoga County Prosecutor's Office presented felony charges against Bickerstaff to a grand jury, supported by testimony from Detective Nuti.  (Nuti Decl. (Doc. No. 187-3) at ¶ 4.)  Bickerstaff states that the grand jury issued an indictment charging her with: (1) having weapons under disability, in violation of Ohio Rev. Code § 2923.13(A)(2); (2) carrying a concealed weapon, in violation of Ohio Rev. Code § 2923.12(A)(1); and (3) tampering with evidence, in violation of Ohio Rev. Code § 2921.12(A)(1).[10]  (Bickerstaff Aff. (Doc. No. 101-1) at ¶ 2, PageID# 761.)  Bickerstaff's attorney filed a motion to suppress.  On April 12, 2017, the state trial conducted a hearing on the motion, during which Officer McCandless testified.  (McCandless Decl. (Doc. No. 187-1) at ¶ 16.)  The state trial court denied the motion to suppress, finding that (1) there was evidence to support probable cause for a stop; (2) the plain view doctrine was not negated by the use of a flashlight; and (3) driving under suspension was an arrestable offense.[11]  (Doc. 195-1 at PageID#s 1681-1682.)

The state trial court subsequently conducted a bench trial on Bickerstaff's felony charges, during which Officers Goshen and McCandless testified.  (McCandless Decl. (Doc. No. 187-1) at ¶ 16; Goshen Decl. (Doc. No. 187-2) at ¶ 6.)  Among other things, Officer McCandless testified that

---

[10] The parties have not provided (or directed this Court's attention to) copies of the state court docket sheet and/or the indictment in Bickerstaff's underlying felony criminal case.  Nor does this Court have full and complete copies of either the grand jury transcript, the suppression hearing transcript, and/or the bench trial transcript.  Information relating to Bickerstaff's underlying felony case does not appear to be available on the Cuyahoga County Court of Common Pleas website.

[11] Defendants filed an excerpt from the suppression hearing.  (Doc. No. 195-1 at PageID#s 1681-1682.)  Therein, the state trial court explained as follows: "The Court has heard all the evidence related to [the] defense's motion to suppress.  At this time, I am going to deny the motion to suppress.  The Court has deliberated on this and I do find at this time [that] the evidence supports probable cause for a stop.  In the plain view, use of a flashlight, it does not negate the plain view doctrine.  The fact that the officer used the flashlight to look in the back seat, I believe the case law supports that.  And also it was testified to that Ms. Bickerstaff was driving under suspension at the time. That was not in dispute by the defense.  That is an arrestable offense in and of itself.  So, at this time the motion to suppress is denied." (*Id.*)

9

he knew of Bickerstaff prior to the traffic stop through "talk of the district."  (Doc. 192-1 at PageID# 1622.)  He testified that he might have "ran her license plate when she was driving, but I never stopped her or had any interactions with her prior to that date."  (*Id*. at PageID# 1623.)  Officer McCandless further testified that he believed Bickerstaff had a felony record but he could not recall why he thought that.  (*Id*. at PageID# 1621.)  He denied knowing that Bickerstaff filed a complaint against him.  (*Id*. at PageID# 1623.)  Lastly, Officer McCandless acknowledged that he did not actually see Bickerstaff covering up the rifle bag.  (*Id*. at PageID# 1616.)  Rather, he testified that he assumed that the movement he saw from his patrol car was Bickerstaff attempting to conceal the rifle bag.  (*Id.*)

On April 20, 2017, Bickerstaff was acquitted of all charges in the indictment.  (Doc. No. 101 at ¶ 31; Doc. No. 187 at p. 9.)

## II.     Relevant Procedural History

### A.     Complaint and Rule 12 Motions

In April 2018, Bickerstaff, through counsel, filed a Complaint in the Cuyahoga County Court of Common Pleas against (1) Cuyahoga County; (2) Cuyahoga County Prosecutor Michael O'Malley; (3) John Doe Assistant County Prosecutors 1-2; (4) Cuyahoga County Sheriff Clifford Pinkney; (5) the City of Cleveland; and (6) City of Cleveland Police Officers McCandless, Goshen, Nuti, and Timothy McKenzie (hereinafter referred to as "the Officer Defendants").  (Doc. No. 1-1.)  Therein, Bickerstaff asserted the following nine claims:  (1) malicious prosecution under 42 U.S.C. § 1983 (Count I); (2) "municipal liability under *Monell*" (Count II) (3) failure to supervise pursuant to 42 U.S.C. § 1983 (Count III) (4) "civil conspiracy to constitutional rights under 42 U.S.C. § 1983" (Count IV); (5) failure to investigate pursuant to 42 U.S.C. § 1983 (Count V); (6) unlawful arrest pursuant to 42 U.S.C. § 1983 (Count VI); (7) false imprisonment pursuant to 42 U.S.C. § 1983 (Count

VII) (8) abuse of process pursuant to 42 U.S.C. § 1983 (Count VIII) and (9) intentional and negligent infliction of emotional distress (Count IX).

Defendants Cuyahoga County, Prosecutor O'Malley, and Sheriff Pinkney (hereinafter "the County Defendants") removed this action to this Court on May 17, 2018. (Doc. No. 1.) On November 26, 2018, Bickerstaff advised the Court that she intended to proceed *pro se*. (Doc. No. 15.) The matter was subsequently referred to Magistrate Judge Parker for pre-trial supervision. (Doc. No. 16.)

In March 2019, the County and City of Cleveland and Officer Defendants each filed Motions for Judgment on the Pleadings, which Bickerstaff opposed. (Doc. No. 41, 43, 67.) On August 12, 2019, the Magistrate Judge issued a Report & Recommendation, in which he recommended that the Court grant the County Defendants' Motion for Judgment on the Pleadings and *sua sponte* dismiss the John Doe Assistant County Prosecutor Defendants. (Doc. No. 87 at pp. 16-17, 54.) He further recommended that the Court grant the City of Cleveland and Officer Defendants' Motion for Judgment on the Pleadings with regard to Bickerstaff's claims for: (1) unlawful arrest; (2) false imprisonment; (3) abuse of process; (4) civil conspiracy (as against the City of Cleveland but not the Officer Defendants); (5) malicious prosecution (as against the City of Cleveland and Officers Goshen, Nuti, and McKenzie, but not Officer McCandless); (6) *Monell* liability (including custom-or-policy claims, failure-to-investigate claims, and failure-to-supervise claims); and (7) emotional distress (as against the City of Cleveland but not the Officer Defendants) (*Id.* at pp. 54-55.)

The Magistrate Judge recommended the City's Motion be denied with respect to Bickerstaff's claims for malicious prosecution against Defendant McCandless, as well as her civil conspiracy and emotional distress claims against the Officer Defendants. (*Id.* at p. 55.) Finally, the Magistrate Judge recommended that the Court *sua sponte* grant Bickerstaff leave to amend (1) the malicious

11

prosecution claim against Officers Goshen, Nuti, and McKenzie; (2) the abuse of process claim against the Officer Defendants; and (3) the *Monell* claims against Cleveland and Cuyahoga County. (*Id*.)  Bickerstaff filed Objections and "Supplemental Objections" to the Report & Recommendation on August 26, 2019, which Defendants opposed.  (Doc. Nos. 90, 91, 93, 94.)  The City of Cleveland and Officer Defendants filed Objections on August 27, 2019, which Bickerstaff opposed.  (Doc. No. 92, 95.)

On October 21, 2019, the Court issued a Memorandum Opinion & Order adopting the Report & Recommendation in all material respects.  (Doc. No. 97.)

Bickerstaff thereafter filed an Amended Complaint on November 12, 2019.  (Doc. No. 101.) In addition to pleading additional factual allegations, Bickerstaff added Cuyahoga County Sheriff Frank Bova as a Defendant, and continued to name John Doe Assistant County Prosecutors 1-2 as Defendants.  (*Id*.)  The City of Cleveland and Cuyahoga County each filed Motions to Dismiss.  (Doc. Nos. 102, 105.)  Bickerstaff opposed both motions.  (Doc. Nos. 107, 130.)

Shortly thereafter, on June 11, 2020, the Magistrate Judge issued a Report & Recommendation, in which he recommended that the Court (1) grant the City of Cleveland's and County Defendants' Motions to Dismiss Bickerstaff's *Monell* claims; and (2) grant the County Defendants' Motion to Dismiss the other amended and additional claims against the County Defendants and former Sheriff Bova.  (Doc. No. 146.) Bickerstaff filed an Objection, to which the County Defendants filed a Response in Opposition.  (Doc. Nos. 148, 151.)

On September 21, 2020, the Court issued a Memorandum Opinion & Order adopting the Magistrate Judge's Report & Recommendation in all respects.  (Doc. No. 155.)  Thus, by virtue of this decision, Defendants Cuyahoga County and the City of Cleveland were dismissed from the

instant action.  (*Id*. at p. 25.)  Bickerstaff's malicious prosecution, civil conspiracy, abuse of process, and infliction of emotional distress claims remained pending against Defendant Cleveland Police Officers McCandless, Goshen, Nuti, and McKenzie.  (*Id*. at pp. 25-26.)

### B.     Summary Judgment Motion and Report & Recommendation

After multiple extensions of the discovery and dispositive motion deadlines,[12] the Officer Defendants filed a Motion for Summary Judgment on January 13, 2022 with respect to Bickerstaff's remaining claims.  (Doc. No. 187.)  Bickerstaff filed a Brief in Opposition on February 18, 2022, to which the Officer Defendants replied on February 25, 2022.  (Doc. Nos. 192, 195.)  Bickerstaff thereafter filed a Sur-Reply on March 7, 2022.[13] (Doc. Nos. 196.)

On April 26, 2022, the Magistrate Judge issued a Report & Recommendation in which he recommended that the Officer Defendants' summary judgment motion be granted in part and denied in part, as follows.  (Doc. No. 207.)  The Magistrate Judge recommended that summary judgment be granted in favor of (1) Officers Goshen, Nuti, and McKenzie with respect to all of Bickerstaff's remaining claims; and (2) Officer McCandless with respect to Bickerstaff's civil conspiracy, abuse

---

[12] The non-expert discovery deadline was initially set for January 22, 2021.  (Doc. No. 158.)  The docket reflects that this deadline was extended five times, until November 12, 2021.  *See* Doc. Nos. 164, 171, 173, Non-Document Minute Orders dated September 29, 2021 and October 12, 2021.  In addition, the deadline for completing Bickerstaff's deposition was further extended until January 3, 2022.  *See* Non-Document Minute Order dated December 6, 2021.

[13] Subsequently, on March 14, 2022, Bickerstaff filed a Motion to Compel the Officer Defendants to produce the video exhibits manually filed with the Court.  (Doc. No. 197.)  On March 21, 2022, Bickerstaff filed a Notice to take the depositions of Officers McCandless, Goshen, and Nuti.  (Doc. No. 201.)  The Officer Defendants then filed a Motion to Strike the Notice of Deposition on numerous grounds, including that the discovery deadline had expired in November 2021.  (Doc. No. 202.)  Several weeks later, on April 11, 2022, Bickerstaff filed a Motion to Secure an Expert for Video Validation.  (Doc. No. 205.)  The Magistrate Judge subsequently issued Orders (1) denying Bickerstaff's Motion to Compel (Doc. No. 208); (2) granting the Officer Defendants' Motion to Strike (Doc. No. 209); and (3) denying Bickerstaff's Motion to Secure an Expert (Doc. No. 210.)  Neither party filed Objections to any of these Orders.

of process, and intentional infliction of emotional distress claims.[14]  (*Id.*)  However, the Magistrate Judge recommended that summary judgment be denied with respect to Bickerstaff's malicious prosecution claim against Officer McCandless.  (*Id.*)  Specifically, the Magistrate Judge found that Bickerstaff would "potentially be able to establish a constitutional violation based on Officer McCandless' alleged misrepresentation of what happened during the traffic stop at her trial."  (*Id.* at pp. 32-33.)  The Magistrate Judge further found that "a reasonable trier of fact could conclude that Officer McCandless deliberately or recklessly omitted exculpatory information or gave erroneous information to the prosecution without with Bickerstaff would not have been prosecuted" and that the "right violated was clearly established."  (*Id.* at p. 35.)  He therefore recommended that the Court find that Officer McCandless was not entitled to qualified immunity with respect to certain aspects (discussed in more detail below) of Bickerstaff's federal malicious prosecution claim.  (*Id.*)

On May 10, 2022, Officer McCandless filed an Objection. (Doc. No. 212.)  Bickerstaff did not file an Objection.  However, on May 10, 2022, Bickerstaff filed a Response to Officer McCandless's Objection in which she states that "the city's response/objection adds nothing of substance whatsoever" and asserts that "the Magistrate's decision is supported by the facts and the law and should be adopted by the court."  (Doc. No. 213.)

## III.   Standard of Review

### A.     On Objections

---

[14] The Magistrate Judge also found that Bickerstaff "did not seek and was not given leave to amend" her Complaint to assert § 1983 claims for false imprisonment and unlawful arrest against the Officer Defendants.  (*Id.* at p. 18.)  Thus, he recommended that the Court find that those claims (as set forth in the Amended Complaint) were of no legal effect and are not pending before the Court.  (*Id.*)  Bickerstaff has not raised any objection to this finding.  Accordingly, and in the absence of any objection, the Court agrees with the Magistrate Judge and finds that Bickerstaff's false imprisonment and unlawful arrest claims were improperly reasserted in the Amended Complaint and are not pending before this Court.

Pursuant to Fed. R. Civ. P. 72(b)(3) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any finding or recommendation of a Magistrate Judge's Report and Recommendation to which specific objection is made.  As explained in this Court's Local Rules, the district judge:

> shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

Local Rule 72.3(b).  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *United States v. Walters,* 638 F.2d 947, 949-950 (6th Cir. 1981)).  *See also Pryor v. Erdos*, 2021 WL 4245038 at * 5 (N.D. Ohio Sept. 17, 2021).

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. 72(b)(3), Advisory Committee Notes. *See also Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")

### B.  Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir.

15

2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).   In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 Fed. Appx 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 Fed. Appx at 508-09.  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp.3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

16

There is an "added wrinkle" where, as here, there is video evidence.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).  As the Sixth Circuit has explained, "[t]o the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos."  *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Harris*, 550 U.S. at 380).  However, "[t]o the extent that facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party."  *Id. See also Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015).

## IV.    Claims against Officers Goshen, Nuti and McKenzie

As noted above, the Magistrate Judge recommends that summary judgment be granted in favor of Officers Goshen, Nuti, and McKenzie with respect to Bickerstaff's malicious prosecution, civil conspiracy, abuse of process, and intentional infliction of emotional distress claims.  (Doc. No. 207.)  Bickerstaff did not file an Objection.

This Court, having reviewed the Report & Recommendation and finding no clear error, accepts the Magistrate Judge's recommendation that summary judgment be granted in favor of Officers Goshen, Nuti and McKenzie with respect to Bickerstaff's malicious prosecution, civil conspiracy, abuse of process, and intentional infliction of emotional distress claims.  Accordingly, Defendant Officers Goshen, Nuti, and McKenzie's Motion for Summary Judgment (Doc. No. 187) is granted with respect to these claims.

## V.     Claims against Officer McCandless

### A.     Civil Conspiracy, Abuse of Process, and IIED Claims

The Magistrate Judge also recommends that summary judgment be granted in Officer McCandless' favor with respect to Bickerstaff's civil conspiracy, abuse of process, and intentional infliction of emotional distress claims. (Doc. No. 207.) Bickerstaff did not file an Objection.

This Court, having reviewed the Report & Recommendation and finding no clear error, accepts the Magistrate Judge's recommendation that summary judgment be granted in favor of Officer McCandless with respect to Bickerstaff's civil conspiracy, abuse of process, and intentional infliction of emotional distress claims. Accordingly, Defendant Officer McCandless' Motion for Summary Judgment (Doc. No. 187) is granted with respect to these claims.

### B. Malicious Prosecution Claim—Qualified Immunity

The Magistrate Judge recommends that Officer McCandless' Motion for Summary Judgment be denied with respect to Bickerstaff's malicious prosecution claim under 42 U.S.C. § 1983. (Doc. No. 207.) Officer McCandless objects to this finding on numerous grounds. (Doc. No. 212.)

To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Here, there is no dispute that Officer McCandless acted under color of state law. As such, the only remaining question is whether Bickerstaff was deprived of a right secured by the Constitution or the laws of the United States.

However, "[p]olice officers are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015). To determine whether an officer is entitled to qualified immunity, courts "apply a well-established two-prong test: (1) whether the facts, when

18

taken in the light most favorable to the party asserting the injury, show the officer's conduct violated

a constitutional right; and (2) whether the right violated was clearly established such that a reasonable

official would understand that what he is doing violates that right." *Id*. These steps may be addressed

in any order, and the defendant officer need only prevail on one of them to be granted qualified

immunity. *See Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019); *Maben v. Thelen*, 887 F.3d 252,

269 (6th Cir. 2018).

With regard to the second step, "clearly established" means that the law is so clear at the time

of the incident that every reasonable officer would understand the unlawfulness of his conduct.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  As the Supreme Court recently explained:

> To be clearly established, a legal principle must have a sufficiently clear foundation
> in then-existing precedent.  The rule must be "settled law," *Hunter v. Bryant*, 502 U.S.
> 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam* ), which means it is
> dictated by "controlling authority" or "a robust 'consensus of cases of persuasive
> authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*,
> 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).  It is not enough that the
> rule is suggested by then-existing precedent.  The precedent must be clear enough that
> every reasonable official would interpret it to establish the particular rule the plaintiff
> seeks to apply.  *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088.  Otherwise, the rule is
> not one that "every reasonable official" would know.  *Id.*, at 664, 132 S.Ct. 2088
> (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit
> the officer's conduct in the particular circumstances before him.  The rule's contours
> must be so well defined that it is "clear to a reasonable officer that his conduct was
> unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct.
> 2151, 150 L.Ed.2d 272 (2001).  This requires a high "degree of specificity." *Mullenix
> v. Luna*, 577 U.S. ----, ----, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (*per curiam* ).
> We have repeatedly stressed that courts must not "define clearly established law at a
> high level of generality, since doing so avoids the crucial question whether the official
> acted reasonably in the particular circumstances that he or she faced." *Plumhoff,
> supra*, at 2023 (internal quotation marks and citation omitted).  A rule is too general
> if the unlawfulness of the officer's conduct "does not follow immediately from the
> conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct.
> 3034.

19

*Id.* at 589-90. Thus, in evaluating whether a constitutional right was clearly established for purposes of qualified immunity, courts "must examine the *particular* situation that [the defendant officers] confronted and ask whether the law clearly established that their conduct was unlawful." *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020).

### 1. Bickerstaff's Claim, the Parties' Arguments, and the R&R

In Count I of the Amended Complaint, Bickerstaff alleges that "McCandless fabricated a report and provided the information to supervisors and they filed the criminal complaint against Plaintiff even though they knew the allegations were false and without probable cause." (Doc. No. 101 at ¶ 30.) She further alleges that "the criminal proceeding was initiated without probable cause because the stop was unconstitutional, not all the evidence on which the charges were based were presented to the grand jury, and no additional evidence was ever present[ed] to support these charges." (*Id.* at ¶ 32.) Bickerstaff claims that Officer McCandless acted maliciously because he "initiated the charges in retaliation and to harass and demean the plaintiff in order to have her […] silenced, due to the fact that she is a private investigator which violates her first amendment rights." (*Id.* at ¶ 33.) Lastly, Bickerstaff alleges that her Fourteenth Amendment[15] rights were violated

---

[15] The Magistrate Judge and the parties treat Count I as asserting a malicious prosecution claim under the Fourth (as opposed to the Fourteenth) Amendment. A careful review of the Amended Complaint, however, reveals that Bickerstaff only asserted this claim under the Fourteenth Amendment. (Doc. No. 101 at ¶¶ 27-34.) The Sixth Circuit has found that constitutional claims for malicious prosecution must be asserted under the Fourth Amendment. *See Jackson v. City of Cleveland*, 925 F.3d 793, fn 14 (6th Cir. 2019) (noting that, although this Circuit previously analyzed malicious prosecution claims under the Fourteenth Amendment rather than the Fourth Amendment, "we ceased doing so after the Supreme Court held in *Albright v. Oliver*, 510 U.S. 266, 271, 273–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) that malicious-prosecution claims must be asserted under the Fourth Amendment rather than the Fourteenth.") *See also Lester v. Roberts*, 986 F.3d 599 (6th Cir. 2021); *Pinkney v. Berrien County, Michigan*, 2022 WL 3572978 at * 3-4 (6th Cir. Aug. 19, 2022). Given Bickerstaff's *pro se* status, and the fact that none of the parties raise this issue, the Court will construe Bickerstaff's federal malicious prosecution claim as arising under the Fourth Amendment for purposes of this Opinion.

"because the officers involved did not present the true and accurate evidence to make sure the plaintiff had a true and impartial information."  (*Id*. at ¶ 34.)

In his Motion for Summary Judgment, Officer McCandless argues that he is entitled to qualified immunity with respect to Bickerstaff's malicious prosecution claim and that this claim "otherwise fails because of the existence of probable cause."  (Doc. No. 187 at pp. 12-15, 17-18.) Bickerstaff opposed the Motion.  (Doc. No. 192.)  The entirety of her argument with respect to this Defendant is as follows:

> The defendant[] writes an affidavit[] with the assistance of their attorney. Officer Daniel McCandless (on page 4) he never met the plaintiff prior to the traffic; he has misrepresented the truth on his sworn affidavit. *See* the trial transcripts for the criminal case (15-601122) Ex-A pgs. 78-89 during his testimony many of his answers were, "I don't recall," or I believe. The plaintiff/s attorney (Mr. Drucker) asks officer McCandless "you said that she was covering up the weapon, right? Officer McCandless replies did "I believe so, yes." (Mr. Drucker) "but you didn't actually see her do that, did you? Officer McCandless says," Did I actually see her put the stuff over it, no."
>
> Officer McCandless became so reckless with his behavior towards the plaintiff. He fabricated that the Plaintiff not only had a weapon the license was revoked. (*See*-Ex-B) The defendant's attorney asks the plaintiff during her deposition dated (January 3rd 2022). "Did the plaintiff ever own a CCW license? Answer no, never ever? *** Officer McCandless was reckless in his capacity of his duty and he did that intentionally to inflict harm on the Plaintiff. Officer McCandless is not protected under qualified immunity because constitutional violations were involved, when he conducted the traffic stop.  It was out of malice, he knew who the plaintiff was before he pulled the plaintiff over.  He confirmed the identity of the plaintiff[] during her criminal proceeding before he conducted the traffic stop. Officer McCandless was the cause of the malicious prosecution. . .

(*Id*. at pp. 3-4) (reproduced as in original).[16]  Defendant McCandless filed a Reply Brief, in which he argues that Bickerstaff "did not present any evidentiary material upon which a trier of fact could

---

[16] Bickerstaff's Brief in Opposition is supported by (1) excerpts from Officer McCandless' trial testimony; (2) a January 5, 2016 email from the Public Records Manager of the Cuyahoga County Sheriff's Department stating that there is no CCW license issued under the name Brenda Bickerstaff; (3) excerpts from Officer Goshen's trial testimony; (4) excerpts

reasonably find in her favor on any of her remaining claims."  (Doc. No. 195 at p. 1.)  Bickerstaff

then filed a Sur-Reply, in which she insists that Defendant McCandless is a "liar and a manipulator"

and argues that he falsely stated that her headlights were off, that she had once had a CCW permit

but it was revoked, and that he did not know her prior to the traffic stop.  (Doc. No. 196.)

In the Report & Recommendation, the Magistrate Judge first delineated the aspects of

Bickerstaff's malicious prosecution claim against Officer McCandless on which she would *not* be

able to establish a constitutional violation.  (Doc. No. 207 at p. 30.)  Specifically, the Magistrate Judge

determined that Bickerstaff's malicious prosecution claim is not cognizable to the extent it pertains

to Officer McCandless' institution of charges in traffic court because Bickerstaff entered a no-contest

plea in that proceeding and the charge for driving without headlights was dismissed.  (*Id*.)  He then

found that Bickerstaff "cannot establish a constitutional violation with respect to her traffic stop and

detention" because the state trial court expressly determined that there was probable cause for the

stop and detention and, therefore, she is precluded from relitigating that issue now.  (*Id*. at pp. 30-

31.)

The Magistrate Judge next found that Bickerstaff is "unable to establish a constitutional

violation with respect to Officer McCandless' fabrication of a report that was then relied upon to

institute felony charges."  (*Id*. at p. 32.)  He explained that, although Bickerstaff alleged that Officer

McCandless prepared a false report, "there is no Rule 56 evidence before the court regarding the

---

from Bickerstaff's deposition; (5) the Declarations of Officers McCandless, Goshen and Nuti; and (6) various letters from
the City of Cleveland's Department of Public Safety to Officer Goshen. (Doc. Nos. 192-1 through 192-11.)  The Officer
Defendants objected to the admissibility of the letters to Officer Goshen as irrelevant.  (Doc. No. 195 at fn 3.)  The
Magistrate Judge agreed that the letters are irrelevant and declined to consider them.  (Doc. No. 207 at p. 7, fn 7.)
Bickerstaff does not object to this finding.  Therefore, in the absence of any objection and finding no clear error, the Court
will not consider these letters herein.

existence or content of any report prepared by Officer McCandless." (*Id*.) Moreover, he found that Bickerstaff's own testimony "is insufficient because she has not established her personal knowledge of the report." (*Id*.) The Magistrate Judge, therefore, concluded that Bickerstaff "has not established that a genuine dispute of material fact exists as to whether Officer McCandless prepared a false report upon which her felony charges were brought." (*Id*.) Lastly, the Magistrate Judge concluded that Bickerstaff "is also unable to establish a constitutional violation based on Officer McCandless' testimony that she had a CCW permit." (*Id*.)

Bickerstaff has not objected to any of the above findings and recommendations. This Court, having reviewed the Report & Recommendation and finding no clear error, accepts the Magistrate Judge's recommendations (as set forth above) regarding the specific aspects of Bickerstaff's malicious prosecution claim upon which she cannot proceed.

The Magistrate Judge next found that Officer McCandless was not entitled to qualified immunity with respect to the following aspects of Bickerstaff's malicious prosecution claim:

> I find that Bickerstaff would, however, potentially be able to establish a constitutional violation based on Officer McCandless's alleged misrepresentation of what happened during the traffic stop at her trial. *See Moldowan v. City of Warren*, 578 F.3d 351, 378-79 (6th Cir. 2009) (stating that a police officer can violate a criminal defendant's due process rights by withholding or suppressing exculpatory material in the course of his investigation); *State v. Brown*, 2017-Ohio-7701, ¶ 39 (Ohio Ct. App. 2017) (same). Specifically, Bickerstaff challenges the veracity of Officer McCandless's statement that he saw her covering the rifle bag and withheld exculpatory evidence. ECF Doc. 191-1 at 40; ECF Doc. 192 at 3; ECF Doc. 196 at 4. From the available record, the tampering-with-evidence charge is premised upon Officer McCandless's purported observation that the rifle bag was initially uncovered, that Bickerstaff reached toward the back seat, and that the rifle bag was observed to be covered afterwards. ECF Doc. 192-1 at 4. But the video evidence does not necessarily corroborate Officer McCandless's account, because the video does not depict the condition of the rifle bag in the back seat prior to Officer McCandless's accusation. *See* Video File A1 at 01:15. Therefore, **a genuine issue of material fact exists as to whether the rifle bag was uncovered initially and whether Officer McCandless saw Bickerstaff cover the rifle bag. By extension, there would be a genuine dispute of material fact as to**

23

**whether an ordinarily prudent person could conclude whether Bickerstaff concealed the rifle bag with the purpose of impairing an investigation.** *See Mott*, 524 F. App'x at 186; *State v. Straley*, 139 Ohio St.3d 339, 342 (Ohio 2014).

There is also a genuine dispute of material fact as to Bickerstaff's firearm-related offenses. **If Officer McCandless never conveyed to Prosecutor Obed Bickerstaff's claimed lack of knowledge of the rifle bag, Bickerstaff's explanation of why she reached into the back seat, and her son's presence at the scene corroborating her account, there would be a genuine issue of material fact as to whether evidence existed to support her firearm-related offenses.** ***King*, 852 F.3d at 587. Specifically, there would be a genuine issue of material fact as to whether Bickerstaff *knowingly* concealed ready at hand a deadly weapon and as to whether she *knowingly* had a firearm while being under disability.** *See Mott*, 524 F. App'x at 186; Ohio Rev. Code §§ 2923.12(A)(1); 2923.13(A)(2). Therefore, there is a genuine dispute of material fact as to whether Officer McCandless violated Bickerstaff's Fourth Amendment rights via malicious prosecution.

(*Id.* at pp. 32-34) (bold added, italics in original). The Magistrate Judge went on to find that the

constitutional violation was clearly established, explaining as follows:

The appropriate examination of whether a clearly established right was violated is context-specific. *See Beck v. Hamblen Cnty.*, 969 F.3d 592, 599-600 (6th Cir. 2020). The Fourth Amendment protection against malicious prosecution is violated only when the defendant's "deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F. 769, 772 (6th Cir. 2014). This requires a degree of blameworthiness on the part of the defendant "beyond mere negligence or innocent mistake." *Johnson v. Mosely*, 790 F.3d 649, 654 (6th Cir. 2015).

**Bickerstaff has established a genuine dispute of material fact as to whether Officer McCandless's alleged omissions were deliberate or reckless, resulting in a clear violation of Bickerstaff's Fourth Amendment rights.** There is no dispute that sometime prior to her arrest, Bickerstaff had filed a complaint against Officer McCandless. ECF Doc. 191-1 at 40-41. Officer McCandless stated during the traffic stop that he knew Bickerstaff by way of reputation. Video File A3 at 18:25-18:35. Officer McCandless testified that he was aware of "talk of the district" about Bickerstaff, had run her license plate information before, and had unexplained knowledge of her felony status even before her arrest. ECF Doc. 192-1 at 9-11. And as discussed above, **a reasonable jury could conclude that an evidentiary basis did not exist for Bickerstaff's felony charges without Officer McCandless's alleged omissions or falsehoods.  Thus, a reasonable trier of fact could conclude that Officer McCandless deliberately or recklessly omitted exculpatory information or gave erroneous information to the prosecution without which Bickerstaff**

24

> **would not have been prosecuted.** *See Coffey v. Carroll*,933 F.3d 577, 591 (6th Cir. 2019). Thus, I find that he is not shielded by qualified immunity.
>
> Because Bickerstaff has adduced sufficient Rule 56 evidence to establish that a constitutional violation was committed by Officer McCandless and because the right violated was clearly established, I recommend that summary judgment be denied on Bickerstaff's malicious prosecution claim against Officer McCandless.

(*Id*. at pp. 34-35) (emphasis added).

In his Objection, Officer McCandless argues that this Court should reject the above findings. (Doc. No. 212.)  He maintains that Bickerstaff did not present any evidence that creates a genuine issue of material fact that there was a constitutional violation and, further, that the cases cited in the Report & Recommendation do not provide the specificity required for the clearly established prong to overcome qualified immunity.  (*Id*.)  Officer McCandless further asserts that, even if he did not have qualified immunity, Bickerstaff failed to present evidence for all the required elements of a § 1983 malicious prosecution claim. (*Id*.) Lastly, Officer McCandless argues that, to the extent Bickerstaff's claim relies on his trial testimony, it its barred by the doctrine of absolute immunity. (*Id*.)

Bickerstaff's response, in its entirety, is as follows: "The city's response/objection adds nothing of substance whatsoever.  The Magistrate's decision is supported by the facts and the law and should be adopted by the Court."  (Doc. No. 213.)

For the following reasons, the Court respectfully disagrees with the Magistrate Judge and finds that Bickerstaff has failed to come forward with sufficient evidence to create a genuine issue of material fact that Officer McCandless violated her constitutional rights.  The Court therefore finds that Officer McCandless is entitled to qualified immunity with respect to this claim, as set forth below.

### 2.      Violation of a Constitutional Right

Under federal law, a plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was resolved in the plaintiff's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).  *See also Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021).  "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."  *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017).  However, "the § 1983 version of 'malicious prosecution' is not limited to the institution of proceedings; it can also support a claim for 'continued detention without probable cause.'"  *Id.* (citation omitted).

### a.      Made, Influenced or Participated in Decision to Prosecute

Officer McCandless argues that Bickerstaff has failed to come forward with any evidence to satisfy the first element of a malicious prosecution claim, i.e., that he made, influenced, or participated in the decision to prosecute Bickerstaff with respect to the felony charges arising from the November 11, 2015 incident.  (Doc. No. 212 at pp. 8, 15, 20-21.)  The Court agrees.

The first element of a malicious prosecution claim "is met when an officer 'could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty' and the misconduct actually does so."  *Jackson*, 925 F.3d at 820 (quoting *Sykes*, 625 F.3d at 316).  "This element is met when an officer includes 'misstatements and falsehoods in his investigatory materials' and those materials influence a prosecutor's decision to bring charges.'"  *Id.* (quoting *Sykes*, 625 F.3d at 316.)  "'To be liable for participating in the decision to prosecute, the

26

officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating.'" *Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493-494 (6th Cir. 2020) (quoting *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)). "[M]erely filing an allegedly misleading case report, without more active participation, qualifies only as 'passive or neutral' participation and is thus an insufficient basis for a malicious prosecution claim." *Richards*, 818 Fed. Appx. at 493-494. *See also Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002). "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 626 F.3d at fn 9 (citing *Malley v. Briggs*, 475 U.S. 335, 344-345 n. 7 (1986)). "The totality of the circumstances informs this fact determination." *Id*.

Here, the Court finds that there is no genuine issue of material fact that Officer McCandless did not make, influence, or participate in the decision to prosecute Bickerstaff with respect to the felony charges stemming from the November 11, 2015 traffic stop. As noted above, the Magistrate Judge expressly found that Bickerstaff "has not established a genuine issue of material fact as to whether Officer McCandless prepared a false report upon which her felony charges were brought" because "there is no Rule 56 evidence before the court regarding the existence or content of any report prepared by Officer McCandless." (Doc. No. 207 at p. 32.) Bickerstaff did not object to the Magistrate Judge's factual finding and/or legal conclusion with respect to this issue.

Upon review of the record, the Court finds no clear error and, in fact, affirmatively agrees with the Magistrate Judge that Bickerstaff has not submitted any Rule 56 evidence that Officer McCandless made any false or misleading statements or omissions in a police report relating to this incident. Notably, Bickerstaff has not produced or directed this Court's attention to any police report

27

allegedly prepared by Officer McCandless and she did not depose Officer McCandless regarding either the existence or content of any such report. In sum, Bickerstaff has not come forward with any evidence whatsoever either that Officer McCandless prepared a police report regarding the November 11, 2015 incident or that any such report contained false or misleading statements.

Nor has Bickerstaff come forward with any Rule 56 evidence that Officer McCandless met with and/or spoke to prosecutors prior to the institution of felony charges stemming from the November 11, 2015 incident. Detective Nuti avers that he was assigned to investigate Bickerstaff's arrest and that he "consulted with a prosecutor," after which "a grand jury packet was completed." (Nuti Decl. (Doc. No. 187-3) at ¶ 3.) The Magistrate Judge expressly found that "there is no Rule 56 evidence before the court that Officer McCandless ever met with Detective Nuti as part of Detective Nuti's investigation." (Doc. No. 207 at p. 36.) Bickerstaff did not object to this finding. Upon review of the record, the Court finds no clear error and, in fact, agrees with the Magistrate Judge that Bickerstaff has not submitted any Rule 56 evidence that Officer McCandless met with Detective Nuti as part of Detective Nuti's investigation.

Moreover, even assuming *arguendo* that Detective Nuti did obtain information from Officer McCandless regarding the November 11, 2015 incident and conveyed such information to the prosecutor, Bickerstaff has not directed this Court's attention to any Rule 56 evidence that Officer McCandless provided false or misleading information to Detective Nuti. While Bickerstaff alleges generally that the Officers involved in her arrest and prosecution met and conspired against her, she has not directed this Court's attention to any evidence that such a meeting actually occurred or what was said by whom. Bickerstaff's unsupported speculation that Officer McCandless provided false and/or misleading information to Detective Nuti which was then relayed to the prosecutor, is

28

insufficient to create a genuine issue of material fact with respect to this issue. Lastly, there is no evidence that Officer McCandless made deliberately false or misleading statements in testimony before the grand jury and/or during a preliminary hearing relating to this incident. Indeed, to the contrary, Officer McCandless avers that he only testified at the suppression hearing and at Bickerstaff's bench trial, both of which occurred after the decision to prosecute Bickerstaff had already been made. (McCandless Decl. (Doc. No. 187-1) at ¶ 16.)

The Magistrate Judge suggests that Bickerstaff may be able to show that Officer McCandless influenced or participated in the decision to prosecute by virtue of his allegedly false statements during the traffic stop (which were captured on video) that the rifle bag was initially in plain view when the Officers first approached Bickerstaff's vehicle and that Bickerstaff subsequently concealed the rifle bag. (Doc. No. 207 at p. 33.) As noted above, these allegations led to Bickerstaff's felony tampering with evidence charge.[17]

The Court respectfully disagrees with the Magistrate Judge. As an initial matter, Bickerstaff does not argue (either in her Brief in Opposition to Defendants' summary judgment motion, her Sur-Reply, or her Response to Officer McCandless' Objection) that Officer McCandless lied when he stated that the rifle bag was in plain view when he and Officer McKinney first approached the vehicle. Nor has she directed this Court's attention to any Rule 56 evidence that the rifle bag was not, in fact, in plain view when Officers McCandless and McKinney initially approached her vehicle. During her

---

[17] Bickerstaff states that she was charged with tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1). That statute provides that "No person, knowing that an official proceeding or investigation is in progress, or is about to be or is likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Ohio Rev. Code § 2921.12(A)(1). *See also State v. Straley*, 139 Ohio St.3d 339, syllabus (2014) ("A conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding.")

deposition, Bickerstaff was asked about the moment she first discovered that the rifle bag was in the back seat.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 48-49.)  She testified that, after Officers McCandless and McKinney returned to the patrol car with her driver's license and proof of insurance, she reached into the back seat to get a bag that contained her recording device.  (*Id*.)  Bickerstaff explained that she "reached back to get my bag, and that is when I hit something hard, **and I looked, and I noticed that the weapon was there**, and I contacted my son immediately."  (*Id*. at Tr. 49.) She did not testify that the rifle bag was underneath anything or that she had to move anything to see it or otherwise confirm that it was in, fact, a rifle bag.  Rather, she simply testified that she "looked" and "noticed that the weapon was there."  (*Id*.)  Later in her deposition, Bickerstaff was specifically asked about the moment when Officer McCandless returned to her vehicle and stated that the rifle bag was "clearly visible" in the back seat when he had first approached.  (*Id*. at Tr. 50-51.)  Bickerstaff did not dispute this during the deposition, responding simply "Okay."  (*Id*. at Tr. 51.)  In sum, Bickerstaff does not direct this Court's attention to any evidence (either in her deposition, her affidavit, or otherwise) that the rifle bag was not "clearly visible" when Officer McCandless first approached her vehicle.

Officer McCandless, on the other hand, specifically avers that, when he first approached Bickerstaff's vehicle, he looked in the back seat with his flashlight and saw that a rifle bag was "in plain sight."  (McCandless Decl. (Doc. No. 187-1) at ¶ 7, 9.)  Moreover, as Defendants correctly note, the state trial court expressly determined, during the suppression hearing, that the plain view doctrine applied, thus at least implicitly determining that the rifle bag was in plain view when the Officers initially approached the vehicle.  (Doc. No. 195-1 at PageID# 1681.)

The Magistrate Judge also suggests that Bickerstaff may be able to show that Officer McCandless influenced or participated in the decision to prosecute by virtue of his allegedly false statements at trial[18] that Bickerstaff intentionally concealed the rifle bag.  (Doc. No. 207 at p. 32-33.)  Again, the Court disagrees.  The Court does not have a full and complete copy of Officer McCandless' trial testimony.  However, Bickerstaff does attach excerpts of Officer McCandless' trial testimony to her Brief in Opposition to Defendants' Motion for Summary Judgment.  (Doc. No. 192-1.)  Therein, Officer McCandless acknowledged during cross-examination that he did not, in fact, see Bickerstaff cover up the rifle bag:

> Q:     When you say you saw her hide it, you're assuming that what you witnessed when you were – what you testified about when you were in your car, the movement you said that she was covering up the weapon, right?
>
> A:     I believe so, yes.
>
> Q:     But you didn't actually see her do that, did you?
>
> A:     Did I actually see her put stuff over it, no.

(*Id*. at PageID# 1616.)  Thus, Officer McCandless did not testify at trial that he saw Bickerstaff intentionally conceal the rifle bag.  Rather, he acknowledged that he assumed that is what she was doing in light of the fact that (1) the rifle bag was initially in plain view; (2) he then saw Bickerstaff reach into the back seat; and (3) the rifle bag was then concealed when the Officers returned to the vehicle.  (*Id*.)

---

[18] The Sixth Circuit has held that "[t]estifying at trial can never be the basis of a malicious prosecution claim, as 'a trial witness has absolute immunity with respect to any claim based on the witness' testimony.'"  *Richards*, 818 Fed. Appx. at 493 (quoting *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012)).  On the other hand, in another recent case, the Sixth Circuit held that "a plaintiff can also show that an officer 'participated' [in a prosecution] by alleging that an officer deliberately or recklessly gave false testimony at trial."  *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022).  The Court need not resolve whether Officer McCandless has absolute immunity for his trial testimony.  As discussed *infra*, Bickerstaff has not come forward with sufficient Rule 56 evidence that Officer McCandless did, in fact, deliberately give false testimony at trial.

As noted above, Bickerstaff has not argued or directed this Court's attention to any evidence that the rifle bag was not initially in plain view when Officers McCandless and McKinney first approached her vehicle. She does not dispute the fact that she reached into the back seat after the Officers had returned to the patrol car. (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 49.) Finally, Bickerstaff can clearly be heard on the video footage disputing Officer McCandless' accusation that she concealed the rifle bag. (Video File A3 at 1:00 to 1:24.) Notably, Bickerstaff has not presented any evidence that the prosecutor was not provided copies of the Officers' body cam footage.

Accordingly, and for all the reasons set forth above, the Court finds that Bickerstaff has failed to come forward with evidence creating a genuine issue of material fact that Officer McCandless made, influenced, or participated in the decision to prosecute her for the felony charges arising from the November 11, 2015 incident.

### b. Probable Cause

The Court further finds that Bickerstaff has failed to come forward with evidence creating a genuine issue of material regarding the second element of a federal malicious prosecution claim, i.e., the existence of probable cause. "'Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Sykes*, 625 F.3d at 306 (quoting *U.S. v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). *See also Howse*, 953 F.3d at 408 ("Probable cause exists when there are enough 'facts and circumstances' to make a reasonable person believe that 'the accused was guilty of the crime charged.'") (quoting *Webb*, 789 F.3d at 660). A grand jury's finding creates a presumption of probable cause in later proceedings under § 1983. *Lester,* 986 F.3d at 608. A plaintiff may overcome this presumption "if the defendant 'fabricates

evidence or knowingly or recklessly makes materially false statements outside the grand jury context.'" *Id.* (quoting *King v. Harwood*, 852 F.3d 568, 587-588 (6th Cir. 2017)).

Here, Bickerstaff states that the grand jury issued an indictment charging her with having weapons under disability (Ohio Rev. Code § 2923.13(A)(2)); carrying a concealed weapon (Ohio Rev. Code § 2923.12(A)(1)); and tampering with evidence (Ohio Rev. Code § 2921.12(A)(1)). (Bickerstaff Aff.  (Doc. No. 101-1) at ¶ 2. PageID# 761.)  Thus, the presumption of probable cause is triggered and can only be overcome if Bickerstaff comes forward with sufficient evidence to create a genuine issue of material fact that Officer McCandless fabricated evidence or knowingly or recklessly made materially false statements outside the grand jury context.  *See Lester,* 986 F.3d at 608; *King*, 852 F.3d at 587-588.

With regard to Bickerstaff's weapons-related offenses, the Magistrate Judge suggests that the presumption of probable cause could be overcome "[i]f Officer McCandless never conveyed to Prosecutor Obed Bickerstaff's claimed lack of knowledge of the rifle bag, Bickerstaff's explanation of why she reached into the back seat, and her son's presence at the scene corroborating her account." (Doc. No. 207 at p. 33.)  The Court respectfully disagrees.

As an initial matter, Bickerstaff has failed to come forward with any Rule 56 evidence that Officer McCandless did, in fact, fail to convey this information to either the prosecutor or Detective Nuti.  As discussed above, Bickerstaff has not directed this Court's attention to any evidence that Officer McCandless prepared a false police report and/or spoke with the prosecutor or Detective Nuti regarding the November 11, 2015 traffic stop.  Moreover, the Court notes that the specific information cited by the Magistrate Judge (i.e., Bickerstaff's alleged lack of knowledge of the rifle bag, her explanation for reaching into the back seat, and the presence of Edward at the scene) is clearly

33

ascertainable from Officer McCandless' and Officer McKinney's body cam footage.  As discussed at length above, Bickerstaff can clearly be heard on the video recording stating that she did not know that the rifle bag and weapon were in the vehicle; that the rifle bag and weapon belonged to her son; and that she was reaching into the back seat only to get her recording device.  (Video File A3 at 1:00 to 1:51.)  She can also be heard stating that her son had arrived at the scene.  (*Id*. at 20:00.)  Bickerstaff has not argued nor directed this Court's attention to any evidence that the Officers' body cam footage was improperly withheld from or otherwise not provided to the prosecutor.

The Magistrate Judge also suggests that the presumption of probable cause could be overcome by evidence that Officer McCandless mispresented that the rifle bag was initially uncovered when he and Officer McKinney first approached the vehicle, and that he subsequently saw Bickerstaff conceal the rifle bag.  As discussed at length above, however, Bickerstaff has not argued (or directed this Court's attention to any evidence) that the rifle bag was not clearly visible when the Officers first approached her vehicle.  Nor has she shown that Officer McCandless testified at trial that he subsequently saw Bickerstaff conceal the bag.

However, even assuming *arguendo* that Bickerstaff could overcome the presumption of probable cause with respect to the tampering with evidence charge, the Court finds that Officer McCandless would nonetheless be entitled to qualified immunity.  The Sixth Circuit has held that, when a person faces multiple charges, probable cause as to any *one* charge will defeat a claim for malicious prosecution as to *any* related charge for which he is prosecuted.  *See Howse*, 953 F.3d at 408-409 (where plaintiff was indicted on two counts of assault along with one count of obstruction of official business, finding that "because there was probable cause for [obstruction], Howse cannot move forward with any of his malicious-prosecution claims" as to any of the charges).  *See also*

34

*Peterson v. Smith*, 2021 WL 1556863 at * 9 - 13 (E.D. Mich. Feb. 1, 2021) *report and recommendation adopted by* 2021 WL 822496 (E.D. Mich. March 4, 2021).

Here, the Court finds that there is no genuine issue of material fact that the State had probable cause to prosecute Bickerstaff for the charge of having weapons under disability.  That charge was brought under Ohio Rev. Code § 2923.13(A)(2), which provides that: "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply:  ** (2) The person is under indictment for or has been convicted of any felony offense of violence …" Ohio Rev. Code § 2923.13(A)(2).  "In order to 'have' a weapon within the meaning of R.C. 2923.13(A), one must either actually or constructively possess it."  *State v. Ellis*, 152 N.E.3d 1255, 1263 (Ohio App. 8th Dist. 2020).  As one Ohio appellate court has explained:

> Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. [M]ere access to the weapon can establish guilt, that is, ownership is not a prerequisite to determining whether someone had the weapon. Moreover, circumstantial evidence can be used to support a finding of constructive possession." (Internal citations and quotations omitted.)

*State v. Bartee*, 2010 WL 4970900 at * 2 (Ohio App. 9th Dist. Dec. 8, 2010).  *See also Ellis*, 152 N.E.3d at 1263 ("Constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession. *** To establish constructive possession, there must be some evidence that the person exercised or had the power to exercise dominion and control over the object.") (internal citations omitted).

Here, it is undisputed that Bickerstaff had a prior felony conviction at the time of the November 11, 2015 incident.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 39; Video File A3 at 12:28 – 12:38; Nuti Decl. (Doc. No. 187-3) at ¶ 2.)  It is also undisputed that Bickerstaff owned the Nissan,

35

that she was the only occupant of the vehicle at the time of the traffic stop, and that there was a loaded

12-gauge shotgun in the back seat area of her vehicle.  (Bickerstaff Depo. (Doc. No. 191-1) at Tr. 10,

38-39.)  Notably, Bickerstaff also does not dispute that the weapon was easily accessible to her or

that the rifle bag was in plain view at the time of the traffic stop.

Based on the above, the Court finds that there was ample probable cause for Bickerstaff's

weapon under a disability charge.  The fact that Bickerstaff told Officer McCandless that she did not

own the weapon or know it was in the vehicle does not negate probable cause.  As the Sixth Circuit

recently noted, probable cause is "not a high bar" and "does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction beyond a

reasonable doubt." *Lester,* 986 F.3d at 608 (citations omitted).  Rather, it "requires only a probability

of substantial chance of criminal activity, not an actual showing of such activity."  *Wesby*, 138 S.Ct.

at 586.  Nor does the fact that Bickerstaff was ultimately acquitted mean that the State lacked probable

cause at the time of trial.  *See Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) ("The fact that

the jury did not consider [the alleged victim's] testimony sufficiently persuasive to find Johnson

guilty of domestic assault beyond a reasonable doubt does not establish that probable cause was

lacking when the trial began."); *Newman v. Township of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014)

("Because there is no requirement that the defendant to a malicious prosecution charge must have

evidence that will ensure a conviction, not every failed criminal prosecution will sustain a subsequent

malicious prosecution suit") (quoting *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)).

Here, viewing all the circumstances in totality, the Court finds that Officer McCandless had

reasonable grounds for believing that Bickerstaff had a weapon while under disability.  Accordingly,

because there was probable cause for her arrest and continued prosecution on the weapons under

disability charge, Bickerstaff cannot move forward with her malicious prosecution claims as to any of the felony charges arising from the November 11, 2015 traffic stop.  *See Howse*, 953 F.3d at 408-409.

In sum, for all the reasons set forth above, the Court finds that Bickerstaff has failed to demonstrate that there is a genuine issue of material fact that Officer McCandless violated her Fourth Amendment right to be free from malicious prosecution.  Officer McCandless is therefore entitled to qualified immunity and summary judgment in his favor with respect to Count I of the Amended Complaint.

## VI.    Conclusion

Accordingly, and for all the reasons set forth above, the Magistrate Judge's Report & Recommendation (Doc. No. 207) is ADOPTED IN PART and REJECTED IN PART, as follows.  The Court REJECTS the Report & Recommendation to the extent it recommends that Defendant McCandless be denied qualified immunity with respect to Plaintiff's federal malicious prosecution claim.  The Court ADOPTS the Report & Recommendation in all other respects, as set forth herein.  Accordingly, Defendant McCandless' Objection is GRANTED and the Officer Defendants' Motion for Summary Judgment (Doc. No. 187) is GRANTED.

**IT IS SO ORDERED.**


 s/Pamela A. Barker
PAMELA A. BARKER
Date:  September 8, 2022                        U. S. DISTRICT JUDGE